No. 23-1474

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

ANTHONY DIAL,

Plaintiff-Appellant,

v.

ROBESON COUNTY and ROBESON COUNTY DEPARTMENT OF
SOCIAL SERVICES,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA

_____

**JOINT APPENDIX**

_____

Nancy P. Quinn
THE QUINN LAW FIRM
P.O. Box 9378
Greensboro, North Carolina
27429
Telephone: (336) 272-9072
Email:
npquinn@thequinnlawfirm.com
*Counsel for Plaintiff-Appellant*
  *Anthony Dial*

Katherine Barber-Jones
Rachel G. Posey
HARTZOG LAW GROUP LLP
2626 Glenwood Avenue
Suite 305
Raleigh, North Carolina 27608
Email:
kbarber-jones@hartzoglawgroup.com
rposey@hartzoglawgroup.com
*Counsel for Defendants-Appellees*
  *Robeson County and Robeson County*
  *Department of Social Services*

# INDEX

Page

District Court Docket Sheet [No. 1:20-cv-01135-WO-JLW] ---------- JA001

Complaint [ECF 3] (Nov. 12, 2020) ----------------------------------------- JA007

Affidavit of Service for Robeson County (Nov. 30, 2020) -------------- JA013

Affidavit of Service for Robeson County Department of Social
    Services (Nov. 30, 2020) ------------------------------------------------- JA016

Petition for Removal [ECF 1] (Dec. 16, 2020) ---------------------------- JA019

Defendant's Motion to Dismiss for Failure to State a Claim (Jan. 22,
    2021) [ECF 7] ------------------------------------------------------------------ JA023

Ex. 1 to Defendant's Brief in Support of Motion to Dismiss: Plaintiff's
    2017 EEOC Charge [ECF 8-1] --------------------------------------------- JA027

Ex. 2 to Defendant's Brief in Support of Motion to Dismiss: Plaintiff's
    2019 EEOC Charge [ECF 8-2] --------------------------------------------- JA028

Plaintiff's Response in Opposition to Motion to Dismiss (Feb. 12, 2021)
    [ECF 9] -------------------------------------------------------------------------- JA029

Memorandum Opinion and Order (Sept. 29, 2021) [ECF 12] -------- JA032

Answer (Oct. 13, 2021) [ECF 13] ------------------------------------------- JA067

Defendant's Motion for Summary Judgment (Sept. 6, 2022)
    [ECF 25] ------------------------------------------------------------------------- JA079

Transcript of Deposition of Kellie Blue (Sept. 6, 2022)
    [ECF 25-1] ---------------------------------------------------------------------- JA082

Transcript of Deposition of Shelton Hill (Sept. 6, 2022)
    [ECF 25-2] ---------------------------------------------------------------------- JA108

Excerpts from Transcript of Deposition of Anthony Dial (Sept. 6, 2022)
    [ECF 25-3] ---------------------------------------------------------------------- JA131

Ex. 1 to Defendant's Motion for Summary Judgment: 2019 Robeson County EEO-4 [ECF-4] ------------------------------------------------ JA191

Ex. 2 to Defendant's Motion for Summary Judgment: Declaration of H. T. "Tom" Taylor, Jr. [ECF 25-5] -------------------------------------- JA208

Declaration of Kellie Blue (Sept. 6, 2022) [ECF 26] -------------------- JA211

Ex. A to the Declaration of Kellie Blue: 2019 Assistant County Manager Job Posting (Sept. 6, 2022) [ECF 26-1]-------------------------------- JA218

Ex. B to the Declaration of Kellie Blue: 2019 Assistant County Manager Job Description (Sept. 6, 2022) [ECF 26-2] --------------------------- JA225

Ex. G to the Declaration of Kellie Blue: 2016 Assistant County Manager Job Description (Sept. 6, 2022) [ECF 26-7] --------------------------- JA233

Plaintiff's Response in Opposition to Motion for Summary Judgment (Sept. 27, 2022) [ECF 30] ------------------------------------------------ JA241

Ex. A to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment (Sept. 27, 2022): Plaintiff's Deposition Excerpts [ECF 31-1] ------------------------------------------------------------ JA243

Ex. B to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment (Sept. 27, 2022): Rhonda Dial Affidavit [ECF 31-2] --------------------------------------------------------------- JA266

Ex. C to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment (Sept. 27, 2022): Roger Oxendine Affidavit [ECF 32]-------------------------------------------------------------------- JA269

Memorandum Opinion and Order (Mar. 27, 2023) [ECF 59] -------- JA271

Judgment (Mar. 27, 2023) [ECF 60] --------------------------------------- JA304

Notice of Appeal (Apr. 25, 2023) [ECF 61]------------------------------- JA305

Appeal Transmittal (Apr. 26, 2023) [ECF 62] --------------------------- JA307

18BD,APPEAL,CLOSED,MASTER,MEDIATION,TRIAL

**U.S. District Court**
**North Carolina Middle District (NCMD)**
**CIVIL DOCKET FOR CASE #: 1:20-cv-01135-WO-JLW**

DIAL v. ROBESON COUNTY et al
Assigned to: JUDGE WILLIAM L. OSTEEN, JR
Referred to: MAG/JUDGE JOE L. WEBSTER
Demand: $25,000
Case in other court: Guilford County Superior Court, 20CVS8349
                                        23-01474
Cause: 28:1331 Fed. Question: Civil Rights Violation

Date Filed: 12/16/2020
Date Terminated: 03/27/2023
Jury Demand: Defendant
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**ANTHONY DIAL**                                    represented by    **NANCY PULLIAM QUINN**
                                                                      THE QUINN LAW FIRM
                                                                      315 SPRING GARDEN ST., STE. 1D
                                                                      GREENSBORO, NC 27401
                                                                      336-272-9072
                                                                      Fax: 336-272-2289
                                                                      Email: npquinn@thequinnlawfirm.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ROBESON COUNTY**                                  represented by    **DAN MCCORD HARTZOG , JR.**
                                                                      HARTZOG LAW GROUP LLP
                                                                      2626 GLENWOOD AVENUE
                                                                      SUITE 305
                                                                      RALEIGH, NC 27608
                                                                      980-255-2238
                                                                      Email: dhartzogjr@hartzoglawgroup.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **RACHEL GAIL POSEY**
                                                                      HARTZOG LAW GROUP
                                                                      2626 GLENWOOD AVE., STE. 305
                                                                      RALEIGH, NC 27608
                                                                      919-890-8486
                                                                      Email: rposey@hartzoglawgroup.com
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **KATHERINE MARIE BARBER-JONES**
                                                                      HARTZOG LAW GROUP LLP
                                                                      2626 GLENWOOD AVENUE
                                                                      SUITE 305
                                                                      RALEIGH, NC 27608
                                                                      919-424-0091
                                                                      Email: kbarber-jones@hartzoglawgroup.com
                                                                      *TERMINATED: 01/19/2023*
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**ROBESON COUNTY DEPARTMENT OF**                    represented by    **KATHERINE MARIE BARBER-JONES**
**SOCIAL SERVICES**                                                   (See above for address)
*TERMINATED: 09/29/2021*                                              *TERMINATED: 01/19/2023*
                                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/16/2020 | 1 | PETITION FOR REMOVAL against ANTHONY DIAL (Filing fee $ 402 receipt number 0418-2951127), filed by ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. (Attachments: # 1 Exhibit 1 - Complaint, # 2 Exhibit 2 - Summons, # 3 Exhibit 3 - Notice of Removal to Federal Court (Guilford County), # 4 Civil Cover Sheet) (BARBER-JONES, KATHERINE) (Entered: 12/16/2020) |
| 12/16/2020 | 2 | NOTICE of Attorney Appearance by attorney KATHERINE MARIE BARBER-JONES on behalf of Defendant ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. (BARBER-JONES, KATHERINE) (Entered: 12/16/2020) |
| 12/16/2020 | 3 | COMPLAINT against ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES, filed by ANTHONY DIAL. (Original filed in Guilford County Superior Court, case number 20CVS8349, and listed as Exhibit 1 to the Petition for Removal) (Sheets, Jamie) (Entered: 12/16/2020) |
| 12/16/2020 | 4 | Summons Issued as to ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. (Original filed in Guilford County Superior Court, case number 20CVS8349, issued 11/12/2020 and listed as Exhibit 2 to the Petition for Removal) (Sheets, Jamie) (Entered: 12/16/2020) |
| 12/16/2020 | 5 | Notice of Right to Consent. (Attachments: # 1 Consent Form) (Sheets, Jamie) (Entered: 12/16/2020) |
| 12/16/2020 | | CASE REFERRED to Mediation pursuant to Local Rule 83.9b of the Rules of Practice and Procedure of this Court. Please go to our website under Attorney Information for a list of mediators which must be served on all parties. (Sheets, Jamie) (Entered: 12/16/2020) |
| 12/16/2020 | | Case ASSIGNED to JUDGE WILLIAM L. OSTEEN, JR and MAG/JUDGE JOE L. WEBSTER. (Sheets, Jamie) (Entered: 12/16/2020) |
| 12/17/2020 | 6 | MOTION for Extension of Time to File Answer re 3 Complaint by ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. (Attachments: # 1 Text of Proposed Order Extending Time)(BARBER-JONES, KATHERINE) Modified on 12/21/2020 to reflect that Plaintiff no longer objects to this motion. (Brubaker, John). (Entered: 12/17/2020) |
| 12/21/2020 | | ORDER granting 6 Motion for Extension of Time to Answer for ROBESON COUNTY and ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. Answer due by 1/22/2021. Signed by John Brubaker, Clerk of Court, on 12/21/2020. (Brubaker, John) (Entered: 12/21/2020) |
| 01/22/2021 | 7 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. Response to Motion due by 2/12/2021 (BARBER-JONES, KATHERINE) (Entered: 01/22/2021) |
| 01/22/2021 | 8 | BRIEF re 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES filed by ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. (Attachments: # 1 Exhibit 1 - 2017 EEOC Charge, # 2 Exhibit 2 - 2019 EEOC Charge)(BARBER-JONES, KATHERINE) (Entered: 01/22/2021) |
| 02/12/2021 | 9 | RESPONSE in Opposition re 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES filed by ANTHONY DIAL. Replies due by 2/26/2021 (QUINN, NANCY) (Entered: 02/12/2021) |
| 02/12/2021 | 10 | MEMORANDUM in Support filed by Plaintiff ANTHONY DIAL re 9 Response in Opposition to 7 Motion to Dismiss (QUINN, NANCY) (Entered: 02/12/2021) |
| 02/26/2021 | 11 | REPLY, filed by Defendants ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES, to Response to 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ROBESON COUNTY, ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES. (BARBER-JONES, KATHERINE) (Entered: 02/26/2021) |
| 03/10/2021 | | Motion Submitted re: 7 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, to JUDGE WILLIAM L. OSTEEN, JR. (Welch, Kelly) (Entered: 03/10/2021) |
| 09/29/2021 | 12 | MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR. on 9/29/2021. For the reasons set forth herein, Defendants' Motion to Dismiss (Doc. 7 ) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Plaintiff's claim of Title VII race discrimination in the non-promotion to Director of Department of Social Services, Plaintiff's Title VII retaliation claim, and Plaintiff's § 1981 and § 1983 claims. The motion is DENIED as to Plaintiff's claim of Title VII race discrimination in the non-promotion to Assistant County Manager. FURTHER that Defendants' Motion to Dismiss is GRANTED as to Defendant Robeson County Department of Social Services and this Defendant is DISMISSED from this action. (Daniel, J) (Entered: 09/29/2021) |
| 10/13/2021 | 13 | ANSWER to 3 Complaint with Jury Demand by ROBESON COUNTY. (BARBER-JONES, KATHERINE) (Entered: 10/13/2021) |

| 10/14/2021 | 14 | NOTICE of Initial Pretrial Conference Hearing: Initial Pretrial Conference Hearing set for 11/17/2021 09:30 AM in Durham Courtroom #1 before MAG/JUDGE JOE L. WEBSTER. (Garrett, Kim) (Entered: 10/14/2021) |
|---|---|---|
| 11/03/2021 | 15 | Rule 26(f) Report (Joint) filed by all parties by ROBESON COUNTY.(BARBER-JONES, KATHERINE) (Entered: 11/03/2021) |
| 11/05/2021 | | Motions Referred: RE: 15 Rule 26(f) Report (Joint) filed by all parties, to MAG/JUDGE JOE L. WEBSTER (Garrett, Kim) (Entered: 11/05/2021) |
| 11/08/2021 | 16 | **ORDER** signed by MAG/JUDGE JOE L. WEBSTER on 11/8/2021. The Court approves without modification the Joint Rule 26(f) Report (Docket Entry 15 ) which, inter alia, adopts the default procedures of Local Rule 5.4(c) regarding filing documents under seal. The parties agree the appropriate plan for this case designated in Local Rule 26.1(a)(2) is complex. Discovery due by 6/30/2022. Dispositive motions due by 7/31/2022. Plaintiffs amended pleadings and joinder of parties due by 12/15/2021. Defendants amended pleadings and joinder of parties due by 1/14/2022. Mediation should be held at the close of discovery. The parties agree the mediator shall be Ken Carlson. ETT: approximately 3-4 days. The parties decline reference of this case to a magistrate judge. (Daniel, J) (Entered: 11/08/2021) |
| 11/09/2021 | | MEDIATION SCHEDULING ORDER; Mediation due by 6/30/2022. (Bond, Melisa) (Entered: 11/09/2021) |
| 11/09/2021 | 17 | **ORDER Appointing** KENNETH P. CARLSON, JR., as the Mediator pursuant to LR 83.9d(a). Signed by John S. Brubaker, Clerk of Court. (Bond, Melisa) (Entered: 11/09/2011) |
| 04/07/2022 | 18 | NOTICE of Hearing: APRIL Master Trial Calendar: Jury Trial set for 4/3/2023 at 09:30 AM in Unassigned Courtroom before UNASSIGNED JUDGE. Pretrial disclosures due 3/3/2023. Motions in limine due 3/10/2023. Any objections to pretrial disclosures and responses to motions in limine due 3/17/2023. Trial brief along with proposed instructions due 3/13/2023.(Kemp, Donita) (Entered: 04/07/2022) |
| 06/14/2022 | 19 | REPORT OF MEDIATOR from Kenneth P. Carlson, Jr. - Mediation Held on 6/2/2022. (IMPASSE) (Bond, Melisa) (Entered: 06/14/2022) |
| 07/01/2022 | 20 | Consent MOTION for Extension of Time *to Complete Discovery and File Dispositive Motions* by ROBESON COUNTY. (Attachments: # 1 Text of Proposed Order Extending Case Management Deadlines)(BARBER-JONES, KATHERINE) (Entered: 07/01/2022) |
| 07/01/2022 | 21 | Joint MOTION for Protective Order - *Entry of Consent Protective Order* by ROBESON COUNTY. Response to Motion due by 7/1/2022 (Attachments: # 1 Text of Proposed Order Consent Protective Order)(BARBER-JONES, KATHERINE) (Entered: 07/01/2022) |
| 07/05/2022 | | Motions Referred to MAG/JUDGE JOE L. WEBSTER re: 20 Consent MOTION for Extension of Time *to Complete Discovery and File Dispositive Motions and 21 Joint MOTION for Protective Order - Entry of Consent Protective Order. (Daniel, J) (Entered: 07/05/2022)* |
| 07/06/2022 | 22 | **CONSENT PROTECTIVE ORDER** signed by MAG/JUDGE JOE L. WEBSTER on 07/06/2022, as set out herein. (Bowers, Alexis) (Entered: 07/06/2022) |
| 07/06/2022 | | **TEXT ORDER** granting 20 Consent Motion to Amend the Case Management Order Deadlines. For good cause shown, the time to complete discovery shall be extended up to and including July 31, 2022; and the time to file dispositive motions shall be extended up to and including August 30, 2022. The parties shall not anticipate any further extension of said deadlines. Issued by MAG/JUDGE JOE L. WEBSTER on 7/6/2022.(Lee, Pedra) (Entered: 07/06/2022) |
| 07/07/2022 | | Set/Reset Scheduling Order Deadlines: Discovery due by 7/31/2022. Dispositive Motions due by 8/30/2022. (Bowers, Alexis) (Entered: 07/07/2022) |
| 08/12/2022 | 23 | NOTICE of Intent to File Dispositive Motions by Defendant ROBESON COUNTY (BARBER-JONES, KATHERINE) (Entered: 08/12/2022) |
| 08/30/2022 | 24 | MOTION for Extension of Time *to File Dispositive Motions, Unopposed,* by ROBESON COUNTY. (Attachments: # 1 Text of Proposed Order)(BARBER-JONES, KATHERINE) (Entered: 08/30/2022) |
| 08/30/2022 | | Motion Referred to MAG/JUDGE JOE L. WEBSTER re: 24 Unopposed MOTION for Extension of Time *to File Dispositive Motions. (Daniel, J) (Entered: 08/30/2022)* |
| 08/30/2022 | | **TEXT ORDER** Granting 24 Unopposed Motion for Extension of Time. Defendant Robeson County, with consent of Plaintiff, seeks a seven (7) day extension of time to file dispositive motions. Per the Court's July 6, 2022 Text Order, the parties were forewarned not to anticipate any further extension of said deadline. Defendant's motion notes that this matter has not been set for trial (Docket Entry 24 at 3), however, this matter has been tentatively calendared for trial in April 2023. (*See* Docket Entry 18.) Nevertheless, in light of Defendant's need for additional time to prepare its motion for summary judgment, and finding good cause for such, the Court will grant the extension request. However, the undersigned will shorten the response and reply deadlines in light of other considerations, including the trial date set in this matter, the timing necessary for rulings on dispositive motions, |

| | | |
|---|---|---|
| | | and the filing of pretrial disclosures. IT IS HEREBY ORDERED that the deadline to file dispositive motions shall be extended up to and including September 6, 2022; responses to such motions shall be filed no later than September 27, 2022, and replies shall be filed no later than October 4, 2022. The deadlines herein shall be the final deadlines regarding dispositive motions. Issued by MAG/JUDGE JOE L. WEBSTER on 8/30/2022.(Lee, Pedra) (Entered: 08/30/2022) |
| 08/31/2022 | | Set/Reset Motion and R and R Deadlines/Hearings Response to Motion due by 9/27/2022 Replies due by 10/4/2022. Dispositive Motions due by 9/6/2022. (Bowers, Alexis) (Entered: 08/31/2022) |
| 09/06/2022 | 25 | MOTION for Summary Judgment by ROBESON COUNTY. Response to Motion due by 10/6/2022 (Attachments: # 1 Exhibit - Transcript of Deposition of Kellie Blue, # 2 Exhibit - Transcript of Deposition of Shelton Hill, # 3 Exhibit - Excerpts from Transcript of Deposition of Anthony Dial, # 4 Exhibit - 2019 Robeson County EEO-4, # 5 Exhibit - Declaration of H.T. ("Tom") Taylor, Jr.)(BARBER-JONES, KATHERINE) (Entered: 09/06/2022) |
| 09/06/2022 | 26 | DECLARATION filed by Defendant ROBESON COUNTY re 25 MOTION for Summary Judgment filed by ROBESON COUNTY. (Attachments: # 1 Exhibit A - 2019 Assistant County Manager Job Posting, # 2 Exhibit B - 2019 Assistant County Manager Job Description, # 3 Exhibit C - SLIP SHEET for Plaintiff's Job Application, # 4 Exhibit D - SLIP SHEET for Shelton Hill's Job Application, # 5 Exhibit E - SLIP SHEET for Notes from Plaintiff's Interview, # 6 Exhibit F - SLIP SHEET for Notes from Shelton Hill's Interview, # 7 Exhibit G - 2016 Assistant County Manager Job Description)(BARBER-JONES, KATHERINE) (Entered: 09/06/2022) |
| 09/06/2022 | 27 | BRIEF re 25 MOTION for Summary Judgment by Defendant ROBESON COUNTY filed by ROBESON COUNTY. (BARBER-JONES, KATHERINE) (Entered: 09/06/2022) |
| 09/06/2022 | 28 | SEALED EXHIBITS re 26 Declaration,, by Defendant ROBESON COUNTY, Plaintiff ANTHONY DIAL. (Attachments: # 1 Exhibit A - 2019 Assistant County Manager Job Posting, # 2 Exhibit B - 2019 Assistant County Manager Job Description, # 3 Sealed Unredacted C - Anthony Dial Job Application, # 4 Sealed Unredacted D - Shelton Hill Job Application, # 5 Sealed Unredacted E - Notes from Interview of Anthony Dial, # 6 Sealed Unredacted F - Notes from Interview of Shelton Hill, # 7 Exhibit G - 2016 Assistant County Manager Job Description)(BARBER-JONES, KATHERINE) (Entered: 09/06/2022) |
| 09/06/2022 | 29 | Motion for Leave to File MOTION to Seal *Exhibits C, D, E, and F to the Declaration of Kellie Blue* [If the party filing this motion is not the party claiming confidentiality, the party claiming confidentiality must file a response within 14 days that includes the materials required by L.R. 5.4(c)(3).] by ROBESON COUNTY. Response to Motion due by 9/20/2022 (Attachments: # 1 Exhibit - Declaration of Katherine Barber-Jones in Suppot of Motion for Leave to File Documents Under Seal, # 2 Exhibit - Local Civil Rule 5.4 Checklist and Summary Chart) (BARBER-JONES, KATHERINE) Modified event and text on 9/30/2022 to reflect document filed. (Daniel, J) (Entered: 09/06/2022) |
| 09/27/2022 | 30 | RESPONSE in Opposition re 25 MOTION for Summary Judgment filed by ROBESON COUNTY filed by ANTHONY DIAL. Replies due by 10/11/2022. (QUINN, NANCY) (Entered: 09/27/2022) |
| 09/27/2022 | 31 | RESPONSE in Opposition re 30 Response in Opposition to Motion filed by ANTHONY DIAL filed by ANTHONY DIAL. Replies due by 10/11/2022 (Attachments: # 1 Exhibit A. Plaintiff Deposition Excerpts, # 2 Exhibit B Affidavit Rhonda Dial, # 3 Exhibit C Affidavit Roger Oxendine)(QUINN, NANCY) (Entered: 09/27/2022) |
| 09/28/2022 | 32 | Exhibit C Affidavit of Roger Oxendine re 31 Response in Opposition to Motion filed by ANTHONY DIAL (QUINN, NANCY) Modified on 9/28/2022 properly set out pleading title. (Bowers, Alexis) (Entered: 09/28/2022) |
| 09/30/2022 | | Motion Submitted to JUDGE WILLIAM L. OSTEEN, JR., re: 29 MOTION to Seal *Exhibits C, D, E, and F to the Declaration of Kellie Blue*. (Daniel, J) (Entered: 09/30/2022) |
| 10/04/2022 | 33 | REPLY, filed by Defendant ROBESON COUNTY, to Response to 25 MOTION for Summary Judgment filed by ROBESON COUNTY. (Attachments: # 1 Exhibit A - Deposition Page)(BARBER-JONES, KATHERINE) (Entered: 10/04/2022) |
| 11/02/2022 | 34 | MEMORANDUM OPINION AND ORDER signed by JUDGE WILLIAM L. OSTEEN, JR on 11/02/2022, that Defendant's Motion for Leave to File Documents Under Seal, (Doc. 29 ), is GRANTED. (Bowers, Alexis) (Entered: 11/02/2022) |
| 11/30/2022 | | Motion Submitted to JUDGE WILLIAM L. OSTEEN, JR., re: 25 MOTION for Summary Judgment. (Daniel, J) (Entered: 11/30/2022) |
| 01/13/2023 | 35 | MOTION to Substitute Attorney *Dan Hartzog Jr. for Katherine Barber-Jones* by ROBESON COUNTY. (Attachments: # 1 Text of Proposed Order)(BARBER-JONES, KATHERINE) (Entered: 01/13/2023) |
| 01/19/2023 | 36 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR on 01/19/2023, that the Notice of Substitution of Counsel, (Doc. 35 ), is GRANTED and attorney Katherine Barber-Jones is hereby withdrawn from representing Defendant in this matter. IT IS FURTHER ORDERED that attorney Dan McCord Hartzog, Jr., is hereby substituted as counsel of |

| | | |
|---|---|---|
| | | record for Defendant Robeson County. Attorney Hartzog shall file a notice of appearance upon entry of this order. (Bowers, Alexis) (Entered: 01/19/2023) |
| 01/27/2023 | 37 | NOTICE of Attorney Appearance by attorney DAN MCCORD HARTZOG, JR on behalf of Defendant ROBESON COUNTY (HARTZOG, DAN) (Entered: 01/27/2023) |
| 02/14/2023 | 38 | NOTICE of Trial Calendar Jury Trial set for 4/3/2023 09:30 AM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN JR. (Williamson, Wanda) (Entered: 02/14/2023) |
| 02/15/2023 | 39 | NOTICE of Hearing: Settlement Conference set for 3/21/2023 at 9:30 a.m. in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN, JR. (Daniel, J) (Entered: 02/15/2023) |
| 02/19/2023 | 40 | Joint MOTION to Reset Trial Date by ROBESON COUNTY. Response to Motion due by 3/13/2023 (HARTZOG, DAN) (Entered: 02/19/2023) |
| 02/21/2023 | 41 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR on 02/21/2023. Eight cases are presently set for trial before this court during the Master Trial Calendar beginning April 3, 2023. This court will attempt to set dates certain for trial, however, any schedule is tentative and subject to change as cases may settle or come off the calendar as a result of motions for summary judgment. As to the remaining cases scheduled for trial, including Dial v. Robeson County, 1:20-cv-1135; Humphreys v. Rowan-Salisbury Board of Education et al., l:21-cv-432; Harris v. Town of Southern Pines, et al., l:21-cv-955; The McClatchy Company, et al., v. Town of Chapel Hill, l:21-cv-765; and Anderson v. Diamondback Investment Group, LLC, l:21-cv-778, those cases will not be called for trial before April 10, 2023. Counsel in thosecases will use April 10, 2023 as their trial date for purposes of compliance with LR 40.1 and Fed. R. Civ. P. 26(a) (3) regarding pretrial disclosures. As to each of these cases not yet scheduled, counsel are notified that in addition to April 10 and April 17, 2023, this court will conduct trials, if necessary, during the weeks of April 24, 2023, May 1, 2023, and May 15, 2023. Any pending motions to continue or requests for modification of pretrial deadlines will not be addressed by this court before February 25, 2023. A continuance is not likely, however, the deadlines may be modified somewhat depending upon trial dates and any motions. (Taylor, Abby) (Entered: 02/21/2023) |
| 02/21/2023 | | Motion Submitted to JUDGE WILLIAM L. OSTEEN, JR., re: 40 Joint MOTION to Reset Trial Date. (Daniel, J) (Entered: 02/21/2023) |
| 02/22/2023 | 42 | ORDER signed by JUDGE WILLIAM L. OSTEEN, JR on 02/22/2023, denying 40 Motion to Reset Trial Date. (Taylor, Abby) (Entered: 02/22/2023) |
| 02/23/2023 | 43 | MOTION to Continue *pretrial conference* by ANTHONY DIAL. (Attachments: # 1 Text of Proposed Order) (QUINN, NANCY) (Entered: 02/23/2023) |
| 02/24/2023 | | Motion Submitted to JUDGE WILLIAM L. OSTEEN, JR., re : 43 MOTION to Continue *pretrial conference*. (Daniel, J) (Entered: 02/24/2023) |
| 02/24/2023 | 44 | NOTICE of Attorney Appearance by attorney RACHEL GAIL POSEY on behalf of Defendant ROBESON COUNTY (POSEY, RACHEL) (Entered: 02/24/2023) |
| 02/27/2023 | | TEXT ORDER: A Settlement Conference is set for March 21, 2023. (Doc. 39 .) Plaintiff moves to reschedule that settlement conference to a date prior to March 20, 2023. The court GRANTS the motion, (Doc. 43 ), and directs the Clerk to consult with the parties and reschedule the Settlement Conference to a date prior to March 20, 2023. [Issued by JUDGE WILLIAM L. OSTEEN, JR on 2/27/2023.] (Welch, Kelly) (Entered: 02/27/2023) |
| 03/01/2023 | 45 | NOTICE of Rescheduling: Settlement Conference reset for 3/8/2023 at 2:00 PM in Greensboro Courtroom #1 before JUDGE WILLIAM L. OSTEEN, JR. (Daniel, J) (Entered: 03/01/2023) |
| 03/08/2023 | 46 | MOTION Excuse Attendance of Insurance Adjuster by ROBESON COUNTY. Response to Motion due by 3/29/2023 (HARTZOG, DAN) (Entered: 03/08/2023) |
| 03/08/2023 | | Minute Entry for proceedings held before JUDGE WILLIAM L. OSTEEN, JR., in G-1: Settlement Conference held on 3/8/2023. Attorney Nancy Quinn present on behalf of the Plaintiff. Attorneys Dan Hartzog and Rachel Posey appeared on behalf of the Defendant. Case did not settle. 46 Motion to Excuse Insurance Adjustor from In Person Attendance at the Settlement Conference denied as moot. The parties will be notified of a date certain for trial. (Court Reporter Briana Bell.) (Daniel, J) (Entered: 03/08/2023) |
| 03/08/2023 | | ORAL ORDER denying as moot 46 Motion to Excuse Insurance Adjustor from In Person Attendance at the Settlement Conference. Issued by JUDGE WILLIAM L. OSTEEN, JR. on 3/8/2023. (See 3/8/2023 Minute Entry) (Daniel, J) (Entered: 03/08/2023) |
| 03/10/2023 | 47 | FINAL PRETRIAL DISCLOSURES by ANTHONY DIAL.(QUINN, NANCY) (Entered: 03/10/2023) |
| 03/10/2023 | 48 | FINAL PRETRIAL DISCLOSURES by ROBESON COUNTY.(HARTZOG, DAN) (Entered: 03/10/2023) |
| 03/17/2023 | 49 | MOTION in Limine by ROBESON COUNTY. Response to Motion due by 3/24/2023 (HARTZOG, DAN) (Entered: 03/17/2023) |

| 03/17/2023 | 50 | *Defendant's* BRIEF re 49 MOTION in Limine . (HARTZOG, DAN) (Entered: 03/17/2023) |
|---|---|---|
| 03/20/2023 | 51 | Proposed Jury Instructions by Plaintiff ANTHONY DIAL .(QUINN, NANCY) (Entered: 03/20/2023) |
| 03/20/2023 | 52 | TRIAL MEMO by ANTHONY DIAL Estimated trial time 3 days.(QUINN, NANCY) (Entered: 03/20/2023) |
| 03/20/2023 | 53 | TRIAL BRIEF by Defendant ROBESON COUNTY.(HARTZOG, DAN) (Entered: 03/20/2023) |
| 03/20/2023 | 54 | Proposed Jury Instructions by Defendant ROBESON COUNTY .(HARTZOG, DAN) (Entered: 03/20/2023) |
| 03/24/2023 | 55 | RESPONSE filed by Plaintiff ANTHONY DIAL re 49 MOTION in Limine filed by ROBESON COUNTY filed by ANTHONY DIAL. Replies due by 4/7/2023 (QUINN, NANCY) (Entered: 03/24/2023) |
| 03/24/2023 | 56 | BRIEF re 55 Response to Motion *in limine* by Plaintiff ANTHONY DIAL filed by ANTHONY DIAL. (QUINN, NANCY) (Entered: 03/24/2023) |
| 03/24/2023 | 57 | OBJECTION - Other re 47 Final Pretrial Disclosures by Defendant ROBESON COUNTY. (HARTZOG, DAN) (Entered: 03/24/2023) |
| 03/27/2023 | 58 | Notice L. R. 7.3(d) (QUINN, NANCY) (Entered: 03/27/2023) |
| 03/27/2023 | 59 | **MEMORANDUM OPINION AND ORDER** signed by JUDGE WILLIAM L. OSTEEN, JR on 03/27/2023, that Defendant's Motion for Summary Judgment, (Doc. 25 ), is GRANTED. (Garland, Leah) (Entered: 03/27/2023) |
| 03/27/2023 | 60 | **JUDGMENT** signed by JUDGE WILLIAM L. OSTEEN, JR on 03/27/2023, that the Plaintiff, Anthony Dial, shall take nothing of Defendant, Robeson County, and this action is DISMISSED WITH PREJUDICE. (Garland, Leah) (Entered: 03/27/2023) |
| 04/25/2023 | 61 | NOTICE OF APPEAL by ANTHONY DIAL. Filing fee $ 505, receipt number ANCMDC-3547581. (QUINN, NANCY) (Entered: 04/25/2023) |
| 04/26/2023 | 62 | Electronic Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 61 Notice of Appeal (Taylor, Abby) (Entered: 04/26/2023) |
| 05/01/2023 | 63 | NOTICE of Docketing Record on Appeal from USCA re 61 Notice of Appeal filed by ANTHONY DIAL. USCA Case Number 23-1474. Case Manager: Cyndi Halupa. (Taylor, Abby) (Entered: 05/01/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/13/2023 13:02:25 | | |
| **PACER Login:** | kmbarber44197 | **Client Code:** |  |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01135-WO-JLW |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**EXHIBIT**
**1**

NORTH CAROLINA

GUILFORD COUNTY ~~FILED~~

ANTHONY DIAL 2020 NOV 12 P 1:26

    Plaintiff, GUILFORD CO., C.S.C

    BY

vs.

ROBESON COUNTY and ROBESON COUNTY DEPARTMENT OF
SOCIAL SERVICES,

    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

20 CVS 8349

)
)
)
)
)
)COMPLAINT
)
)
)
)
)

COMES NOW PLAINTIFF, complaining of the acts of Defendants, alleges and says that:

1.    Plaintiff is a citizen and resident of Robeson County, North Carolina.

2.    Upon information and belief, Defendant Robeson County is a county government of the State of North Carolina with offices and facilities is Robeson County, North Carolina. Defendant is subject to the jurisdiction of this Court and is an "employer" as defined by 42 U.S.C. §2000e(b) and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current calendar year.

3.    Upon information and belief, the Department of Social Services, is an agency within and under the control of Defendant Robeson County. Moreover, is subject to the jurisdiction of this Court and is an "employer" as defined by 42 U.S.C. §2000e(b) and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current calendar year.

4.    That Plaintiff, a Native American male and veteran, was hired by Defendant in August of 2000. Plaintiff is highly qualified and has served the Defendant in a variety of capacities, with distinction, while so employed.

5.    Moreover, the Defendants work in concert to provide funding and services to the clients of Plaintiff and the staff associated with those services.

6.    That Plaintiff continues to perform his duties with the best interests of the Defendants in mind and continues to offer more improvements to the operation of the department as he performs her duties. During the performance of his duties, he acted in additional capacities and creatively presented new ideas and procedures to increase the effectiveness of the department to the citizens of Robeson County. Plaintiff also networks and serves on many committees in the community in addition to his assigned work duties as part of his desire to assist the County.

## FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII

7.     That, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") regarding discrimination concerns with his employment with Defendants in 2014.  That matter was eventually resolved and Plaintiff continued his work with Defendants.

8.     That Plaintiff applied for the posted position of Director of the Department of Social Services for Robeson County on or about October 10, 2016.  He was interviewed for the position on or about November 22, 2016 along with eight other candidates.  Plaintiff was informed that he scored the highest of all the candidates and that he met the posted criteria for obtaining the position.

9.     That the Defendants re-opened the interview phase of the search, upon information and belief, to obtain a director of a different race than Plaintiff. Plaintiff was again interviewed on or about December 13, 2016.   At that time, the new questions were specifically focused on areas in which Plaintiff has limited experience and that the other candidate, Velvet Nixon, had extensive experience.  Upon information and belief the questions were changed as the Defendants wanted a Black candidate to be successful and tailored the questions for the desired result.  All three finalists for the position were Black.

10.     That on or about January 6, 2017, Plaintiff was informed that he did not receive the promotion and that it would be offered to Velvet Nixon, a Black female.  Ms. Nixon accepted the position.

11.     That Plaintiff was required to provide extensive training to Ms. Nixon regarding the duties of her new position.  Despite his disappointment with the denial of the promotion, Plaintiff maintained a professional demeanor and assisted Ms. Nixon in any way he could.

12.     That within 180 days of these actions, Plaintiff filed a Charge of Discrimination with the EEOC alleging racial (Native American) and gender (male) discrimination in the changing of the position qualifications and the failure to promote him to the Director position despite being the best qualified candidate.

13.     The charge also included concerns of retaliation in the failure to promote due to his prior EEOC activity in 2014.

14.     That Plaintiff sought assistance and an end to the discrimination and retaliation prior to filing the charge.  Upon information and belief, no action was taken by Defendants to alleviate the hostile work environment for Plaintiff.  Thus, Defendants were aware of the retaliation and discrimination experienced by Plaintiff, by and through some of their agents, and failed to take appropriate action to correct the situation.

2

15.     That while the charge was pending, Plaintiff applied for the position of Assistant County Manager and was interviewed for the position on or about May 1, 2019.

16.     That despite his excellent qualification for the position, he was informed on or about June 7, 2019, that he would not receive this promotion allegedly because he was not the most qualified candidate. Moreover, he was informed that his prior EEOC activity was a negative factor in his scoring for the position. The position was given to Shelton Hill, Caucasian male, with less education and experience and fewer qualifications than Plaintiff.

17.     That while the selection decision for the assistant county manager was within the scope of County Manager Kellie Blue's duties, she serves at the pleasure of the County Commissioners and, upon information and belief, would not ignore their input in the process.

18.     That Plaintiff filed an additional charge of discrimination with the EEOC based upon said retaliation and racial discrimination (Native American) and amended the original charge from 2017 (that remained under investigation by the EEOC at the time of the interview) to include this new retaliatory information on or about July, 2019.

19.     That as a direct and proximate result of said conduct, Plaintiff has suffered financially in lower pay than offered through the promotions, has lost professional opportunities for advancement and the learning of additional skills, lost professional prestige within the department, and suffered emotional distress.

20.     That at all times relevant herein, many of Defendants' agents, by whom and through Plaintiff was discriminated against, denied the promotions by, retaliated against, and intimidated by as well as those managers to whom he complained were agents of the Defendants, duly authorized and acting within the scope of their employment.

21.     The conduct of Defendants, as alleged herein, not only violates Title VII of the Civil Rights Acts of 1964 and 1991, as amended, but also violates the public policy of the State of North Carolina.

22.     That on or about August 14, and September 9, 2020,  Plaintiff was issued right to sue letters on said charges of discrimination from the local office of the EEOC. At this time, Plaintiff has decided to institute a private lawsuit, and is filing same within ninety (90) days of receipt of the EEOC's right to sue letters.

23.     That said discrimination, creation of a hostile environment, failure to promote, and retaliation experienced by Plaintiff from Defendants, by and through their duly authorized agents, is the direct and proximate cause of injury to Plaintiff in an amount in excess of $25,000.00 representing lost opportunities and benefits, lost wages, as well as emotional distress.

## SECOND CAUSE OF ACTION: RETALIATION

3

24.     The allegations set forth in paragraphs one through twenty-three are realleged and incorporated by reference as if fully set forth.

25.     That during the interview phase for the Director position, the decision makers were told that Plaintiff was under investigation alleging Medicaid fraud unrelated to his duties with the Defendants. The anonymously reported allegations were discussed with the recruiting and interviewing members of the team even before they were presented to Plaintiff. This cloud over his character was intended to discredit him and, upon information and belief, later to encourage him to resign his position with Defendants.

26.     That the investigation found absolutely no improper behavior by Plaintiff and that the allegations were baseless.

27.     That additional retaliation continues. In the spring, 2019, while the EEOC investigation was pending, Plaintiff was disqualified from consideration for the deputy director of social services position by Ms. Nixon as a potential lawsuit may be associated with the investigation. Plaintiff also experienced reduced resources for Plaintiff's staff, resistance to his plans for COVID-19 protocols in his department, failure to include him in procedure changes directly affecting his staff, and undermining his authority with his staff.

28.     That despite hearing his concerns about the racial disparity in promotions and work environment for Native Americans, no resolution of the disparity occurred.

29.     That as a direct and proximate result of voicing these concerns, Plaintiff suffered excessive scrutiny of his performance, was subjected to factually unsubstantiated investigations, undermining of his authority with staff, and deprived of promotions and a professionally satisfying work environment as compared to his non-Native American coworkers (for example: Velvet Nixon, Shelton Hill) Plaintiff's exclusion from the professional and supportive work environment was intended to dissuade him, and others with similar concerns, from reporting retaliatory conduct or risk isolation from their peers and managers.

30.     That said conduct of Defendant's agents, acting within the course and scope of their employment, was both racially discriminatory and retaliatory. The retaliation created a hostile working environment for Plaintiff. The conduct of Defendants, as alleged herein, violates Title VII of the Civil Rights Act of 1964 and 1991, as amended.

31.     That more than 180 days have elapsed since Plaintiff filed these charges with the EEOC. On or about August 14 and September 9, 2020, right to sue letters on said charges of retaliation were issued by the local office of the EEOC. At this time, Plaintiff has decided to institute a private lawsuit, and is filing same within ninety (90) days of receipt of the EEOC's right to sue letters.

4

32.     Said failure to end the pattern and practice of discrimination and retaliation and the failure to prevent the creation of a hostile work environment by Defendants, by and through its duly authorized agents, is the direct and proximate cause of injury to Plaintiff in an amount in excess of $25,000.00 representing lost wages, benefits, professional opportunity, and emotional distress.

<u>THIRD CLAIM FOR RELIEF: SECTION 1981 and 1983</u>

33.     For the purposes of this claim, Plaintiff incorporates herein by reference paragraphs one through thirty-two above of the Complaint as if the same were fully set forth herein.

34.     Upon information and belief, acting in bad faith, Defendants arbitrarily harassed with unfounded investigations and intimidated Plaintiff in retaliation for his participation in reporting discrimination and violations of Title VII of the Civil Rights Act of 1964, as amended and Section 1981 of the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"). Plaintiff, as a member of a protected class (Native American), seeks declaratory, injunctive and other equitable relief, and compensatory damages based on Defendants' continuing deprivation of his civil rights as accorded to him by the above-cited federal statutes.

35.     Further, that Defendants have not followed the constitutional dictates of due process of law as guaranteed by Article I, Section 19 of the Constitution of North Carolina and the United States Constitution and have violated the Plaintiff's right to due process in violation of 42 U.S.C. § 1983. The acts of the Defendants, by and through its duly appointed agents, constitute a denial and a conspiracy to deprive Plaintiff of rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States as well as the laws and policies of the State of North Carolina.

36.     That the Defendants' conduct as herein set out was purposeful, deliberate, intentional, and done with reckless disregard of the rights of Plaintiff, such that Plaintiff is entitled to recover punitive damages.

37.     In taking the aforesaid actions, Defendants acted intentionally under color of law of the State of North Carolina within the meaning of 42 U.S.C. §1983.

38.     As a direct result of the aforesaid unlawful actions, Plaintiff has suffered and continues to suffer the loss of opportunity, job security, wages, and professional status in an amount in excess of $25,000.00. The amount of damages will be more fully described when known.

<u>FOURTH CLAIM FOR RELIEF: RIGHT TO EQUITABLE RELIEF</u>

39.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory and injunctive relief is the only means for securing adequate relief.

5

WHEREFORE, Plaintiff prays the Court as follows:

1. That Defendants be ordered to cease all retaliation and discrimination and to eliminate the hostile environment which exists in its facility;

2. That Defendants be ordered to promote Plaintiff to the positions of Director or Assistant County Manager with the Defendants, with back pay and the benefits associated therewith;

3. That he recover judgment against the Defendants, jointly and severally, in an amount in excess of $25,000.00;

4. That he recover the costs of this action, including reasonable attorney's fees; and

5. For such other and further relief as to the Court may seem just and proper.


Nancy P. Quinn,
Attorney for Plaintiff
315 Spring Garden St., Suite 1D
Greensboro, NC 27401
Telephone: (336) 272-9072

6

NORTH CAROLINA

GUILFORD COUNTY

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CvS 8349

2020 NOV 30 P 3: 44

GUILFORD C.S.C

BY_____

ANTHONY DIAL,
    Plaintiff,

v.

ROBESON COUNTY and ROBESON COUNTY
DEPARTMENT OF SOCIAL SERVICES,
    Defendants.

)
)
)
)
)
)
)
)

**AFFIDAVIT**

THE AFFIANT, being duly sworn, deposes and says:

1.    That she is the attorney for the Plaintiff in the above-captioned action, and that as such attorney she did deposit a copy of the Complaint and Summons in the United States Mail at Greensboro, North Carolina, Certified Mail, return receipt requested, deliver to addressee addressed to: Robeson County, c/o Ms. Kellie Blue, County Manager, 550 North Chestnut Street, Lumberton, NC 28358, that copies of said Complaint and Summons in fact were received by Robeson County, c/o Ms. Kellie Blue, County Manager or one who was authorized by Robeson County, to receive same herein as evidence by the attached return receipt, said receipt being dated November 16, 2020.

Nancy P. Quinn
Attorney for Plaintiff
315 Spring Garden Street, 1D
Greensboro, NC  27401
Telephone: (336) 272-9072

NORTH CAROLINA
GUILFORD COUNTY

SWORN TO AND SUBSCRIBED
before me, this the 23rd
day of November , 2020.

Notary Public

My Commission Expires: 07/06/2025

SHANNON S. HENNIS
NOTARY PUBLIC
GUILFORD COUNTY, NC
My Commission Expires 07/06/2025



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Lumberton, NC 28358

OFFICIAL USE

Certified Mail Fee    $3.55
$2.85    0427    29
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)    $ $0.00
☐ Return Receipt (electronic)    $ $0.00    Postmark
☐ Certified Mail Restricted Delivery    $ $0.00    Here
☐ Adult Signature Required    $ $0.00
☐ Adult Signature Restricted Delivery  $
Postage    $0.70
$
Total Postage and Fees    $7.10    11/13/2020
$
Sent To  Robeson County
c/o Ms. Kellie Blue, County Manager
Street and Apt. No., or PO Box No.  550 North Chestnut Street
City, State, ZIP+4®  Lumberton, NC 28358

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7017 1070 0000 7418 0702

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robeson County
c/o Ms. Kellie Blue, County Manager
550 North Chestnut Street
Lumberton, NC 28358

9590 9402 3157 7166 5204 85

2. Article Number *(Transfer from service label)*
7017 1070 0000 7418 0702

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☒ Certified Mail®                    ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery ☒ Return Receipt for Merchandise
☐ Collect on Delivery                ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

JA014

11/23/2020                                        USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

Track Another Package  +

**Tracking Number:** 70171070000074180702                                    Remove ✕

Your item was delivered to an individual at the address at 2:54 pm on November 16, 2020 in LUMBERTON, NC 28358.

## ✓ Delivered

November 16, 2020 at 2:54 pm
Delivered, Left with Individual
LUMBERTON, NC 28358

**Get Updates** ⌄

---

| Text & Email Updates | ⌄ |
|---|---|

| Tracking History | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

See Less ⌃

Feedback

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70171070000074180702                    1/2

JA015

NORTH CAROLINA                    FILED          IN THE GENERAL COURT OF JUSTICE
                                                        SUPERIOR COURT DIVISION
GUILFORD COUNTY                                              20 CvS 8349

                              2020 NOV 30 P 3: 44

                              GUILFORD       C.S C

**ANTHONY DIAL,**                BY                      )
        Plaintiff,                                      )
                                                        )
v.                                                      )        **AFFIDAVIT**
                                                        )
**ROBESON COUNTY and ROBESON COUNTY**                   )
**DEPARTMENT OF SOCIAL SERVICES,**                      )
        Defendants.                                     )

        THE AFFIANT, being duly sworn, deposes and says:

        1.      That she is the attorney for the Plaintiff in the above-captioned action, and that as
such attorney she did deposit a copy of the Complaint and Summons in the United States Mail at
Greensboro, North Carolina, Certified Mail, return receipt requested, deliver to addressee
addressed to: Robeson County Department of Social Services, c/o Ms. Kellie Blue, County
Manager, 550 North Chestnut Street, Lumberton, NC 28358, that copies of said Complaint and
Summons in fact were received by Robeson County Department of Social Services, c/o Ms. Kellie
Blue, County Manager or one who was authorized by Robeson County Department of Social
Services, to receive same herein as evidence by the attached return receipt, said receipt being dated
November 16, 2020.

                                                Nancy P. Quinn
                                                Attorney for Plaintiff
                                                315 Spring Garden Street, 1D
                                                Greensboro, NC  27401
                                                Telephone: (336) 272-9072

NORTH CAROLINA
GUILFORD COUNTY

SWORN TO AND SUBSCRIBED
before me, this the 23rd
day of November, 2020.

Notary Public

My Commission Expires: 07|06|2025

```
SHANNON S. HENNIS
NOTARY PUBLIC
GUILFORD COUNTY, NC
My Commission Expires 07|06|2025
```

JA016

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Lumberton, NC 28358

| | | |
|---|---|---|
| Certified Mail Fee | $3.55 | |
| | $2.85 | 0427 |
| Extra Services & Fees (check box, add fee as appropriate) | | 29 |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | | |
| Postage | $0.70 | |
| | | 11/13/2020 |
| Total Postage and Fees | $7.10 | |

Sent To Robeson County Department of Social Services
c/o Ms. Kellie Blue, County Manager
Street and Apt. No., or PO Box No. 550 North Chestnut Street
City, State, ZIP+4® Lumberton, NC 28358

7017 1070 0000 7418 0696

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robeson County Department of Social Services
c/o Ms. Kellie Blue, County Manager
550 North Chestnut Street
Lumberton, NC 28358

9590 9402 3157 7166 5205 39

2. Article Number (Transfer from service label)
7017 1070 0000 7418 0696

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☑ Agent  ☑ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

11/23/2020                                    USPS.com® - USPS Tracking® Results

# USPS Tracking®                                                    FAQs >

### Track Another Package  +

**Tracking Number:** 70171070000074180696                          Remove ✕

Your item was delivered to an individual at the address at 2:54 pm on November 16, 2020 in
LUMBERTON, NC 28358.

## ✓ Delivered

November 16, 2020 at 2:54 pm
Delivered, Left with Individual
LUMBERTON, NC 28358

**Get Updates** ⌄

| | |
|---|---|
| **Text & Email Updates** | ⌄ |
| **Tracking History** | ⌄ |
| **Product Information** | ⌄ |

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

Feedback

https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabels=70171070000074180696%2C                    1/2

JA018

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:20-cv-1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBESON COUNTY and | ) | **PETITION FOR REMOVAL** |
| ROBESON COUNTY | ) | |
| DEPARTMENT OF SOCIAL | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants, ROBESON COUNTY and ROBESON COUNTY
DEPARTMENT OF SOCIAL SERVICES (*hereinafter*, "Defendants") by and
through their undersigned attorneys, hereby petition this Court for the
removal of this matter from the Superior Court of Guilford County, North
Carolina, to the United States District Court for the Middle District of North
Carolina. Defendants respectfully submit the following grounds in support of
removal:

1.      On November 12, 2020, Plaintiff filed a Complaint in the Superior
Court of Guilford County, North Carolina, entitled *Anthony Dial,* Plaintiff, *v.
Robeson County and Robeson County Department of Social Services,*

Defendants, Civil Action No. 20 CVS 8349. *See* Complaint, *attached as* Exhibit 1, and Summons, *attached as* Exhibit 2.

2.    Defendants were served through Ms. Kellie Blue, the County Manager, on November 16, 2020. Pursuant to 28 U.S.C. § 1446(b)(1) and Rule 6 of the Federal Rules of Civil Procedure, Defendants have 30 days from the date of service to remove this matter, up to and including December 16, 2020. Accordingly, this petition for removal is timely.

3.    This Court has removal jurisdiction over this case because this is a civil action with original jurisdiction in the federal courts, pursuant to 28 U.S.C. §§ 1331 and 1441(a). pursuant to 28 U.S.C. §§ 1331 and 1441(a). Plaintiff brings claims against Defendants pursuant to: (1) Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §§ 2000e et seq. for alleged employment discrimination and retaliation; and (2) 42 U.S.C. §§ 1981 and 1983 for alleged deprivation of due process. Plaintiff further alleges that he is entitled to recover equitable and other relief pursuant to federal law. Accordingly, these are claims "arising under the Constitution, laws, or treaties of the United States," over which the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2

4.     Removal of this action to this Court is proper under 28 U.S.C. § 1446(a), because it is located in the District and Division where the State Court action was pending.

5.     A copy of this Notice of Removal will be filed with the Clerk of Court for the Superior Court of Guilford County, North Carolina, and served on Plaintiff through counsel. A copy of said Notice of Removal to Federal Court is attached as Exhibit 3 to this Petition.

WHEREFORE, Defendants respectfully request that the above action now pending in the Superior Court of Guilford County, North Carolina, General Court of Justice, be removed to this Court.

This the 16th day of December, 2020.

**HARTZOG LAW GROUP LLP**

*/s/ Katherine Barber-Jones*
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email: kbarber-jones@hartzoglawgroup.com
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendants*

3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that this day the foregoing *Petition for Removal* was served on the following parties to this action by: electronic mail and by depositing a copy in the custody of the U.S. Mail, postage prepaid, addressed as follows:

Nancy P. Quinn
315 Spring Garden Street, Suite 1D
Greensboro, NC 27401
Email: npquinn@triadbiz.rr.com
*Attorneys for Plaintiff*

This the 16th day of December, 2020.

**HARTZOG LAW GROUP LLP**

*/s/ Katherine Barber-Jones*
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email: kbarber-jones@hartzoglawgroup.com
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendant*

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

Civil Action No. 1:20-cv-1135

| | |
|---|---|
| ANTHONY DIAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **DEFENDANTS' MOTION TO** |
| ) | **DISMISS** |
| ROBESON COUNTY and ROBESON ) | |
| COUNTY DEPARTMENT OF SOCIAL ) | **Fed. R. Civ. P. 12(b)(6)** |
| SERVICES, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Defendants, ROBESON COUNTY (the "County") and ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES ("RCDSS") (*collectively*, "Defendants") by and through their undersigned attorneys and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

Specifically, Defendants move to dismiss the Complaint upon the following grounds:

1.    All of Plaintiff's claims against Defendant "Robeson County Department of Social Services" are subject to dismissal because the Department of Social Services is not an entity subject to suit.

2.    Plaintiff's claims for violation of Title VII are subject to dismissal because Plaintiff's factual allegations

are insufficient to plausibly state that Plaintiff was not selected for the position of Director of Social Services or Assistant County Manager due to race or sex discrimination in violation of Title VII.

3.    Plaintiff's claims for retaliation in violation of Title VII are subject to dismissal because Plaintiff's factual allegations are insufficient to plausibly state that Plaintiff's non-selection for the positions of Director or Social Services or Assistant County Manager were in retaliation for previously-filed EEOC charges.

4.    Plaintiff's claims against Defendants under 42 U.S.C. § 1983 for alleged violations of 42 U.S.C. § 1981 should be dismissed because Plaintiff has failed to plausibly state that the alleged discrimination took place pursuant to County policy or that the County would otherwise be subject to *Monell* liability, and because Plaintiff has not sufficiently pled facts that racial discrimination was the but-for cause of the challenged conduct or that Plaintiff was deprived of due process.

5.    Plaintiff's allegations of non-selection and retaliation that go beyond the allegations of the EEOC charges are subject to dismissal because they were not raised before the EEOC.

In support, Defendants submit two exhibits, the EEOC Charges of Discrimination filed by Plaintiff in 2017 and 2019, and a Brief, all filed concurrently with this motion.

2

WHEREFORE, for the reasons stated above and based upon the supporting materials submitted concurrently with this motion, Defendants respectfully request that the Court enter an order dismissing Plaintiff's claims with prejudice.

Respectfully submitted, this the 22nd day of January, 2021.

**HARTZOG LAW GROUP LLP**

/s/ Katherine Barber-Jones
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email: kbarber-jones@hartzoglawgroup.com
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
Attorneys for Defendants

3

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that this day the foregoing Motion to Dismiss was filed with the Clerk of Court using the CM/ECF System, which will provide electronic notice to the following:

Nancy P. Quinn
315 Spring Garden Street, Suite 1D
Greensboro, NC 27401
Email: npquinn@triadbiz.rr.com
Attorneys for Plaintiff

This the 22nd day of January, 2021.

HARTZOG LAW GROUP LLP

/s/ Katherine Barber-Jones
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email: kbarber-jones@hartzoglawgroup.com
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
Attorneys for Defendants

4

EXHIBIT 1 to Defendants' Motion to Dismiss



EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA | |
| | | ☒ EEOC | 433-2017-01860 |
| | | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Anthony R. Dial | (910) 734-8636 | 1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| P O Box 3216 | Pembroke, NC 28372 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| ROBESON COUNTY DEPARTMENT OF SOCIAL SERVICES | 500 or More | (910) 671-3500 |

| Street Address | City, State and ZIP Code |
|---|---|
| 120 Glen Cowan Road | Lumberton, NC 28360 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN

☒ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: **10-10-2016**    Latest: **01-06-2017**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was hired by the above named employer in August 2000, and last held the position of Program Manager. On October 10, 2016, I applied for the Director of Robeson County Department of Social Services. On November 22, 2016, I was interviewed. Shortly thereafter, I was informed that I scored the highest of all eight applicants who were selected for interview, but my employers wanted all interviews to be conducted again. On December 13, 2016, I was re-interviewed. On January 6, 2017, I was informed that I did not get the promotion.

II. I believe that I have been discriminated against because of my race (Native American), my sex (male), and retaliated against for filing a previous EEOC Charge of Discrimination 846-2014-34667, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **May 05, 2017**     _(signature)_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EXHIBIT 2 to Defendants' Motion to Dismiss

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA ☒ EEOC | 433-2019-02828 |

RECEIVED 12/10/19

| AMENDED CHARGE | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Anthony Dial | 910-734-8636 | 1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 3216, Pembroke, NC 28372 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Robeson County Department Of Social Services and Robeson County Government and Robeson County Manager's Office | **500 or more** | 910-671-3500 |
| **120 Glen Cowan Road** | | |
| Lumberton, NC 28358 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|
| | | Earliest      Latest |
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | | **May 1, 2019**      **continuing** |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | | |
| ☐ OTHER *(Specify)* | | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I have previously filed a charge of discrimination under 433-2017-01860 that is pending. Earlier in 2019 I applied for the position of Assistant County Manager. I met the posted qualifications for the position. On May 1, 2019 I was interviewed for the position. In early June, 2019 I was informed that the County Commissioners considered my prior EEOC activity as a negative factor in their decision process for the selection of the new assistant County Manager. On June 5, 2019 an email was sent to staff indicating that Shelton Hill was the new assistant County Manager. On June 6, 2019 I was informed in writing that I would not get the position because allegedly I was not the most qualified applicant. Mr. Hill does not have the required qualifications and is less qualified than I am for the position.

II. I believe that I have been retaliated against for filing the previous charge. Further I believe I have been discriminated against based on my race (Native American) all in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| *(signature)*    12/5/19 | |
| Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.:1:20cv1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Plaintiff's Response in Opposition to |
| | ) | Defendants' Motion to Dismiss |
| | ) | pursuant to Rule 12(b)(6) |
| ROBESON COUNTY and | ) | |
| ROBESON COUNTY DEPARTMENT | ) | |
| OF SOCIAL SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW THE PLAINTIFF, by and through counsel, and hereby opposes the Defendants' Motion to Dismiss.  The allegations of the Complaint, when taken as true, present a prima facia case of discrimination, retaliation, and failure to promote under Title VII of the Civil Rights Act and a violation of 42 U.S.C. §1981 and §1983.  In support of this position, Plaintiff states as follows:

1.  The factual allegations of the Complaint when taken as true clearly support a finding that Plaintiff was denied the position of Director of the Department of Social Services on the basis of his race and/or sex.

2. The factual allegations of the Complaint when taken as true clearly support a finding that Plaintiff was denied the position of Assistant County Manager on the basis of his race.

3.  The factual allegations of the Complaint when taken as true clearly support a finding that Plaintiff was denied the positions of Director of the Department of Social

Services and/or the Assistant County Manager in retaliation for his prior concerns and objections to unlawful discrimination in the workplace.

4. The factual allegations of the Complaint when taken as true clearly support a finding that Plaintiff's due process rights were denied in violation of 42 U.S.C. §1981 and §1983 as demonstrated by a history of racially biased promotions.

5. That factual allegations beyond those delineated in the charge of discrimination are actionable as they were included in the scope of the EEOC's investigation in which Defendants participated.

6.  That Departments of Social Services are unique in their ability to be treated as legal entities depending upon the relationship to the State Department of Health and Human Services.

A memorandum in opposition to the Motion to Dismiss is filed and served contemporaneously herewith, and incorporated by reference.

Respectfully submitted, this the 12th  day of February, 2021.


/s/Nancy P. Quinn
Nancy P. Quinn,
Attorney for Plaintiff
NC State Bar No.: 16799
315 Spring Garden St., Suite 1D
Greensboro, NC 27401
Telephone: (336)  272-9072
E-mail: npquinn@thequinnlawfirm.com

2

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing and attached

Response in Opposition to the Motion to Dismiss was served on the Defendants

electronically through the CM/ECF system,  addressed as follows:

> Ms.  Katharine Barber-Jones
> Hartzog Law Group
> kbarber-jones@hartzoglawgroup.com
> 1903 N. Harrison Avenue, Suite 200
> Cary, NC 27513

This the  12th   day of February, 2021.


> /s/Nancy P. Quinn
> Nancy P. Quinn,
> Attorney for Plaintiff
> NC State Bar No.: 16799
> 315 Spring Garden St., Suite 1D
> Greensboro, North Carolina  27401
> Telephone: (336)  272-9072
> E-mail: npquinn@thequinnlawfirm.com

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANTHONY DIAL,                      )
                                   )
          Plaintiff,               )
                                   )
     v.                            )        1:20CV1135
                                   )
ROBESON COUNTY and ROBESON         )
COUNTY DEPARTMENT OF SOCIAL        )
SERVICES,                          )
                                   )
          Defendants.              )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This matter comes before the court on the Motion to Dismiss
for failure to state a claim filed by Defendants Robeson County
and Robeson County Department of Social Services ("Robeson
DSS"). (Doc. 7.) This motion is brought pursuant to Fed. R. Civ.
P. 12(b)(6).

For the reasons stated herein, this court will grant in
part and deny in part Defendants' motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of
the factual allegations contained in the complaint . . . ." Ray
v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting King v.
Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)).

Although a motion to dismiss "tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and this court's evaluation is "thus generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016), this court may consider documents that are incorporated into the complaint by reference where the document is integral to the complaint, see id. at 166, and the plaintiff does not challenge the documents' authenticity, see Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a plaintiff who might not have notice of (and an opportunity to fully respond to) facts newly introduced by the defendant in conjunction with motion of dismissal."). Other courts within the Fourth Circuit have considered Equal Employment Opportunity Commission ("EEOC") charges attached to motions to dismiss, where plaintiffs relied on those documents in their complaints and did not contest the exhibits' authenticity. See, e.g., Alexander v. City of Greensboro, No. 1:09-CV-934, 2011 WL 13857, at *6-8 (M.D.N.C. Jan. 4, 2011); Cohen v. Sheehy Honda of Alexandria, Inc., No. 1:06cv441 (JCC), 2006 WL 1720679, at *2 (E.D. Va. June. 19, 2006) (finding

-2-

the EEOC charge was integral to complaint because plaintiff "would have been unable to file a civil action without first filing such a charge").

This court finds that the Complaint incorporates by reference Plaintiff's Charges of Discrimination to the EEOC, which Defendants attached as exhibits to their Memorandum in Support of their Motion to Dismiss. (Ex. 1 – 2017 EEOC Charge (Doc. 8-1); Ex. 2 – 2019 EEOC Charge (Doc. 8-2).)

First, the 2017 and the 2019 EEOC Charges are integral to the Complaint. The same incidents form the basis for the allegations in the Complaint and the 2017 and 2019 EEOC Charges, (compare Complaint ("Compl.") (Doc. 3) ¶¶ 4-13, 15-23, with 2017 EEOC Charge (Doc. 8-1); 2019 EEOC Charge (Doc. 8-2), and this court's jurisdiction is predicated on Plaintiff having filed the Charges of Discrimination and received Right to Sue Letters, see 42 U.S.C. § 2000e-(5)(f) et seq. The Complaint establishes that Plaintiff timely submitted charges to the EEOC, and the EEOC issued Plaintiff right to sue letters for both charges. (Compl. (Doc. 3) ¶¶ 12, 18, 22.)

Second, Plaintiff does not challenge the authenticity of the Charges of Discrimination. Plaintiff refers to the charges in his Complaint, (see id. ¶¶ 12, 18), and in support of his arguments in his Memorandum in Opposition to Defendants' Motion

-3-

to Dismiss, (see Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Br.") (Doc. 10) at 2).

Defendants cite allegations in the Charges of Discrimination in their Brief in Support of their Motion to Dismiss. (See Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 8) at 4-5.)

In the absence of any objection, this court will consider the allegations in the Complaint to incorporate those in the Charges of Discrimination, and the facts contained therein will be considered as part of Plaintiff's Complaint. The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff is a Native American male who has worked for Defendants since 2000 "in a variety of capacities." (Compl. (Doc. 3) ¶ 4.) Plaintiff alleges that in 2014 he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding discrimination concerns. (Id. ¶ 7.)

A.    **Director of DSS Position**

On October 10, 2016, Plaintiff applied for a position as the Director of DSS. (Id. ¶ 8.) He interviewed and "scored the highest of all the candidates." (Id.) After Plaintiff's initial interview, "Defendants re-opened the interview phase of the search, upon information and belief, to obtain a director of a

-4-

different race than Plaintiff." (Id. ¶ 9). Plaintiff
re-interviewed for the position, but this time "the new
questions were specifically focused on areas in which Plaintiff
ha[d] limited experience and that the other candidate, Velvet
Nixon, had extensive experience." (Id.) Plaintiff alleges these
questions were changed because Defendants wanted to hire a black
candidate. (Id.) The three finalists for the Director of DSS
position were black. (Id.) Ms. Nixon, a black female, was
offered and accepted the position. (Id. ¶ 10.) Plaintiff trained
Ms. Nixon in her new position. (Id. ¶ 11.)

Plaintiff filed an EEOC Charge of Discrimination within 180
days of these actions and incorporated concerns of retaliation
because of his prior EEOC activity in 2014. (Id. ¶¶ 12-13.)

**B.  Assistant County Manager Position**

On May 1, 2019, Plaintiff applied and was interviewed for
the position of Assistant County Manager. (Id. ¶ 15.) Plaintiff
was told he was not offered the position because "he was not the
most qualified candidate." (Id. ¶ 16.) He was also told "that
his prior EEOC activity was a negative factor in his scoring for
the position." (Id.) Shelton Hill, a white male, "with less
education and experience and fewer qualifications than
Plaintiff" was offered and accepted the position. (Id.)

-5-

In July 2019, Plaintiff filed another EEOC Charge of Discrimination and amended the 2017 EEOC Charge to include "this new retaliatory information." (Id. ¶ 18.)

On August 14, 2020 and September 9, 2020, Plaintiff received right to sue letters on the Charges of Discrimination from the office of the EEOC. (Id. ¶ 22.)

## C.   **Other Allegations of Retaliation**

Plaintiff makes several additional allegations of retaliatory conduct by Defendants. First, Plaintiff alleges that during the interview phase for the Director of DSS position, the decisionmakers were told Plaintiff was under investigation for Medicaid fraud. (Id. ¶ 25.) Second, in spring 2019, Plaintiff was disqualified from consideration for the Deputy Director of DSS position because of a potential lawsuit related to the investigation. (Id. ¶ 27.) Third, Plaintiff alleges that because he voiced concerns regarding racial disparity in promotions and work environment for Native Americans, he "suffered excessive scrutiny of his performance, was subjected to factually unsubstantiated investigations, undermining of his authority with staff, and deprived of promotions and a professionally satisfying work environment as compared to his non-Native American coworkers." (Id. ¶ 29.)

-6-

D.    <u>**Procedural History**</u>

Plaintiff filed a charge of employment discrimination alleging race and sex discrimination and retaliation with the EEOC on May 16, 2017. (2017 EEOC Charge (Doc. 8-1).) Plaintiff filed another charge of employment discrimination alleging race discrimination and retaliation with the EEOC on December 10, 2019. (2019 EEOC Charge (Doc. 8-2).)

Plaintiff filed his Complaint in Guilford County Superior Court on November 12, 2020. (Compl. (Doc. 3).) Defendants filed a Petition for Removal on December 16, 2020. (Doc. 1.) Defendants then moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 7), and filed a brief in support of their motion, (Defs.' Br. (Doc. 8)). Plaintiff responded, (Doc. 9), and filed a brief in support of his response, (Pl.'s Br. (Doc. 10)); and Defendants replied, (Doc. 11).

II.    <u>**STANDARD OF REVIEW**</u>

Under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the

-7-

defendant is liable" and must demonstrate "more than a sheer
possibility that a defendant has acted unlawfully." Id. (citing
Twombly, 550 U.S. at 556–57). When ruling on a motion to
dismiss, a court must accept the complaint's factual allegations
as true. Id. Further, "the complaint, including all reasonable
inferences therefrom, [is] liberally construed in the
plaintiff's favor." Est. of Williams-Moore v. All. One
Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C.
2004) (citation omitted).

Nevertheless, the factual allegations must be sufficient to
"raise a right to relief above the speculative level" so as to
"nudge[] the[] claims across the line from conceivable to
plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556
U.S. at 680; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.
2009) (applying the Twombly/Iqbal standard to evaluate the legal
sufficiency of pleadings). A court cannot "ignore a clear
failure in the pleadings to allege any facts which set forth a
claim." Est. of Williams-Moore, 335 F. Supp. 2d at 646.
Consequently, even given the deferential standard allocated to
pleadings at the motion to dismiss stage, a court will not
accept mere legal conclusions as true and "[t]hreadbare recitals
of the elements of a cause of action, supported by mere

-8-

conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet the Twombly/Iqbal plausibility standard; however, the plaintiff is not required to make out a prima facie case or satisfy any heightened pleading requirements at the motion to dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584-85 (4th Cir. 2015). The plaintiff is, however, required to plead facts that permit the court to reasonably infer each element of the prima facie case, including less favorable treatment than similarly-situated employees outside of the protected class. McCleary-Evans, 780 F.3d at 585; see also Iqbal, 556 U.S. at 682-83 (plaintiff must plead facts supporting reasonable inference of discriminatory intent).

## III. **ANALYSIS**

Plaintiff alleges the following causes of actions against Defendants: First, race and sex discrimination in violation of Title VII; second, retaliation in violation of Title VII; and third, violation of §§ 1981 and 1983. (Compl. (Doc. 3) ¶¶ 7-39.)

As an initial matter, the parties disagree about whether Defendant Robeson DSS is a proper party to this lawsuit. (Compare Defs.' Br. (Doc. 8) at 8-9 with Pl.'s Br. (Doc. 10) at

-9-

12-13.) Defendant Robeson DSS argues that it is not an entity capable of being sued. (Defs.' Br. (Doc. 8) at 8.) This court agrees and will dismiss all claims against Defendant Robeson DSS.

"The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." Avery v. Burke Cnty., 660 F.2d 111, 113-14 (4th Cir. 1981); see also Fed. R. Civ. P. 17(b)(3). "In North Carolina, in the absence of a statute, 'the capacity to be sued exists only in persons in being.' Therefore, departments of municipalities and counties are not susceptible to suit without statutory authorization." Evans v. Pitt Cnty. Dep't of Soc. Servs., 972 F. Supp. 2d 778, 788-89 (E.D.N.C. 2013), vacated in unrelated part, appeal dismissed in part sub nom. Evans v. Perry, 578 F. App'x 229 (4th Cir. 2014), and aff'd in part, 616 F. App'x 636 (4th Cir. 2015) (quoting McPherson v. First & Citizens Nat'l Bank of Elizabeth City, 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954)).

Counties are legal entities capable of being sued, N.C. Gen. Stat. § 153A-11; however, there is no statutory basis for suing a department of social services, see Evans, 972 F. Supp. 2d at 788 (noting no statutory basis for suing a department of social services in North Carolina); Malloy v. Durham Cnty. Dep't

-10-

of Soc. Servs., 58 N.C. App. 61, 67, 293 S.E.2d 285, 289 (1982)
("With respect to the County's rights of subrogation,
its Department of Social Services is no more capable of suing in
its own name than is some lower echelon employee of such
Department."). It is for this reason that many district courts
in North Carolina have dismissed claims against departments of
social services. See Hester v. Colvin, No. 1:16CV410, 2017 WL
375656, at *3 (M.D.N.C. Jan. 26, 2017); Evans, 972 F. Supp. 2d
at 789; Powell v. Nash Cnty. Dep't of Soc. Servs., No. 5:14-CV-
281-FL, 2014 WL 4055831, at *2 (E.D.N.C. July 22, 2014), report
and recommendation adopted, No. 5:14-CV-281-FL, 2014 WL 4062715
(E.D.N.C. Aug. 14, 2014); Moua v. Alexander Cnty., No.
5:09CV19-V, 2012 WL 252648, at *6 (W.D.N.C. Jan. 26, 2012); see
also Johnson v. Marrow, 228 N.C. 58, 59, 44 S.E.2d 468, 470
(1947) ("Where a county is the real party in interest, it must
sue and be sued in its name.").

Given the lack of statutory authority to proceed
independently against Robeson County's Department of Social
Services and following the lead of many other federal courts in
this state, this court will dismiss Plaintiff's Complaint
against Defendant Robeson DSS.

-11-

A.    __Title VII Discrimination__

Plaintiff has alleged race-based employment discrimination against Defendant[1] pursuant to Title VII and 42 U.S.C. § 1981.[2] Plaintiff's Complaint alleges that Defendant failed to promote Plaintiff for the Director of DSS and Assistant County Manager positions in favor of a black female and a white male, respectively. (Compl. (Doc. 3) ¶¶ 10, 16.)

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). The elements of a Title VII employment discrimination claim are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010); see also Gerner v. Cnty. of Chesterfield, 674 F.3d 264, 266-68 (4th Cir. 2012) (gender). At

---

[1] Because this court will dismiss the Complaint against Defendant Robeson DSS, this court will use "Defendant" hereinafter to refer to Defendant Robeson County, the remaining defendant in these proceedings.

[2] As the Fourth Circuit has explained, "[t]he elements an employee must prove are the same under either provision." Pryor v. United Air Lines, Inc., 791 F.3d 488, 495 (4th Cir. 2015).

-12-

JA043

the motion to dismiss stage, Plaintiff's allegations must also
show that discrimination is a more likely reason for disparate
treatment rather than any other "obvious alternative
explanation" that is present on the face of the complaint and
"justified by [] nondiscriminatory intent." See Iqbal, 556 U.S.
at 682.

    This court finds that Plaintiff has plausibly alleged the
first three elements of a Title VII employment discrimination
claim. First, Plaintiff has alleged that he is Native American.
(Compl. (Doc. 3) ¶ 4.) Second, Plaintiff has alleged
satisfactory job performance at the time he was not promoted.
(See id. (alleging "Plaintiff is highly qualified and has served
the Defendant in a variety of capacities, with distinction,
while so employed").) Third, there is no apparent dispute
between the parties as to whether failure to promote constitutes
an adverse employment action, and the Fourth Circuit recognizes
the failure to promote as such. See, e.g., Anderson v.
Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir.
2005). Therefore, the relevant question in this case is whether
Plaintiff has plausibly alleged that Defendant treated
similarly-situated non-Native American employees more favorably.
See Woods v. City of Greensboro, 855 F.3d 639, 641 (4th Cir.)
(2017).

-13-

## 1.  **Director of DSS Position**

Plaintiff alleges that his non-selection as Director of DSS was a violation of Title VII due to race and sex discrimination. (Compl. (Doc. 3) ¶ 12.) Defendant argues that Plaintiff has offered only conclusory statements that require this court to speculate on the reason Plaintiff was not chosen. (Defs.' Br. (Doc. 8) at 12-13.) Plaintiff responds that he has established a prima facie case of racial discrimination. (Pl.'s Br. (Doc. 10) at 7.)[3] Plaintiff further argues that at the motion to dismiss stage he is not required to show he was more qualified than the person selected; rather, all he is required to show is that someone outside the protected class received the promotion. (Id. at 8.)

The Fourth Circuit has held that conclusory allegations that the employer was predetermined to select based on race do not plausibly state a claim for relief under Title VII. See

_____

[3] Plaintiff's response brief does not address sex discrimination in violation of Title VII. (See Pl.'s Br. (Doc. 10) at 6-9.) Because Plaintiff failed to address Defendant's arguments regarding whether Defendant discriminated against Plaintiff because of his sex, this court finds that Plaintiff has abandoned this claim, and therefore this court will dismiss Plaintiff's claim of sex discrimination in violation of Title VII. See Oliver v. Baity, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue."); see also Feldman v. L. Enf't Assocs. Corp., 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013) (gathering cases).

-14-

McCleary-Evans, 780 F.3d at 588. In McCleary-Evans, the
plaintiff, a black female, alleged her employer refused to hire
her for two different positions because of her race and sex in
violation of Title VII. Id. at 583. In support of that claim,
the plaintiff alleged the employer was "biased" and had
"predetermined" that it would select white applicants. Id.
Importantly, the complaint "did not include any allegations
regarding the qualifications or suitability of the persons hired
to fill the two positions." Id. at 584. The Fourth Circuit thus
found it could "only speculate that the persons hired were not
better qualified, or did not perform better during their
interviews, or were not better suited based on experience and
personality for the positions." Id. at 585-86. Therefore, the
Fourth Circuit dismissed the complaint. Id. at 586 (quoting
Iqbal, 556 U.S. at 678) (concluding the plaintiff's complaint
"stop[ped] short of the line between possibility and
plausibility of entitlement to relief").

This court finds that with respect to the non-hiring of
Plaintiff for the Director of DSS position, Plaintiff has failed
to plausibly allege a claim for relief. Although Plaintiff does
allege Defendant failed to hire him for the Director of DSS
position, he does not allege facts sufficient to show that the
reason Defendant failed to hire him as the Director of DSS was

-15-

because of his race. Plaintiff repeatedly alleges Defendant did not promote Plaintiff because it wanted a non-Native American. (See, e.g., Compl. (Doc. 3) ¶ 9.) But those "naked assertions" – a "formulaic recitation" of the necessary elements – "are no more than conclusions" and therefore insufficient. Iqbal, 556 U.S. at 678-79.

Specifically, Plaintiff alleges that Defendant re-opened the interview phase "to obtain a director of a different race than Plaintiff," and that the questions in the second interview were changed to favor Ms. Nixon because the questions were about "areas in which Plaintiff has limited experience and that the other candidate, Velvet Nixon, had extensive experience." (Compl. (Doc. 3) ¶ 9.) In short, Plaintiff is claiming that Defendant predetermined to select someone who was a different race than Plaintiff. This is conclusory and insufficient to state a claim for relief under Title VII. See McCleary-Evans, 780 F.3d at 586 ("The allegation that the [employer] did not hire [the employee] because its decision makers were biased is simply too conclusory."). Taking the facts alleged in the Complaint in the light most favorable to Plaintiff, Defendant decided to re-open the interview process and asked questions regarding areas in which Plaintiff had limited experience. (Compl. (Doc. 3) ¶ 9.) Plaintiff is asking this court to

-16-

impermissibly speculate that the reason for the re-interviewing and the change in questioning was because Defendant wanted a black person in the Director position. This court declines to do so. See Coleman, 626 F.3d at 191 (affirming the district court's finding that the plaintiff failed to state a Title VII race discrimination claim because "the complaint's allegations of race discrimination do not rise above speculation").

Plaintiff also argues he is not required to show he was more qualified than Ms. Nixon for the position of Director of DSS. (Pl.'s Br. (Doc. 10) at 7–8.) However, in the absence of any allegations of direct evidence of discrimination, Plaintiff must plead facts supporting a reasonable inference of discrimination. In Swierkiewicz, the Supreme Court noted that the plaintiff specifically alleged that the hired employee was "less experienced and less qualified" because that employee "had only one year of underwriting experience at the time he was promoted," whereas the plaintiff "had 26 years of experience in the insurance industry." Swierkiewicz, 534 U.S. at 508. The Supreme Court held that the plaintiff's complaint was sufficient to survive a motion to dismiss. Id. at 515. Moreover, the Fourth Circuit in McCleary-Evans found that because the plaintiff in McCleary-Evans alleged no facts indicating whether the plaintiff was more experienced or qualified than the employee hired, the

-17-

plaintiff had not sufficiently stated a claim under Title VII. See McCleary-Evans, 780 F.3d at 586 (citing Swierkiewicz, 534 U.S. at 508). An allegation that Plaintiff was more qualified than Ms. Nixon may not be required pleading, but Plaintiff must plead some facts to plausibly permit an inference of discrimination.

Unlike the plaintiff in Swierkiewicz, Plaintiff has not alleged Ms. Nixon was less experienced and less qualified for the position of Director of DSS. At most, Plaintiff alleged he had to train Ms. Nixon in her new position. (Compl. (Doc. 3) ¶ 11.) That allegation does not equate to a finding that Ms. Nixon was less qualified than Plaintiff. Additionally, Plaintiff's allegation that "he scored the highest of all the candidates and that he met the posted criteria," (id. ¶ 8), for the Director job does not plausibly allege he was more qualified than Ms. Nixon or any other candidate when Plaintiff fails to allege facts to explain why the "highest score" or meeting "the posted criteria" establishes that Plaintiff was more qualified than other candidates.

Even assuming Plaintiff has pled sufficient facts plausibly alleging he was not promoted because he is Native American, the face of the Complaint evidences a non-discriminatory reason for why Plaintiff was not hired for the Director position. The

-18-

Complaint alleges that "during the interview phase for the Director position, the decision makers were told that Plaintiff was under investigation alleging Medicaid fraud unrelated to his duties with the Defendants."[4] (Id. ¶ 25.) This court is not precluded from considering obvious non-discriminatory reasons for any disparate treatment. See Tabb v. Bd. of Educ. of Durham Pub. Schs., No. 1:17CV730, 2019 WL 688655, at *8 (M.D.N.C. Feb. 19, 2019) (citing Woods, 855 F.3d at 647, 648, 649, 652, for the proposition that a court may consider "obvious non-discriminatory alternative reasons for any disparate treatment" at the motion to dismiss stage). The fact that Plaintiff alleges a fact which plausibly proves a non-discriminatory basis for the employer's decision further dispels any possible plausible inference of discrimination based on race. Thus, this court finds Plaintiff has failed to sufficiently plead facts stating a

---

[4] Plaintiff has not alleged that Defendant was investigating the Medicaid fraud allegation against Plaintiff or who told the decisionmakers for the Director of DSS position about the investigation. Although it may be discriminatory for Defendant to initiate a baseless investigation against Plaintiff in retaliation against his protected activity, nothing in the Complaint supports the contention that Defendant was in any way involved with the Medicaid fraud investigation. Therefore, this court finds that consideration of the Medicaid fraud investigation during the interview process for the Director of DSS position is somehow a suggestion of discrimination. Similarly, Plaintiff offers no plausible reason why the fact of that investigation should not have been considered by an employer. Plaintiff appears to acknowledge he was under investigation. (Compl. (Doc. 3) ¶ 26.)

-19-

plausible claim of race discrimination in violation of Title VII. Accordingly, this court will grant Defendant's Motion to Dismiss Plaintiff's claim for race discrimination in violation of Title VII with respect to the non-hiring of Plaintiff as Director of DSS.

###    2.    Assistant County Manager Position

Plaintiff also alleges that Defendant violated Title VII's prohibition against racial discrimination when it failed to promote Plaintiff to Assistant County Manager. (Compl. (Doc. 3) ¶¶ 15-18.) Defendant argues that "[m]erely stating that Plaintiff, a Native American male, was not hired and Shelton Hill, a Caucasian male, was hired, is not sufficient to plausibly allege that the decision was made due to race discrimination." (Defs.' Br. (Doc. 8) at 14.) Plaintiff responds that he has made out a prima facie case of race discrimination and has pled facts showing he was at least as qualified as Mr. Hill. (Pl.'s Br. (Doc. 10) at 7-8.)

Here, Plaintiff alleges that he had "excellent qualification[s]" for the Assistant County Manager position but was told he was not promoted to the position "because he was not the most qualified candidate." (Compl. (Doc. 3) ¶ 16.) Plaintiff further alleges "he was informed that his prior EEOC activity

-20-

was a negative factor in his scoring for the position." (Id.)[5]
Plaintiff appears to allege that County Manager Kellie Blue was
a decisionmaker for the position, (see id. ¶ 17), but Plaintiff
does not allege Ms. Blue was aware of Plaintiff's prior EEOC
charges. Because Plaintiff has not pled facts plausibly alleging
the decisionmakers for the Assistant County Manager position
knew of Plaintiff's prior EEOC activity,[6] Plaintiff's prior EEOC
charge cannot be the basis of showing Defendant discriminated
against Plaintiff when it did not promote Plaintiff to Assistant
County Manager.

---

[5] Although Plaintiff alleges that he was informed his prior
EEOC activity negatively affected his application, Plaintiff
does not describe who made this allegation, when it was made, or
whether the source had any plausible basis for that allegation.
Under these circumstances, the allegation is conclusory and
fails to provide any plausible factual support for a claim of
retaliation.

[6] Plaintiff's allegations as to the relationship between the
County Manager (Kellie Blue), the County Commissioners, and
Plaintiff's application for Assistant County Manager is
confusingly pled. (See Compl. (Doc. 3) ¶ 17.) It appears
Plaintiff alleges that Ms. Blue was the decisionmaker in hiring
for the position. (Id. (alleging "while the selection decision
for assistant county manager was within the scope of County
Manager Kellie Blue's duties . . . .")) It also appears the
County Commissioners could have provided substantive input to
Ms. Blue. (Id.) Even construing these allegations in the light
most favorable to Plaintiff, Plaintiff offers no facts to
plausibly suggest the County Commissioners were aware of
Plaintiff's EEOC claim or that the County Commissioners did in
fact provide input to Ms. Blue.

-21-

However, other allegations in the Complaint support a finding by this court that Plaintiff has sufficiently stated a claim for relief under Title VII. The Complaint alleges that Mr. Hill had "less education and experience and fewer qualifications than Plaintiff." (Compl. (Doc. 3) ¶ 16.) This is akin to the plaintiff in Swierkiewicz. See Swierkiewicz, 534 U.S. at 508, 515 (holding the complaint should not be dismissed where the plaintiff alleged that he had more years of experience and qualifications than the individual who was hired instead of the plaintiff). Because the Complaint alleges that Plaintiff had more education and experience than Mr. Hill (a white male), and Defendant promoted Mr. Hill over Plaintiff, Plaintiff has "allege[d] facts to satisfy the elements of a cause of action created by [Title VII]." McCleary-Evans, 780 F.3d at 585. Assuming the truth of Plaintiff's allegations at this stage of the proceedings, Plaintiff has alleged Defendant failed to promote him over a white person despite Plaintiff having more experience and qualifications. Thus, this court finds Plaintiff has sufficiently pled facts stating a plausible claim of race discrimination in violation of Title VII. Accordingly, this court will deny Defendant's Motion to Dismiss Plaintiff's claim for race discrimination in violation of Title VII with respect to the non-hiring of Plaintiff as Assistant County Manager.

-22-

**B.** **Title VII Retaliation**

In addition to Plaintiff's claim for Title VII discrimination, Plaintiff alleges that Defendant retaliated against him in violation of Title VII and Section 1981.[7] Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation . . . , a plaintiff must prove '(1) that [the employee] engaged in a protected activity,' as well as '(2) that [the] employer took an adverse employment action against [the employee],' and '(3) that there was a causal link between the two events.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (quoting EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)).

Proving causation at the pleading stage is "not [] onerous," and retaliation plaintiffs "do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action." Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018). Still, plaintiffs must allege

---

[7] This analysis is identical for Plaintiff's 42 U.S.C. § 1981 retaliation claim. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015).

-23-

facts plausibly supporting an inference of causation, a task
that may be accomplished by alleging facts that show the
employer took an adverse action "soon after becoming aware" of
protected activity. Id. at 336 (emphasis added); see also Villa
v. CavaMezze Grill, LLC, 858 F.3d 896, 899, 901 (4th Cir. 2017)
(discussing importance of an employer's subjective knowledge
since an adverse action must be motivated by a desire to
retaliate in order to be actionable); Carter v. Ball, 33 F.3d
450, 460 (4th Cir. 1994) (dealing with termination following
notice employee filed EEOC charge); Welton v. Durham Cnty., No.
1:17-CV-258, 2018 WL 4656242, at *3 (M.D.N.C. Sept. 27, 2018),
aff'd, 781 F. App'x 242 (4th Cir. 2019) (discussing Strothers,
895 F.3d at 335-36).

    If a plaintiff is proving causation by temporal proximity
alone, the adverse employment action must be "very close" in
time to the protected activity. Clark Cnty. Sch. Dist. v.
Breeden, 532 U.S. 268, 273 (2001) (per curiam). "A lengthy time
lapse between the employer becoming aware of the protected
activity and the alleged adverse employment action, as was the
case here, negates any inference that a causal connection exists
between the two." Dowe v. Total Action Against Poverty in
Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see also
Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 656 (4th

-24-

Cir. 2017) (finding that eight to nine months between awareness of the protected activity and the alleged adverse employment action is not sufficiently close in time). If too long a period of time passes between the protected activity and the retaliatory conduct, "courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Additionally, the Fourth Circuit has consistently required the decisionmaker know of the protected activity at the time the alleged retaliation occurred. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 124 (4th Cir. 2021) (quoting Talley v. U.S. Postal Serv., 720 F.2d 505, 508 (8th Cir. 1983)) ("Thus, where a relevant decisionmaker is unaware of any prior complaints, a plaintiff 'cannot establish the necessary causal connection between [his] filing a complaint . . . and [his] termination.'").

### 1.  **Director of DSS Position**

The Complaint alleges that Plaintiff was not promoted to Director of DSS because of his 2014 EEOC Charge. (Compl. (Doc. 3) ¶ 13.) Defendant argues that because three years separate the 2014 EEOC Charge and the non-hiring of Plaintiff for Director of DSS in 2017, too much time has passed for this court to infer a causal link. (Defs.' Br. (Doc. 8) at 18.) Although, "evidence of

-25-

recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation," <u>Lettieri</u>, 478 F.3d at 650, the Complaint does not allege additional adverse employment actions between 2014 and 2017. This court finds three years between the protected activity and the adverse employment action does not establish a causal link. <u>See</u> <u>Breeden</u>, 532 U.S. at 273-74 (2001). Thus, Plaintiff has not plausibly alleged that the failure to promote to Director of DSS was caused by Plaintiff's 2014 EEOC Charge. Accordingly, Plaintiff has failed to state a Title VII retaliation claim with respect to the non-hiring of Plaintiff for DSS Director.

> 2.  **<u>Assistant County Manager Position</u>**

In addition to claiming Defendant retaliated against Plaintiff when it did not hire him as Director of DSS, Plaintiff claims Defendant retaliated against him when it did not hire him as Assistant County Manager. (Compl. (Doc. 3) ¶ 18.) Plaintiff claims he was not promoted because of his 2017 EEOC Charge. (<u>Id.</u>)

Here, two years passed between the protected activity (the 2017 EEOC Charge) and the adverse employment action (not hired as Assistant County Manager). This court finds that two years between the protected activity and adverse employment action does not establish a causal link, especially since Plaintiff has

-26-

not alleged any intervening circumstances of retaliatory conduct by Defendants.[8] See discussion supra Part III.B.1. Moreover, Plaintiff has not alleged that the decisionmakers for hiring the Assistant County Manager were aware of any of Plaintiff's protected activity. Although Plaintiff alleges "he was informed that his prior EEOC activity was a negative factor in his scoring for the position," (Compl. (Doc. 3) ¶ 16), he does not allege who informed him, nor does he allege that County Manager Kellie Blue or any other decisionmaker was aware of Plaintiff's protected activity. Because two years lapsed before any allegedly retaliatory conduct by Defendant, and because Plaintiff has not alleged any decisionmaker was aware of his protected activity, this court finds Plaintiff has not plausibly alleged that the failure to promote to Assistant County Manager was caused by Plaintiff's 2017 EEOC Charge. Accordingly,

---

[8] Plaintiff argues in his response brief that "[t]he causal connection between the reporting of his concerns about racial and gender discrimination in the first interview process and the fraud allegations during the second interview process a few weeks later creates a clear temporal proximity between the events." (Pl.'s Br. (Doc. 10) at 10.) That Plaintiff raised concerns about race and gender discrimination in the interview for the Director of DSS position is alleged nowhere in the Complaint. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184-85 (4th Cir. 2013) (citations omitted). Therefore, this court will not consider these new allegations in Plaintiff's response brief.

-27-

Plaintiff has failed to state a Title VII retaliation claim with respect to the non-hiring of Plaintiff for Assistant County Manager.

### 3.    Deputy Director of DSS Position

The Complaint also alleges Defendant retaliated against Plaintiff because Plaintiff was disqualified from consideration for Deputy Director of DSS in spring 2019 because of a potential lawsuit arising out of a Medicaid fraud investigation. (Compl. (Doc. 3) ¶ 27.) This court finds Plaintiff has failed to plausibly allege a claim for retaliation based on these facts.

First, assuming that being disqualified from consideration for a position is an adverse employment action, it is unclear what protected activity is linked to Defendant's non-consideration of Plaintiff for Deputy Director of DSS. The Complaint contains no allegation linking Plaintiff's non-consideration to any protected activity. Further, the Complaint offers a non-discriminatory reason for why Plaintiff was not considered for the position: he was under investigation for Medicaid fraud, which could ultimately result in litigation. (Id.)

Second, it is unclear why this adverse employment action was not mentioned in the 2019 EEOC Charge. The non-consideration for Deputy Director of DSS occurred in "spring 2019" before

-28-

Plaintiff filed the 2019 EEOC Charge in July 2019, yet the 2019 EEOC Charge does not contain allegations that Plaintiff was not considered for Deputy Director of DSS. (2019 EEOC Charge (Doc. 8-2).) Defendant argues this goes beyond the scope of the allegations in the 2019 EEOC Charge, and "factual allegations in formal litigation must correspond to the allegations in an EEOC Charge." (Defs.' Br. (Doc. 8) at 19-20 (citing <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 509 (4th Cir. 2005)).) Plaintiff responds that <u>Chacko</u> does not apply because that case dealt with one type of Title VII violation in the EEOC charge and a different type of violation at trial. (Pl.'s Br. (Doc. 10) at 9.)[9]

Even if the non-consideration for Deputy Director of DSS was linked to the 2017 EEOC charge – the most recent protected activity prior to spring 2019 – Plaintiff has not plausibly

_____

[9] In <u>Nealon v. Stone</u>, the Fourth Circuit held that a plaintiff may raise a retaliation claim for the first time in federal court where the plaintiff did not initially allege retaliation in the plaintiff's EEOC charge. <u>Nealon</u>, 958 F.2d 584, 590 (4th Cir. 1992). <u>Nealon</u> engaged in protected activity by reporting alleged gender discrimination due to different pay grades for males and females at the same job. <u>Id.</u> at 587. <u>Nealon</u> failed to include this protected activity as evidence of retaliation in her EEOC charge. <u>Id.</u> The Fourth Circuit found a plaintiff can raise a retaliation claim for the first time in federal court. <u>Id.</u> However, <u>Nealon</u> does not apply because in this case Plaintiff alleges retaliation that occurred <u>after</u> the protected activity. The EEOC charge was in 2017, and the non-selection for Deputy Director of DSS was in spring 2019. (Compl. (Doc. 3) ¶¶ 12, 27.)

-29-

JA060

alleged a causal link between the two. Two years passed without additional retaliatory acts between the protected activity and retaliatory conduct. Moreover, Plaintiff does not allege that Ms. Nixon – the decisionmaker – was aware of any of Plaintiff's prior EEOC charges. Therefore, this court finds Plaintiff has failed to state a Title VII retaliation claim with respect to the non-consideration of Plaintiff for Deputy Director of DSS.

### 4.   <u>Other Retaliation Allegations</u>

The Complaint alleges additional retaliations against Plaintiff. (Compl. (Doc. 3) ¶¶ 25, 29.) Plaintiff appears to allege Defendant retaliated against him because he was subjected to a Medicaid fraud investigation. (<u>See</u> <u>id.</u> ¶ 25; Pl.'s Br. (Doc. 10) at 9.) This argument fails for several reasons. First, Plaintiff does not allege what protected activity is linked to the initiation of this fraud investigation. Second, Plaintiff does not allege Defendant was initiating the investigation, or that Defendant told the decisionmakers for the Director of DSS position about this investigation. (Compl. (Doc. 3) ¶ 25.) For these reasons, Plaintiff has not plausibly alleged a causal link between the Medicaid fraud investigation and any protected activity. <u>See</u> <u>supra</u> note 4.

Plaintiff further alleges he "suffered excessive scrutiny of his performance, was subjected to factually unsubstantiated

-30-

investigations, undermining of his authority with staff, and deprived of promotions and a professionally satisfying work environment as compared to his non-Native American coworkers." (Compl. (Doc. 3) ¶ 29.) Although this may constitute an adverse employment action, these allegations are unconnected to any protected activity. Plaintiff does not allege when these retaliatory acts occurred. Because Plaintiff has not alleged any temporal connection between the additional retaliatory acts and protected activity, Plaintiff fails to plausibly allege a Title VII retaliation claim.

In sum, Plaintiff has failed to sufficiently plead facts that plausibly allege Plaintiff was retaliated against in violation of Title VII. Accordingly, this court will grant Defendant's Motion to Dismiss with respect to Plaintiff's retaliation claim.

C.    §§ 1983 and 1981[10]

Finally, Plaintiff alleges Defendant has violated Plaintiff's due process rights in violation of § 1983. (Compl. (Doc. 3) ¶ 35-37.) "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the

_____

[10] This court has previously addressed Plaintiff's § 1981 claims in its discussion of Plaintiff's Title VII discrimination and retaliation claims. See supra notes 2, 7.

-31-

JA062

United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). Congress did not intend to impose liability on a municipality for a violation of a plaintiff's constitutional rights unless deliberate action attributable to the municipality itself was the "moving force" behind the plaintiff's deprivation. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 400 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Thus, a plaintiff must prove two essential elements to establish liability under § 1983: "(1) that the defendant[] acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional right as a result of that action." Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F. Supp. 3d 797, 808 (M.D.N.C. 2021) (quoting Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004)).

Under the "color of state law" requirement, a § 1983 plaintiff alleging race discrimination in violation of § 1981 and Title VII must adequately plead the following elements: "(1) the existence of an official policy or custom (2) that is fairly attributable to the local government (3) that proximately caused the underlying § 1981 race discrimination." Davis, 320 F. Supp.

-32-

2d at 403 (citing Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)); see also Monell, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

The existence of an official policy or custom may be established in four ways: "(1) through an express policy . . . ; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

In support of Plaintiff's claim that Defendant violated his right to due process, (Compl. (Doc. 3) ¶ 35), Plaintiff alleges "[t]hat the Defendants' conduct as herein set out was purposeful, deliberate, intentional, and done with reckless disregard of the rights of Plaintiff," (id. ¶ 36). Plaintiff further alleges "Defendants acted intentionally under color of law." (Id. ¶ 37.) This court finds that Plaintiff's allegations are unsupported by specific facts indicating there was any express policy, decision of a person with final policymaking

-33-

authority, omission amounting to deliberate indifference, or
pervasive practice.

Because "[t]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice," Iqbal, 556 U.S. at 678, Plaintiff's allegations do not
lead to a reasonable inference that Plaintiff's constitutional
rights were violated by Defendant under color of law.
Accordingly, this court will dismiss Plaintiff's § 1983 claim.

IV.   **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss,
(Doc. 7), is **GRANTED IN PART AND DENIED IN PART**. The motion is
**GRANTED** as to Plaintiff's claim of Title VII race discrimination
in the non-promotion to Director of Department of Social
Services, Plaintiff's Title VII retaliation claim, and
Plaintiff's § 1981 and § 1983 claims. The motion is **DENIED** as to
Plaintiff's claim of Title VII race discrimination in the non-
promotion to Assistant County Manager.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is
**GRANTED** as to Defendant Robeson County Department of Social
Services and this Defendant is hereby **DISMISSED** from this
action.

-34-

This the 29th day of September, 2021.

_____
United States District Judge

-35-

JA066

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

Civil Action No. 1:20-cv-1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ANSWER** |
| | ) | |
| ROBESON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, ROBESON COUNTY (the "County" or "Defendant") by and through its undersigned attorneys and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby respectfully submits the following Answer to Plaintiff's Complaint [DE 3].

## ANSWER AND FIRST DEFENSE

Without waiving any other defenses asserted herein, Defendant responds to the individually numbered paragraphs of Plaintiff's Complaint [DE 3] (*hereinafter*, "Complaint") as follows:

1.    The allegations of Paragraph 1 are admitted upon information and belief.

2.    It is admitted that Defendant is a county as defined in N.C. Gen. Stat. § 153A-1(3) and thereby exercises those powers delegated to it by the

North Carolina General Assembly as a unit of local government. It is further admitted that the primary location of Defendant's offices and facilities is in Lumberton, Robeson County, North Carolina. It is further admitted that Defendant employs 15 or more employees in each of the 20 or more calendar weeks in the current calendar year and did so at the time the Complaint in this action was filed. Except as specifically admitted, the remaining allegations constitute legal conclusions to which no response is required. To the extent that a response is required to any such allegation, or that any allegation of Paragraph 2 is not specifically admitted, the allegations of Paragraph 2 are denied.

3.     It is admitted that the Robeson County Department of Social Services ("RCDSS") is a governmental entity that is part of Robeson County, but also undertakes some of its functions as an agent of the State of North Carolina. The remaining allegations of Paragraph 3 constitute legal allegations to which no response is required. To the extent a response is required and except as specifically admitted, the remaining allegations of Paragraph 3 are denied.

4.     It is admitted that Plaintiff Anthony Dial was first employed by Robeson County Department of Social Services ("RCDSS") in August 2000. It is admitted upon information and belief that Plaintiff is Native American. It is further admitted that Plaintiff has worked in several positions for RCDSS:

2

Foster Care Social Worker III, Child Protective Services Social Worker III, Foster Care Social Work Supervisor III, Child Protective Services Social Work Supervisor III, Program Administrator for Income Maintenance, and Program Manager for Child Support. It is admitted that Plaintiff informed RCDSS and Defendant that, prior to his work for RCDSS, Plaintiff was employed as a corrections officer, and previously as a sergeant in the United States Marine Corps. The remaining allegations of Paragraph 4 constitute conclusory or legal allegations to which no response is required. To the extent a response is required and except as specifically admitted, the remaining allegations of Paragraph 4 are denied.

5.     It is admitted that, as a Department of Social Services, RCDSS provides extensive programming and services to the people of Robeson County. It is further admitted that RCDSS is funded primarily by Robeson County and in part by State agencies for which it provides services pursuant to an annual written agreement entered between RCDSS and the Department of Health and Human Services, pursuant to N.C. Gen. Stat. § 108A-74. Except as specifically admitted, the allegations of Paragraph 5 are denied.

6.     It is admitted that Plaintiff generally performs his job duties. Defendant lacks sufficient knowledge and information to form a belief concerning the truth of Plaintiff's allegations regarding his internal motivations or involvement in activities outside of his employment, and the

3

same are therefore denied. The remaining allegations of Paragraph 6 constitute conclusory statements to which no response is required. To the extent a response is required to such allegations and except as specifically admitted, the allegations contained in Paragraph 6 are denied.

7.    It is admitted that Plaintiff filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against RCDSS in approximately 2014 and that the EEOC concluded its investigation without filing suit against RCDSS. It is further admitted that Plaintiff continued his employment throughout this period. Except as specifically admitted, the allegations contained in Paragraph 7 are denied.

8.    It is admitted that Plaintiff applied for the posted position of Director of RCDSS on or about October 10, 2016 and was interviewed for the position on or about November 22, 2016 along with eight other candidates. It is further admitted that all candidates who were interviewed met the posted criteria for the position. Except as specifically admitted, Defendant lacks sufficient information or knowledge to form a belief regarding the truth of the remaining allegations of Paragraph 8 and the same are therefore denied. Except as specifically admitted, the allegations contained in Paragraph 8 are denied.

9.    It is admitted that the RCDSS governing board conducted a second round of interviews and that Plaintiff and the other qualified candidates were

4

interviewed in December 2016. Except as specifically admitted, the allegations contained in Paragraph 9 are denied.

10.    It is admitted that RCDSS informed Plaintiff that he would not be selected for the position on or about January 6, 2017. It is further admitted that Ms. Velvet Nixon was a Black female candidate for the position of DSS Director and was selected and hired to serve in the position. Except as specifically admitted, the allegations contained in Paragraph 10 are denied.

11.    The allegations contained in Paragraph 11 are denied upon information and belief.

12.    It is admitted that Plaintiff filed a Charge with the EEOC within 180 days of his non-selection for the position of DSS Director (the "2017 Charge"). It is further admitted that Plaintiff alleged that he was not selected for the position due to race and sex discrimination, but Defendant and RCDSS deny any and all allegations of discrimination. Except as specifically admitted, the allegations contained in Paragraph 12 are denied.

13.    It is admitted that Plaintiff included allegations of retaliation in the 2017 Charge, but Defendant and RCDSS deny any and all allegations of retaliation. Except as specifically admitted, the allegations contained in Paragraph 13 are denied.

14.    The allegations contained in Paragraph 14 are denied.

5

15.    It is admitted that Plaintiff applied for the position of Assistant County Manager of Robeson County and was interviewed for the position on or about May 1, 2019. Except as specifically admitted, the allegations contained in Paragraph 15 are denied.

16.    It is admitted that Plaintiff was informed on or about June 17, 2019 that he was not selected for the position of Assistant County Manager. It is further admitted that a Caucasian male candidate for the position, Shelton Hill, was selected, but Defendant denies any and all allegations that Mr. Hill was less qualified for the position or had less experience or relevant experience than Plaintiff. Except as specifically admitted, the allegations contained in Paragraph 16 are denied.

17.    It is admitted that County Manager Kellie Blue directed the recruitment process for the position of Assistant County Manager and made the selection decision for the position. It is further admitted that the County Manager, by statute and practice, has the authority over all personnel decisions for the County, except for her own position, which is appointed by the Robeson County Board of Commissioners. Except as specifically admitted, the allegations contained in Paragraph 17 are denied.

18.    It is admitted that Plaintiff filed a Charge with the EEOC in or about July 2019 alleging that Defendant engaged in discrimination and retaliation by not selecting Plaintiff for the position of Assistant County

6

Manager (the "2019 Charge"), but Defendant denies any and all allegations of discrimination and retaliation. Except as specifically admitted, the allegations contained in Paragraph 18 are denied.

19.    The allegations contained in Paragraph 19 are denied.

20.    The allegations contained in Paragraph 20 are denied.

21.    The allegations contained in Paragraph 21 are denied.

22.    It is admitted that Plaintiff was issued Notices of Right to Sue concerning the 2017 Charge and the 2019 Charge. It is admitted upon information and belief that Plaintiff filed the subject lawsuit within 90 days of receiving the Notice of Right to Sue. Except as specifically admitted, the allegations contained in Paragraph 22 are denied.

23.    The allegations contained in Paragraph 23 are denied.

24.    Defendant's responses to the foregoing paragraphs are incorporated by reference as though fully stated herein.

25.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

26.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

7

27.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

28.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

29.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

30.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

31.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

32.    Plaintiff's retaliation claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

33.    Defendant's responses to the foregoing paragraphs are incorporated by reference as though fully stated herein.

8

34.     Plaintiff's Section 1981 and 1983 claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

35.     Plaintiff's Section 1981 and 1983 claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

36.     Plaintiff's Section 1981 and 1983 claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

37.     Plaintiff's Section 1981 and 1983 claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

38.     Plaintiff's Section 1981 and 1983 claims have been dismissed by Order of the Court and no response is required. To the extent a response is deemed to be required, these allegations are denied.

39.     The allegations contained in Paragraph 39 are denied.

EACH AND EVERY ALLEGATION NOT SPECIFICALLY ADMITTED HEREIN, INCLUDING THE ALLEGATIONS IN THE PRAYER FOR RELIEF, ARE HEREBY DENIED.

## **SECOND DEFENSE**

Plaintiff fails to state a claim upon which relief can be granted and his

9

claims should be dismissed, in whole or in part, pursuant to Rule 12(b)(6).

### THIRD DEFENSE

Defendant alleges that, to the extent Plaintiff failed to mitigate his damages, Plaintiff's claims and the relief sought are barred, at least in part.

### FOURTH DEFENSE

Defendant has complied in good faith with all applicable laws and regulations and having so complied, acted without improper motive, and any injury accruing to Plaintiff, the existence of which is specifically denied, is not actionable.

### ADDITIONAL DEFENSES

Defendant reserves the right to amend its Answer and to assert any additional defenses as the claims of the Plaintiff are more fully disclosed and additional evidence is discovered during the course of this litigation.

### PRAYER FOR RELIEF

WHEREFORE, having answered each and every allegation contained in Plaintiff's Complaint, Defendant prays the Court as follows:

1.    That the Plaintiff have and recover nothing from Defendant;

2.    That the costs of this action, including a reasonable attorney's fee for the defense thereof, be taxed against the Plaintiff;

3.    For a trial by jury of all issues of fact so triable herein; and

10

4.      For such other and further relief as the Court may deem just and

proper.

Respectfully submitted, this the 13th day of October, 2021.

**HARTZOG LAW GROUP LLP**

*/s/ Katherine Barber-Jones*
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email: kbarber-jones@hartzoglawgroup.com
2626 Glenwood Avenue, Suite 205
Raleigh, North Carolina 27608
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendants*

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that this day the foregoing was filed with the Clerk of Court using the CM/ECF System, which will provide electronic notice to the following:

Nancy P. Quinn
315 Spring Garden Street, Suite 1D
Greensboro, NC 27401
Email: npquinn@triadbiz.rr.com
Attorneys for Plaintiff

This the 13th day of October, 2021.

<div align="right">

**HARTZOG LAW GROUP LLP**

*/s/ Katherine Barber-Jones*
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email: kbarber-jones@hartzoglawgroup.com
2626 Glenwood Avenue, Suite 205
Raleigh, North Carolina 27608
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendants*

</div>

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

Civil Action No. 1:20-cv-1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT ROBESON COUNTY'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| ROBESON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, ROBESON COUNTY (the "County"), by and through its undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves the Court to grant Defendant summary judgment and dismiss with prejudice Plaintiff's remaining claims, because there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law on Plaintiff's claim of disparate treatment on the basis of race in connection with the 2019 selection for the position of Assistant County Manager.

In support, Defendant submits the following attached materials: (1) Transcript of the Deposition of Kellie Blue; (2) Transcript of the Deposition of Shelton Hill; (3) Excerpts from the Transcript of the Deposition of Anthony Dial; (4)

Robeson County's EEO-4 Report from 2019; and (5) Declaration of H. T. ("Tom") Taylor, Jr. Defendant also submits the separately-filed Declaration of Kellie Blue with exhibits and a Brief in Support of Defendant's Motion for Summary Judgment.

WHEREFORE, Defendant respectfully requests that the Court grant summary judgment to Defendant and dismiss Plaintiff's remaining claims with prejudice.

This the 6th day of September, 2022.

**HARTZOG LAW GROUP LLP**

*/s/ Katherine Barber-Jones*
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email:           kbarber-
jones@hartzoglawgroup.com
2626 Glenwood Avenue, Suite 205
Raleigh, North Carolina 27608
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendant Robeson County*

2

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that this day the foregoing was filed with the Clerk of Court using the CM/ECF System, which will provide electronic notice to the following:

Nancy P. Quinn
315 Spring Garden Street, Suite 1D
Greensboro, NC 27401
Email: npquinn@triadbiz.rr.com
Attorneys for Plaintiff

This the 6th day of September, 2022.

**HARTZOG LAW GROUP LLP**

*/s/ Katherine Barber-Jones*
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
Email:            kbarber-jones@hartzoglawgroup.com
2626 Glenwood Avenue, Suite 205
Raleigh, North Carolina 27608
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorney for Defendant Robeson County*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No.: 1:20CV01135

_____

|                        |     |
|------------------------|-----|
|                        | )   |
| ANTHONY DIAL,          | )   |
|                        | )   |
|           Plaintiff,   | )   |
|                        | )   |
| V.                     | )   |
|                        | )   |
| ROBESON COUNTY,        | )   |
|                        | )   |
|           Defendant,   | )   |
|                        | )   |

_____

Deposition of KELLIE BLUE

_____

Held Remotely

All Parties On Zoom

North Carolina

_____

Monday, August 1, 2022

2:00 P.M.

_____

Volume 1

Pages 1 through 21

Kellie Blue
August 1, 2022

Page 2

```
 1

 2

 3                A P P E A R A N C E S

 4    For the Plaintiff Dial:
      (via Zoom)
 5
      Nancy P. Quinn, Esquire
 6    The Quinn Law Firm
      315 Spring Garden Street, Suite 1D
 7    Greensboro, North Carolina  27401
      (336) 272-9072
 8    npquinn@thequinnlawfirm.com

 9

10    For the Defendant Robeson County:
      (via Zoom)
11
      Katherine Barber-Jones, Esquire
12    Hartzog Law Group, LLP
      2626 Glenwood Avenue, Suite 205
13    Raleigh, North Carolina  27608
      (919) 670-0338
14    kbarber-jones@hartzoglawgroup.com

15

16

17    Also present:

18    (via Zoom)

19

20    Rob Davis, Esquire

21

22

23    (via phone)

24

25    Anthony Dial
```

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

```
                                                      Page 3
 1

 2

 3                T A B L E   O F   C O N T E N T S

 4    Witness                Direct  Cross  Redirect  Recross

 5    Kellie Blue

 6

 7        by Ms. Quinn:       4-19              20

 8

 9        by Ms. Barber-Jones:       19-20

10

11

12

13

14

15

16

17

18

19

20

21                    E X H I B I T S

22

23    Number                Description          Marked

24

25    No exhibits
```

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 4

1          P R O C E E D I N G S          2:00 P.M.
2              (Whereupon,
3                  Kellie Blue
4     was called as a witness, duly affirmed, and testified
5     as follows:)
6          D I R E C T   E X A M I N A T I O N    2:00 P.M.
7              By Ms. Quinn:
8          Q    Good afternoon, Ms. Blue; my name is Nancy
9     Quinn.  I'm representing Anthony Dial in a lawsuit that
10    he's filed against the county.  We appreciate you
11    taking time out of your schedule to do this today.
12    Have you ever been deposed before?
13         A    I think so, many, many times ago.  I'm sure
14    have.  I don't exactly remember.
15         Q    Okay, I just kind of want to refresh your
16    memory on some of the ground rules and how it's
17    important that your answers be verbal, you know, that
18    only one of us talk at a time so the court reporter can
19    get a good record.  If at any time you don't understand
20    my questions, please let me know.  I want to be clear,
21    you know, before you answer that we're on the same
22    page.  I always ask everybody this question, so please
23    don't take it personally, but are you on any medication
24    today that would affect your ability to answer
25    truthfully?

Kellie Blue
August 1, 2022

Page 5

1      A     No.

2      Q     And without discussing any conversations

3  you've had with your attorneys, what did you do in

4  preparation for today's deposition?

5      A     Came to the meeting, came in here, and got

6  ready for the meeting.

7      Q     Very good.

8      A     I actually live for a meeting.

9      Q     Who is your current employer, Ms. Blue?

10     A     Robeson County.

11     Q     How long have you been employed by Robeson

12  County?

13     A     This is my twenty-fifth year.

14     Q     What positions have you held with the County

15  over those twenty-five years?

16     A     Assistant Finance Director, Finance Director,

17  Assistant County Manager, and currently County Manager.

18     Q     When did you assume the role of County

19  Manager?

20     A     2019.

21     Q     Could you just briefly explain the general

22  duties for us of the County Manager?

23     A     Overseeing, basically, all of the operations

24  for the County from all the departments that fall

25  within county government.  There are Health & Human

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 6

1    Services, our public safety, our enterprise departments

2    as well as general governmental departments, so all of

3    that.

4         Q    All right, who would be the person you would

5    report to as your supervisor?

6         A    The board of commissioners.

7         Q    And I understand that there are Assistant

8    County Managers that work with you, is that correct?

9         A    Yes, ma'am.

10        Q    How many people fill those positions?

11        A    Two.

12        Q    Can you give me kind of an overview of how

13   much supervisory capacity the board has in your day-to-

14   day operations and how much independence you have, for

15   example?

16        A    I'll -- you know, they signed my contract, of

17   course, but the day-to-day operations, I run the

18   County's day-to-day operations.

19        Q    Is there anything in that job duties that

20   requires you to go to the county commissioners first to

21   get approval to do things?

22        A    There are certain things that require board

23   actions, certain contracts, and things.

24        Q    Other than contracts, what else?

25        A    They're all specified in our budget

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 7

1    ordinance, the items that require their approval.

2        Q    Do they assist you at all in the hiring

3    process of employees?

4        A    No, they don't, uh-uh.

5        Q    Do you receive input either solicited or

6    unsolicited from board members about candidates for

7    managerial positions?

8        A    I don't.

9        Q    Do you get involved in any of the EEOC

10   investigations involving county employees?

11       A    I may be, if like say, for instance, we are

12   being, I guess, the attorney in the back room if we are

13   being updated on a case, I may hear something, but

14   other than that, no, when he's updating the board.  We

15   have a legal department.

16       Q    Is there a specific county policy or

17   procedure for hiring management level people under you?

18       A    Job description or that kind of thing, no

19   particular procedure; I have hiring authority for

20   those.

21       Q    When you're looking at job descriptions, is

22   there any particular guidance or procedures on

23   evaluating work experience versus educational

24   qualifications or candidates?

25       A    It's a combination of both.

Kellie Blue
August 1, 2022

Page 8

1      Q    Let me ask my question another way.  It
2   wasn't very well worded.  When it comes to looking at
3   work experience, how do you factor that as a substitute
4   for educational experience?
5      A    I think you have to look at both of those.
6   We look at whatever the combination is.
7      Q    That final determination is at your
8   discretion, is that correct?
9      A    It is.
10     Q    In those discretionary-type factors, does the
11  racial makeup of the county factor into candidate
12  selection?
13     A    For me absolutely not.
14     Q    So there isn't any concern about racial
15  equity imbalance between the population and the staff
16  of the county manager's office?
17     A    No.
18     Q    And would that be across the board for all
19  management positions or just in your office?
20     A    If I'm making the decision, yes, ma'am.
21     Q    Would you have been involved, say, in the tax
22  administrator position, so is that someone else's
23  department?
24     A    That is the board that appoints that
25  position.

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 9

```
 1        Q     When there are board-appointed positions,
 2   does the board ever come to you and ask for your input
 3   about the candidates?
 4        A     Normally not, because I don't have the
 5   decision; I can't make the decision.  It's not my
 6   employee.
 7        Q     Does Robeson County have a veteran's
 8   preference policy in hiring?
 9        A     No, we don't.
10        Q     Is that something that you're looking to do?
11        A     Not currently.
12        Q     How do you know Anthony Dial?
13        A     He is an employee of DSS.
14        Q     When did you first come to know him?
15        A     Anthony, I don't know exactly what year.
16        Q     Did you come to know him strictly in a
17   professional capacity or out in the community?
18        A     He was older than me.  He was -- he went to
19   the same high school I -- I did.
20        Q     When did you first get to know him
21   professionally?
22        A     I guess when I came to the County if he was
23   here.  I don't remember the exact year.
24        Q     Through the interactions you've had with Mr.
25   Dial over the years, would you have an opinion as to
```

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

                                                        Page 10

1   his work ethic?

2        A    I haven't worked with him directly.  He works

3   at our DSS, like I said.

4        Q    So you have no opinion about his work ethic?

5        A    I haven't worked with him directly is what I

6   said.

7        Q    During the years that you've known him, have

8   you had any interactions or sufficient interactions to

9   know about his ability to work or to lead other people?

10       A    Like I said, I haven't worked with him

11  directly.  I know that he works at our DSS and,

12  obviously, has supervisory roles out there.

13       Q    In some of the updates you've had from the

14  legal department or the county commissioners, did you

15  come to learn that he had filed an EEOC charge against

16  the County at some point?

17       A    Absolutely, like I said, I'm in those

18  sessions when the attorney updates our board because

19  I'm part of the management team, so I would have heard

20  those.

21       Q    Okay, do you recall when you learned that he

22  had filed a complaint --

23       A    I don't.

24       Q    -- with the EEOC?

25       A    I don't.

Kellie Blue
August 1, 2022

Page 11

1        Q     Looking to the Assistant County Manager
2    position that came open in 2019, I wanted to ask some
3    questions about the hiring process if I could.  We have
4    received some documents from Ms. Barber-Jones in
5    discovery about Mr. Hill and Mr. Dial's application,
6    and I just wanted to ask a couple questions about some
7    notes I saw on those.  In the top right-hand corner,
8    there were some handwritten notes like a day and a
9    time.  What were those for?
10       A     It may have been the time I interviewed him.
11   I'm not sure.
12       Q     Okay, did you all the -- did you interview
13   all of the candidates who applied for that position?
14       A     The ones who was trickled down for
15   qualifications.
16       Q     Do you recall how many people were eliminated
17   without having those interview-eligible qualifications?
18       A     I do not.
19       Q     Would you have been part of the initial
20   qualification screening process, or did human resources
21   or someone else do that?
22       A     Human resources.
23       Q     I'm sorry?
24       A     Human resources.
25       Q     Do you recall who in -- who in human

Kellie Blue
August 1, 2022

Page 12

1    resources made that initial qualifications finding?

2        A    I do not have a clue.  No, I don't.

3        Q    Tell me a little bit about the procedure for

4    those candidates who made the cut to get interviews?

5        A    My administrative assistant, who would be

6    clerk to the board at the time, she would call and set

7    up the interviews, and then she would give me a list of

8    the designated times and the individuals that she had

9    scheduled.

10       Q    In the discovery, we saw a selection of

11   questions that were presented to Mr. Hill and Mr. Dial.

12   Were those same questions presented to all candidates?

13       A    Yes.

14       Q    Were those the only questions asked during

15   Mr. Dial's interview?

16       A    I don't remember.  I would have followed the

17   script for each employee but -- or applicant.

18       Q    Would you have taken additional notes about

19   the interviews or just the ones that are on those

20   interview sheets?

21       A    The ones on the sheets.

22       Q    There was a -- a budgetary question on there.

23   Was that the only skills sort of oriented test that was

24   given to the applicants?

25       A    That was just -- that is just a -- a standard

Kellie Blue
August 1, 2022

Page 13

1   question, because that person would have to do budgets,

2   and so that's just a -- an application process, I

3   guess, a hands-on is what they call it.

4        Q    And that was given to all of the candidates

5   who made the cut to the interviews?

6        A    Yes.

7        Q    And just for the record, I'm sure it goes

8   without saying that, as Assistant County Manager,

9   that's an important position for the County?

10       A    Yes.

11       Q    And are the Assistant County Manager's duties

12  in part to fill in when you're not available?

13       A    Yes.

14       Q    And the Assistant County Managers need to be

15  able to answer, I guess, tough questions about what's

16  going on with the county manager's office in the

17  county, correct?

18       A    Yes.

19       Q    And they need to be able to work

20  independently?

21       A    Yes, uh-huh.

22       Q    Does each Assistant County Manager get

23  assigned certain departments that they're responsible

24  for, or does everybody share totally all of the

25  departments?

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 14

1       A     They're -- they are deviated by manager.

2       Q     And as Assistant County Manager, they have to

3  have knowledge about fiduciary responsibilities with

4  respect to county funds, is that correct?

5       A     Yes.

6       Q     And as an Assistant County Manager, they need

7  to understand the legal obligations that that office is

8  under, correct?

9       A     Yes.

10      Q     During that 2019 candidate search for an

11 Assistant County Manager, do you recall your interview

12 with Shelton Hill?

13      A     Briefly, yeah.

14      Q     Had you ever interviewed him in the past for

15 other positions?

16      A     I had not.

17      Q     Do you recall how long the interview lasted?

18      A     No.

19      Q     What, during that interview process, made Mr.

20 Hill stand out as a good candidate as the Assistant

21 County Manager?

22      A     I think he met the qualifications I was

23 looking for.  He had a broad range of skill set that

24 would be essential to the manager's office in an

25 assistant manager role.

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 15

1    Q    Any particular skill that comes to mind?

2    A    He had worked in our human resource office,

3    handled risk management.  That is a key fact or a key,

4    I guess, facet of an assistant manager.  One of the

5    other areas is SEATS.  He had worked in our regional

6    transportation department, very familiar with that

7    process with -- with the SEATS program that we assumed

8    from --

9    Q    What negative concerns came out of that

10   interview process for Mr. Hill?

11   A    None.

12   Q    Did anyone from the board give you any

13   suggestions or input into his application for the

14   position?

15   A    No.

16   Q    Based on the posting for that job, Mr. Hill

17   didn't have the educational requirements, is that

18   correct?

19          Ms. Barber-Jones:    Objection; you can

20   answer.

21          The Witness:        I mean, are you asking if

22   he has a four-year degree.  Is that what you're asking?

23          By Ms. Quinn:

24   Q    That was one of the requirements on the job

25   description, was it not?

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 16

```
 1        A    I don't --
 2             Ms. Barber-Jones:   Nancy, I'm going to
 3    object.  You're misrepresenting what's on the job
 4    description.  You can bring it up and show it to her if
 5    you want to ask her questions about what's in there
 6    but.
 7             By Ms. Quinn:
 8        Q    Well, let me ask it another way.  Looking at
 9    minimum training and experience on the job description,
10    it reads graduation from a four-year college or
11    university with a master's degree in public
12    administration, business administration, or a related
13    field with a master's degree in public administration
14    preferred and five to seven years of increasing
15    responsible experience in the administration and
16    management of local government programs and personnel
17    or any equivalent combination of training and
18    experience, which provides the required skills,
19    knowledge, and abilities.  Does that sound accurate?
20        A    I don't have it front of me.  I'm going off
21    what you read.
22        Q    The beginning of that minimum training seems
23    to put a fair amount of emphasis on college education.
24    Is that reasonable to say?
25        A    No, because there's an or in there.
```

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 17

1    Q    So the lack of college education wasn't a
2  concern with respect to Mr. Hill's candidacy?
3    A    No.
4    Q    And there's no particular procedure or
5  formula for the comparing work experience versus
6  education in these decisions, is that correct?
7    A    No.
8    Q    It's not correct, or there isn't any
9  procedure?
10   A    There's not a procedure.  I chose the best
11 person.
12   Q    In your review of EEOC matters, were you
13 familiar with another employee's EEOC matter that
14 involved a position Mr. Hill had received earlier in
15 the county -- Assistant County Manager?
16   A    Like I said earlier, I am -- when the
17 attorney briefs the board, I am in there, but I'm not
18 involved in the EEOC process.
19   Q    Prior to the Assistant County Manager
20 interviews in 2019, had you ever interviewed Anthony
21 Dial for any positions?
22   A    No.
23   Q    Do you recall how long his interview lasted?
24   A    No.
25   Q    Do you recall anything in particular that

Kellie Blue
August 1, 2022

Page 18

1   stood out in his application to make him a good

2   candidate?

3        A    Say your question again.  I didn't quite get

4   the first part of it.

5        Q    Okay, do you recall anything in Mr. Dial's

6   interview with you that stood out to make him a good

7   potential candidate?

8        A    No.

9        Q    Is it fair to say that he did meet the

10  qualifications for the position as it was posted?

11       A    I assume he did because it was handed up to

12  me from HR, so I'm assuming he did.

13       Q    Do you recall any negatives about his

14  application process that would have prevented him from

15  getting the position?

16       A    I don't recall anything particular about his

17  application.

18       Q    Any concerns about his supervisory

19  experience?

20       A    None of that was a factor.

21       Q    Anyone from the board of commissioners

22  discuss his potential application with you for

23  Assistant County Manager?

24       A    Again, no.

25       Q    Do you recall why he wasn't selected for the

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 19

1   position?

2       A    The reason I didn't choose him?

3       Q    Yes.

4       A    Because I didn't think he was best suited; I

5   chose the person I thought best suited.

6       Q    Did his pending EEOC action have anything to

7   do with his not being selected for Assistant County

8   Manager?

9       A    No.

10      Q    And just to kind of wrap up and be clear, Ms.

11  Blue, you were the sole decision-maker with respect to

12  not hiring Mr. Dial as the Assistant County Manager in

13  2019?

14      A    Yes.

15          Ms. Quinn:        I believe that's all of

16  the questions I have.  Ms. Barber-Jones may have some

17  for you.

18      C R O S S - E X A M I N A T I O N    2:33 P.M.

19          By Ms. Barber-Jones:

20      Q    I just wanted to clarify the question and

21  answer for one of the exchanges you had with Ms. Quinn

22  earlier.  I think you were asked whether you had any

23  concerns about Mr. Dial's interview process for his

24  application that would have made his -- would have

25  stood out as a negative in his -- his candidacy for the

Kellie Blue
August 1, 2022

Page 20

1    position.  You know, measuring Mr. Dial, head-to-head

2    with Mr. Hill, was there any difference in their

3    qualifications or experience that led to your decision?

4        A    I will say Mr. Dial's concentration has been

5    in one area, and that is our DSS department, and then

6    Mr. Hill had a broad array -- a broad array of

7    experience of what we needed in the manager's office

8    with some HR, risk management, which is a big part of

9    what we do.

10         Ms. Barber-Jones:   Thank you; that's all the

11   questions I have.  Did you have any follow-ups after

12   that, Nancy?

13       R E D I R E C T   E X A M I N A T I O N   2:24 P.M.

14         By Ms. Quinn:

15       Q    I've just got one, Ms. Blue.  When you were

16   looking at broader experience, did you look at any of

17   Mr. Dial's community experience, disaster management

18   assistance, those kinds of things?

19       A    That wasn't a factor in the decision.

20         Ms. Quinn:         That's all my questions;

21   thank you.

22         Ms. Barber-Jones:   Can we go off the record

23   to ascertain Ms. Blue's information?

24         (The proceedings were concluded at 2:24 P.M.)

25

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 21

1

2

3    NORTH CAROLINA

4    WAKE COUNTY

5                    C E R T I F I C A T E

6              I, David L. Overby, Notary/Reporter, do

7    hereby certify that the foregoing deposition of Kellie

8    Blue was taken by Lynn Houchins, Notary/Reporter, and

9    transcribed under my direction and that the twenty-one

10   pages which constitute this deposition are a true and

11   accurate transcript of the witness's testimony.

12             I certify that I am not counsel for, or

13   employed by either party in this action, nor am I

14   interested in the outcome of this action.

15             IN WITNESS THEREOF, I have hereunto set my

16

17   hand this 8th day of August, 2022.

18

19

20

21                    _David L. Overby_____

22

23                    David L. Overby

24                    Notary Public

25                    Certificate No.: 19930120037

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

Page 22

**A**

abilities 16:19
ability 4:24 10:9
able 13:15,19
absolutely 8:13
  10:17
accurate 16:19
  21:11
action 1:2 19:6
  21:13,14
actions 6:23
additional 12:18
administration
  16:12,12,13,15
administrative
  12:5
administrator
  8:22
affect 4:24
affirmed 4:4
afternoon 4:8
ago 4:13
amount 16:23
answer 4:21,24
  13:15 15:20
  19:21
answers 4:17
Anthony 1:5 2:25
  4:9 9:12,15
  17:20
applicant 12:17
applicants 12:24
application 11:5
  13:2 15:13 18:1
  18:14,17,22
  19:24
applied 11:13
appoints 8:24
appreciate 4:10
approval 6:21
  7:1
area 20:5
areas 15:5
array 20:6,6

ascertain 20:23
asked 12:14
  19:22
asking 15:21,22
assigned 13:23
assist 7:2
assistance 20:18
assistant 5:16,17
  6:7 11:1 12:5
  13:8,11,14,22
  14:2,6,11,20,25
  15:4 17:15,19
  18:23 19:7,12
assume 5:18
  18:11
assumed 15:7
assuming 18:12
attorney 7:12
  10:18 17:17
attorneys 5:3
August 1:18
  21:17
authority 7:19
available 13:12
Avenue 2:12

**B**

B 3:3,21
back 7:12
Barber-Jones
  2:11 3:9 11:4
  15:19 16:2
  19:16,19 20:10
  20:22
Based 15:16
basically 5:23
beginning 16:22
believe 19:15
best 17:10 19:4,5
big 20:8
bit 12:3
Blue 1:11 3:5 4:3
  4:8 5:9 19:11
  20:15 21:8

Blue's 20:23
board 6:6,13,22
  7:6,14 8:18,24
  9:2 10:18 12:6
  15:12 17:17
  18:21
board-appointed
  9:1
briefly 5:21
  14:13
briefs 17:17
bring 16:4
broad 14:23 20:6
  20:6
broader 20:16
budget 6:25
budgetary 12:22
budgets 13:1
business 16:12

**C**

C 2:3 3:3 4:1,6
  19:18 20:13
  21:5,5
call 12:6 13:3
called 4:4
can't 9:5
candidacy 17:2
  19:25
candidate 8:11
  14:10,20 18:2,7
candidates 7:6
  7:24 9:3 11:13
  12:4,12 13:4
capacity 6:13
  9:17
Carolina 1:1,16
  2:7,13 21:3
case 7:13
certain 6:22,23
  13:23
Certificate 21:25
certify 21:7,12
charge 10:15

choose 19:2
chose 17:10 19:5
Civil 1:2
clarify 19:20
clear 4:20 19:10
clerk 12:6
clue 12:2
college 16:10,23
  17:1
combination
  7:25 8:6 16:17
come 9:2,14,16
  10:15
comes 8:2 15:1
commissioners
  6:6,20 10:14
  18:21
community 9:17
  20:17
comparing 17:5
complaint 10:22
concentration
  20:4
concern 8:14
  17:2
concerns 15:9
  18:18 19:23
concluded 20:24
constitute 21:10
contract 6:16
contracts 6:23,24
conversations
  5:2
corner 11:7
correct 6:8 8:8
  13:17 14:4,8
  15:18 17:6,8
counsel 21:12
county 1:8 2:10
  4:10 5:10,12,14
  5:17,17,18,22
  5:24,25 6:8,20
  7:10,16 8:11,16
  9:7,22 10:14,16

11:1 13:8,9,11
  13:14,16,17,22
  14:2,4,6,11,21
  17:15,15,19
  18:23 19:7,12
  21:4
County's 6:18
couple 11:6
course 6:17
court 1:1 4:18
Cross 3:4
current 5:9
currently 5:17
  9:11
cut 12:4 13:5

**D**

D 4:1,6 20:13
David 21:6,23
Davis 2:20
day 6:14 11:8
  21:17
day-to- 6:13
day-to-day 6:17
  6:18
decision 8:20 9:5
  9:5 20:3,19
decision-maker
  19:11
decisions 17:6
Defendant 1:9
  2:10
degree 15:22
  16:11,13
department 7:15
  8:23 10:14 15:6
  20:5
departments
  5:24 6:1,2
  13:23,25
deposed 4:12
deposition 1:11
  5:4 21:7,10
description 3:23

Overby Court Reporting Service
1-800-682-5267

Kellie Blue
August 1, 2022

7:18 15:25 16:4
16:9
**descriptions** 7:21
**designated** 12:8
**determination**
8:7
**deviated** 14:1
**Dial** 1:5 2:4,25
4:9 9:12,25
12:11 17:21
19:12 20:1
**Dial's** 11:5 12:15
18:5 19:23 20:4
20:17
**didn't** 15:17 18:3
19:2,4
**difference** 20:2
**Direct** 3:4
**direction** 21:9
**directly** 10:2,5,11
**Director** 5:16,16
**disaster** 20:17
**discovery** 11:5
12:10
**discretion** 8:8
**discretionary-t...**
8:10
**discuss** 18:22
**discussing** 5:2
**DISTRICT** 1:1,1
**DIVISION** 1:2
**documents** 11:4
**don't** 4:14,19,23
7:4,8 9:4,9,15
9:23 10:23,25
12:2,16 16:1,20
18:16
**DSS** 9:13 10:3,11
20:5
**duly** 4:4
**duties** 5:22 6:19
13:11

_____ E _____

**E** 2:3,3 3:3,3,21
4:1,1,6,6 19:18
20:13,13,13
21:5,5
**earlier** 17:14,16
19:22
**education** 16:23
17:1,6
**educational** 7:23
8:4 15:17
**EEOC** 7:9 10:15
10:24 17:12,13
17:18 19:6
**either** 7:5 21:13
**eliminated** 11:16
**else's** 8:22
**emphasis** 16:23
**employed** 5:11
21:13
**employee** 9:6,13
12:17
**employee's** 17:13
**employees** 7:3,10
**employer** 5:9
**enterprise** 6:1
**equity** 8:15
**equivalent** 16:17
**Esquire** 2:5,11
2:20
**essential** 14:24
**ethic** 10:1,4
**evaluating** 7:23
**everybody** 4:22
13:24
**exact** 9:23
**exactly** 4:14 9:15
**example** 6:15
**exchanges** 19:21
**exhibits** 3:25
**experience** 7:23
8:3,4 16:9,15
16:18 17:5
18:19 20:3,7,16
20:17

**explain** 5:21

_____ F _____

**F** 3:3 21:5
**facet** 15:4
**fact** 15:3
**factor** 8:3,11
18:20 20:19
**factors** 8:10
**fair** 16:23 18:9
**fall** 5:24
**familiar** 15:6
17:13
**fiduciary** 14:3
**field** 16:13
**filed** 4:10 10:15
10:22
**fill** 6:10 13:12
**final** 8:7
**Finance** 5:16,16
**finding** 12:1
**Firm** 2:6
**first** 6:20 9:14,20
18:4
**five** 16:14
**follow-ups** 20:11
**followed** 12:16
**follows** 4:5
**foregoing** 21:7
**formula** 17:5
**four-year** 15:22
16:10
**front** 16:20
**funds** 14:4

_____ G _____

**G** 4:1
**Garden** 2:6
**general** 5:21 6:2
**getting** 18:15
**give** 6:12 12:7
15:12
**given** 12:24 13:4
**Glenwood** 2:12
**go** 6:20 20:22

**goes** 13:7
**going** 13:16 16:2
16:20
**good** 4:8,19 5:7
14:20 18:1,6
**government** 5:25
16:16
**governmental**
6:2
**graduation** 16:10
**Greensboro** 1:2
2:7
**ground** 4:16
**Group** 2:12
**guess** 7:12 9:22
13:3,15 15:4
**guidance** 7:22

_____ H _____

**H** 3:21
**hand** 21:17
**handed** 18:11
**handled** 15:3
**hands-on** 13:3
**handwritten** 11:8
**Hartzog** 2:12
**haven't** 10:2,5,10
**he's** 4:10 7:14
**head-to-head**
20:1
**Health** 5:25
**hear** 7:13
**heard** 10:19
**held** 1:14 5:14
**hereunto** 21:15
**high** 9:19
**Hill** 11:5 12:11
14:12,20 15:10
15:16 17:14
20:2,6
**Hill's** 17:2
**hiring** 7:2,17,19
9:8 11:3 19:12
**Houchins** 21:8

**HR** 18:12 20:8
**human** 5:25
11:20,22,24,25
15:2

_____ I _____

**I'll** 6:16
**I'm** 4:9,13 8:20
10:17,19 11:11
11:23 13:7 16:2
16:20 17:17
18:12
**I've** 20:15
**imbalance** 8:15
**important** 4:17
13:9
**increasing** 16:14
**independence**
6:14
**independently**
13:20
**individuals** 12:8
**information**
20:23
**initial** 11:19 12:1
**input** 7:5 9:2
15:13
**instance** 7:11
**interactions** 9:24
10:8,8
**interested** 21:14
**interview** 11:12
12:15,20 14:11
14:17,19 15:10
17:23 18:6
19:23
**interview-eligi...**
11:17
**interviewed**
11:10 14:14
17:20
**interviews** 12:4,7
12:19 13:5
17:20

investigations 7:10
involved 7:9 8:21 17:14,18
involving 7:10
isn't 8:14 17:8
it's 4:16 7:25 9:5 17:8
items 7:1

**J**

job 6:19 7:18,21 15:16,24 16:3,9

**K**

Katherine 2:11
kbarber-jones... 2:14
Kellie 1:11 3:5 4:3 21:7
key 15:3,3
kind 4:15 6:12 7:18 19:10
kinds 20:18
know 4:17,20,21 6:16 9:12,14,15 9:16,20 10:9,11 20:1
knowledge 14:3 16:19
known 10:7

**L**

L 3:3 21:6,23
lack 17:1
lasted 14:17 17:23
Law 2:6,12
lawsuit 4:9
lead 10:9
learn 10:15
learned 10:21
led 20:3
legal 7:15 10:14 14:7

level 7:17
list 12:7
little 12:3
live 5:8
LLP 2:12
local 16:16
long 5:11 14:17 17:23
look 8:5,6 20:16
looking 7:21 8:2 9:10 11:1 14:23 16:8 20:16
Lynn 21:8

**M**

M 4:6 19:18 20:13
ma'am 6:9 8:20
makeup 8:11
making 8:20
management 7:17 8:19 10:19 15:3 16:16 20:8 20:17
manager 5:17,17 5:19,22 11:1 13:8,22 14:1,2 14:6,11,21,25 15:4 17:15,19 18:23 19:8,12
manager's 8:16 13:11,16 14:24 20:7
managerial 7:7
Managers 6:8 13:14
Marked 3:23
master's 16:11 16:13
matter 17:13
matters 17:12
mean 15:21
measuring 20:1
medication 4:23

meet 18:9
meeting 5:5,6,8
members 7:6
memory 4:16
met 14:22
MIDDLE 1:1
mind 15:1
minimum 16:9 16:22
misrepresenting 16:3
Monday 1:18

**N**

N 2:3 3:3,3 4:1,6 4:6 19:18,18 20:13,13
name 4:8
Nancy 2:5 4:8 16:2 20:12
need 13:14,19 14:6
needed 20:7
negative 15:9 19:25
negatives 18:13
Normally 9:4
North 1:1,16 2:7 2:13 21:3
Notary 21:24
Notary/Reporter 21:6,8
notes 11:7,8 12:18
npquinn@theq... 2:8
Number 3:23

**O**

O 3:3,3 4:1,6 19:18,18 20:13
object 16:3
Objection 15:19
obligations 14:7
obviously 10:12

office 8:16,19 13:16 14:7,24 15:2 20:7
Okay 4:15 10:21 11:12 18:5
older 9:18
ones 11:14 12:19 12:21
open 11:2
operations 5:23 6:14,17,18
opinion 9:25 10:4
ordinance 7:1
oriented 12:23
outcome 21:14
Overby 21:6,23
Overseeing 5:23
overview 6:12

**P**

P 2:3,3,5 4:1
P.M 1:19 4:1,6 19:18 20:13,24
page 4:22
pages 1:25 21:10
part 10:19 11:19 13:12 18:4 20:8
particular 7:19 7:22 15:1 17:4 17:25 18:16
Parties 1:15
party 21:13
pending 19:6
people 6:10 7:17 10:9 11:16
person 6:4 13:1 17:11 19:5
personally 4:23
personnel 16:16
phone 2:23
Plaintiff 1:6 2:4
please 4:20,22
point 10:16
policy 7:16 9:8

population 8:15
position 8:22,25 11:2,13 13:9 15:14 17:14 18:10,15 19:1 20:1
positions 5:14 6:10 7:7 8:19 9:1 14:15 17:21
posted 18:10
posting 15:16
potential 18:7,22
preference 9:8
preferred 16:14
preparation 5:4
present 2:17
presented 12:11 12:12
prevented 18:14
Prior 17:19
procedure 7:17 7:19 12:3 17:4 17:9,10
procedures 7:22
proceedings 20:24
process 7:3 11:3 11:20 13:2 14:19 15:7,10 17:18 18:14 19:23
professional 9:17
professionally 9:21
program 15:7
programs 16:16
provides 16:18
public 6:1 16:11 16:13 21:24
put 16:23

**Q**

qualification 11:20

Kellie Blue
August 1, 2022

qualifications 7:24 11:15,17 12:1 14:22 18:10 20:3
question 4:22 8:1 12:22 13:1 18:3 19:20
questions 4:20 11:3,6 12:11,12 12:14 13:15 16:5 19:16 20:11,20
Quinn 2:5,6 3:7 4:7,9 15:23 16:7 19:15,21 20:14,20
quite 18:3

**R**
R 2:3 4:1,6 19:18 20:13,13 21:5
racial 8:11,14
Raleigh 2:13
range 14:23
read 16:21
reads 16:10
ready 5:6
reason 19:2
reasonable 16:24
recall 10:21 11:16,25 14:11 14:17 17:23,25 18:5,13,16,25
receive 7:5
received 11:4 17:14
record 4:19 13:7 20:22
Recross 3:4
Redirect 3:4
refresh 4:15
regional 15:5
related 16:12
remember 4:14

9:23 12:16
Remotely 1:14
report 6:5
reporter 4:18
representing 4:9
require 6:22 7:1
required 16:18
requirements 15:17,24
requires 6:20
resource 15:2
resources 11:20 11:22,24 12:1
respect 14:4 17:2 19:11
responsibilities 14:3
responsible 13:23 16:15
review 17:12
right 6:4
right-hand 11:7
risk 15:3 20:8
Rob 2:20
Robeson 1:8 2:10 5:10,11 9:7
role 5:18 14:25
roles 10:12
room 7:12
rules 4:16
run 6:17

**S**
S 2:3 3:3,21 4:1 19:18,18
safety 6:1
saw 11:7 12:10
saying 13:8
schedule 4:11
scheduled 12:9
school 9:19
screening 11:20
script 12:17
search 14:10

SEATS 15:5,7
selected 18:25 19:7
selection 8:12 12:10
Services 6:1
sessions 10:18
set 12:6 14:23 21:15
seven 16:14
share 13:24
sheets 12:20,21
Shelton 14:12
show 16:4
signed 6:16
skill 14:23 15:1
skills 12:23 16:18
sole 19:11
solicited 7:5
sorry 11:23
sort 12:23
sound 16:19
specific 7:16
specified 6:25
Spring 2:6
staff 8:15
stand 14:20
standard 12:25
STATES 1:1
stood 18:1,6 19:25
Street 2:6
strictly 9:16
substitute 8:3
sufficient 10:8
suggestions 15:13
Suite 2:6,12
suited 19:4,5
supervisor 6:5
supervisory 6:13 10:12 18:18
sure 4:13 11:11 13:7

**T**
T 3:3,3,3,21 4:6,6 19:18 20:13,13 21:5,5
take 4:23
taken 12:18 21:8
talk 4:18
tax 8:21
team 10:19
Tell 12:3
test 12:23
testified 4:4
testimony 21:11
thank 20:10,21
that's 13:2,9 19:15 20:10,20
there's 16:25 17:4,10
THEREOF 21:15
they're 6:25 13:23 14:1
thing 7:18
things 6:21,22,23 20:18
think 4:13 8:5 14:22 19:4,22
thought 19:5
time 4:11,18,19 11:9,10 12:6
times 4:13 12:8
today 4:11,24
today's 5:4
top 11:7
totally 13:24
tough 13:15
training 16:9,17 16:22
transcribed 21:9
transcript 21:11
transportation 15:6
trickled 11:14
true 21:10

truthfully 4:25
twenty-fifth 5:13
twenty-five 5:15
twenty-one 21:9
Two 6:11

**U**
uh-huh 13:21
uh-uh 7:4
understand 4:19 6:7 14:7
UNITED 1:1
university 16:11
unsolicited 7:6
updated 7:13
updates 10:13,18
updating 7:14

**V**
V 1:7
verbal 4:17
versus 7:23 17:5
veteran's 9:7
Volume 1:23

**W**
WAKE 21:4
want 4:15,20 16:5
wanted 11:2,6 19:20
wasn't 8:2 17:1 18:25 20:19
way 8:1 16:8
we're 4:21
went 9:18
what's 13:15 16:3,5
witness 3:4 4:4 15:21 21:15
witness's 21:11
worded 8:2
work 6:8 7:23 8:3 10:1,4,9 13:19 17:5

Kellie Blue
August 1, 2022

**worked** 10:2,5,10
  15:2,5
**works** 10:2,11
**wrap** 19:10

**X**

**X** 3:21 4:6 19:18
  20:13

**Y**

**yeah** 14:13
**year** 5:13 9:15,23
**years** 5:15 9:25
  10:7 16:14
**you're** 7:21 9:10
  13:12 15:22
  16:3
**you've** 5:3 9:24
  10:7,13

**Z**

**Zoom** 1:15 2:4,10
  2:18

**0**

**1**

**1** 1:18,23,25
**1:20CV01135** 1:2
**19-20** 3:9
**19930120037**
  21:25
**1D** 2:6

**2**

**2:00** 1:19 4:1,6
**2:24** 20:13,24
**2:33** 19:18
**20** 3:7
**2019** 5:20 11:2
  14:10 17:20
  19:13
**2022** 1:18 21:17
**205** 2:12
**21** 1:25

**2626** 2:12
**272-9072** 2:7
**27401** 2:7
**27608** 2:13

**3**

**315** 2:6
**336** 2:7

**4**

**4-19** 3:7

**5**

**6**

**670-0338** 2:13

**7**

**8**

**8th** 21:17

**9**

**919** 2:13

Overby Court Reporting Service
1-800-682-5267

JA107

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No.: 1:20CV01135

_____

                                    )
ANTHONY DIAL,                       )
                                    )
               Plaintiff,           )
                                    )
V.                                  )
                                    )
ROBESON COUNTY,                     )
                                    )
               Defendant,           )
                                    )
_____

Deposition of SHELTON HILL

_____

Held Remotely

All Parties On Zoom

North Carolina

_____

Monday, August 1, 2022

2:29 P.M.

_____

Volume 1

Pages 1 through 19

Shelton S-Hill
August 1, 2022

```
                                                          Page 2

1

2

3              A P P E A R A N C E S

4    For the Plaintiff Dial:
     (via Zoom)
5
     Nancy P. Quinn, Esquire
6    The Quinn Law Firm
     315 Spring Garden Street, Suite 1D
7    Greensboro, North Carolina   27401
     (336) 272-9072
8    npquinn@thequinnlawfirm.com

9

10   For the Defendant Robeson County:
     (via Zoom)
11
     Katherine Barber-Jones, Esquire
12   Hartzog Law Group, LLP
     2626 Glenwood Avenue, Suite 205
13   Raleigh, North Carolina   27608
     (919) 670-0338
14   kbarber-jones@hartzoglawgroup.com

15

16

17   Also present:

18   (via Zoom)

19

20   Rob Davis, Esquire

21

22

23   (via phone)

24

25   Anthony Dial
```

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

```
                                                      Page 3
 1

 2

 3              T A B L E   O F   C O N T E N T S

 4    Witness               Direct  Cross  Redirect  Recross

 5    Shelton Hill

 6

 7       by Ms. Quinn:       4-16

 8

 9       by Ms. Barber-Jones:      16-17

10

11

12

13

14

15

16

17

18

19

20

21                   E X H I B I T S

22

23    Number              Description           Marked

24

25    No exhibits
```

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 4

```
 1              P R O C E E D I N G S          2:29 P.M.
 2              (Whereupon,
 3                   Shelton Hill
 4    was called as a witness, duly affirmed, and testified
 5    as follows:)
 6              D I R E C T   E X A M I N A T I O N   2:29 P.M.
 7              By Ms. Quinn:
 8       Q    Good afternoon, Mr. Hill; my name is Nancy
 9    Quinn.  I'm representing Anthony Dial in an action he's
10    brought against Robeson County.  How are you today?
11       A    Good.
12       Q    Could you state your name for the record?
13       A    Shelton Hill.
14       Q    Have you ever been deposed before, Mr. Hill?
15       A    Yes.
16       Q    Even though you've done it before, I just
17    want to reiterate some of the ground rules to refresh
18    your memory.  It's important to give verbal answers.
19    Obviously, it's also important that we not talk over
20    each other so the court reporter can get a good
21    transcript.  And one of the questions I ask everyone,
22    please don't take it personally is, is there any
23    reason, any medications you may be on that would
24    prevent you from answering truthfully?
25       A    No.
```

Shelton S-Hill
August 1, 2022

Page 5

1      Q    If at any time you don't understand my

2  questions, which is entirely possible will happen,

3  please let me know, and I'll do my best to rephrase it.

4      A    Sure.

5      Q    Without discussing any conversation you've

6  had with your attorneys, what did you do in preparation

7  for this deposition today?

8      A    Just went back, reviewed some of my notes and

9  things.

10     Q    All right, other than your notes, did you

11 review any other documents?

12     A    My application.

13     Q    And just for the record, Mr. Hill, which race

14 do you identify with?

15     A    Caucasian.

16     Q    Thank you; how are you currently employed?

17     A    I'm sorry?

18     Q    How are you currently employed?

19     A    As Assistant County Manager for Robeson

20 County.

21     Q    And when did you start in that position?

22     A    June of 2019.

23     Q    What are your general duties as the Assistant

24 County Manager?

25     A    I manage eight departments and perform as

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 6

1    directed by county management and/or assisting other

2    departments in providing leadership for them and

3    oversight.

4        Q    Okay, which departments do you supervise?

5        A    The 911 communications, emergency medical

6    services, emergency management, the fire marshal's

7    office, the office of risk management, the NCDOT public

8    transportation hub, which is a county department, the

9    Robeson County Sheriff's Office Jail Health

10   Administration, the community development, which covers

11   the inspections, planning, zoning, all of the functions

12   that would be underneath the community development, and

13   I'm thinking that's it.  I think that's eight.

14       Q    Okay, who do you report to?

15       A    Kellie Blue.

16       Q    Have you held other positions with Robeson

17   County?

18       A    I'm sorry?

19       Q    Have you held other positions with Robeson

20   County?

21       A    I have.

22       Q    What were those?

23       A    The office for risk management, safety

24   officer, operations manager, and safety officer for the

25   DOT transportation system, and assistant director of

Shelton S-Hill
August 1, 2022

Page 7

1   human resources/risk manager.  That was a combined duty

2   during that period.

3        Q    Okay, which is the one you held immediately

4   before Assistant County Manager?

5        A    The office of risk management.

6        Q    And when did you go into that position?

7        A    We separated those duties from about 2018 and

8   moved the assistant director back to just that sole

9   duty, and I became risk manager again in 2018, had

10  served in that function since 2012, combined with other

11  duties.  I went into the position in 2012, so it was

12  split duties up until 2018.

13       Q    So in 2018, did that become a new position?

14       A    No, there -- it was just very time consuming,

15  time intensive, and the position in human resources had

16  originally only been one function, so we -- we made the

17  decision to separate those functions.

18       Q    Was there an application process for that

19  split function?

20       A    No; to apply for it, yes, there was, to apply

21  for the assistant human resource director that was in

22  2016.  It was the assistant human resource

23  director/risk manager.

24       Q    And did you apply for that position in 2016?

25       A    Yes, yes.

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 8

1    Q    But not the one in 2018?

2    A    No.

3    Q    How long did you serve as the operations

4  manager in the transportation area?

5    A    Before we moved it into the county services,

6  I began in 2004.  We moved it into Robeson County from

7  a state agency in 2006, and I worked in that position

8  until 2012.

9    Q    Do you recall the number of employees you

10  would have supervised in that position?

11    A    I'm sorry?

12    Q    Do you recall the number of employees you

13  would have supervised in that position?

14    A    It would vary between eighteen and twenty

15  with the transportation system.

16    Q    And as assistant director in human resources

17  or slash risk manager, did you have any supervisory

18  obligations?

19    A    Some, two employees, along with working with

20  other departments, but not direct supervision over the

21  other departments.

22    Q    What made you decide to apply for the

23  Assistant County Manager position in 2019?

24    A    Well, I just thought it was an opportunity to

25  work with staff development a little more closely and

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 9

1   also to fulfill a desire I had for many years to work a
2   little closer with the departments in developing people
3   and also doing some things to hopefully expedite the
4   service and improve the delivery of services to the
5   citizens.
6       Q    Did you read the job description before you
7   applied for it?
8       A    Yes.
9       Q    Did you have any concerns about the preferred
10  educational requirements in that position?
11      A    No concerns.
12      Q    And at that time, you did not have any
13  college degrees, is that correct?
14      A    That's correct.
15      Q    On your application for the position, you
16  referred to some trainings you had taken.  Did you
17  submit any of the certifications that came along with
18  those trainings as part of your application?
19      A    I can't remember.
20      Q    Prior to applying for the Assistant County
21  Manager position, who did you discuss the decision to
22  apply with?
23      A    My family.
24      Q    Mr. Hill, prior to applying for it, did you
25  hear my question?

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 10

1          Ms. Barber-Jones:   Yes, he answered it.  Did

2    you hear his answer?

3          Ms. Quinn:          I did not, sorry.

4          The Witness:        I'm sorry.  I discussed

5    it with my family.

6          Ms. Quinn:          Okay, unfortunately,

7    that's one of the vagaries of the technologies.  It

8    doesn't always come all the way through.

9          By Ms. Quinn:

10   Q    Did you discuss it with any of the county

11   commissioners?

12   A    No.

13   Q    Did you think you were fully qualified for

14   this position when you applied?

15   A    I felt I could receive consideration.  I felt

16   like I was qualified in many areas.

17   Q    Were you concerned that maybe you were

18   unqualified for it?

19         Ms. Barber-Jones:   Objection to form; you

20   can answer.

21         The Witness:        I'm sorry?

22         Ms. Barber-Jones:   You can answer.

23         The Witness:        Okay; I didn't have any

24   concerns about any of the duties.

25         By Ms. Quinn:

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 11

1      Q     Prior to coming on as Assistant County
2  Manager, did you have experience with working with
3  legal documents for the County?
4      A     I did.  I was asked to be safety officer by
5  the Assistant County Manager about 2007.  I began
6  working very closely with an Assistant County Manager,
7  and I was conducting most of the risk management duties
8  at the time, the insurance claims, and other legal
9  matters in working with the legal team here.  I
10  conducted inspections of departments in compliance
11  areas, that type thing.  That was back, again, with
12  split duties and some other things.
13      Q     Did you have experience with the Americans
14  with Disabilities Act compliance?
15      A     Yes.
16      Q     Through which position?
17      A     My textile career prior for many years, well,
18  ever since the Act of 1990 that was required annual
19  training, refresher training, that type of thing, and
20  several positions with my employment with the County,
21  with NCDOT.
22          Court Reporter:     Katherine, real quick,
23  let me interrupt.  A moment ago, you did an objection.
24  Was it an object to form?
25          Ms. Barber-Jones:    Yes, it was.

Shelton S-Hill
August 1, 2022

Page 12

1           Court Reporter:    I couldn't hear the last
2    part; thank you, sorry to interrupt.
3           Ms. Barber-Jones:    Thank you.
4           By Ms. Quinn:
5       Q    Mr. Hill, did anyone encourage you to apply
6    for this Assistant County Manager position?
7       A    No.
8           Ms. Barber-Jones:    Did you hear him?
9           Ms. Quinn:          I think I lost your
10   answer again.
11          The Witness:        No.
12          By Ms. Quinn:
13      Q    Did anyone promise you the position if you
14   applied for it?
15      A    No.
16      Q    In the application, there was a cover letter.
17   Was that one that you drafted for the application?
18      A    Yes.
19      Q    When you received the position as Assistant
20   County Manager, do you know who took over your previous
21   position?
22      A    No one took it over.  I continued with that
23   office until filling it in, I think, it was the year
24   2020.
25      Q    I'm going down my list of questions, Mr.

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 13

1   Hill.  I think we've already talked about many of them.

2   When you went into the position you had just before the

3   Assistant County Manager where I think you said split

4   the duties, was there someone else who also wanted to

5   have that position?

6       A    Which position is that?

7       Q    The one you had just before Assistant County

8   Manager?

9       A    No, I didn't -- I didn't have a person picked

10  out for that that I -- I could identify as we went

11  through an application process, and we were successful

12  in placing one.

13      Q    Okay, when you were put in the position, was

14  there another Robeson County employee who also would

15  have liked to have had that position?

16      A    I didn't discuss it with anyone.

17      Q    And at that time, did you feel like you were

18  qualified for the position when they created it?

19      A    Yes.

20      Q    Have you had any dealings with the EEOC while

21  you've been an employee with the Robeson County?

22      A    Responding in preparation of documents for

23  responses, that type of thing.

24      Q    Did any of those investigations that required

25  your assistance with responses bear directly on any of

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 14

1   your activities with the County?

2          Ms. Barber-Jones:   Object to form; you can

3   answer.

4          The Witness:        Can you repeat the

5   question?

6          By Ms. Quinn:

7     Q    Sure; when you participated in responses to

8   the EEOC investigations, were any of those

9   investigations involving things you had done?

10         Ms. Barber-Jones:   Objection; you can

11  answer.

12         The Witness:        I'm really not sure what

13  you're asking, things I had done.

14         By Ms. Quinn:

15    Q    Or people thought you had done and were

16  concerned were discriminatory?

17    A    Not to my -- I don't ever remember anything,

18  no.

19         Ms. Quinn:          All right, Mr. Hill, I

20  think that's all the questions I have for you.  No, no,

21  I'm going to take that back.  I'm sorry.  I've got a

22  couple more.

23         By Ms. Quinn:

24    Q    Do you have a good working relationship with

25  some of the county managers?

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 15

```
 1        A    I feel like I've always gotten along well
 2   with them, had good experiences.
 3        Q    What about social relationships with any of
 4   the county managers?
 5        A    I don't have a social relationship with any
 6   of them.
 7        Q    Okay, not even like David Edge?
 8        A    County managers.
 9        Q    No, county commissioners.
10        A    I --
11             Ms. Barber-Jones:   I'm sorry; Nancy, you
12   said county managers in your questions.
13             Ms. Quinn:          I'm sorry.
14             Ms. Barber-Jones:   Do you want to rephrase
15   those?
16             Ms. Quinn:          Let me rephrase my
17   question.
18             By Ms. Quinn:
19        Q    Do you see any of the county commissioners
20   socially?
21        A    A number of them over the years.
22        Q    Can you tell me who?
23        A    I know Commissioner Tom Taylor's parents and
24   him all my life, very little social activity.  I've
25   known Commissioner Edge many years, some social
```

Overby Court Reporting Service
1-800-682-5267

Page 16

1  activity, very limited years ago.  Commissioner Roger

2  Oxendine, Ex-Commissioner Roger Oxendine, I've known

3  him for many years, some social activity like the

4  others; lived in -- lived in the same community with

5  them.

6      Q    Do you think any of those relationships

7  helped you progress through the positions with the

8  County?

9      A    I couldn't identify in the past when that --

10  that happened.

11          Ms. Quinn:        All right, that truly is

12  the end of my questions, Mr. Hill; thank you.

13          The Witness:      Okay, sure thing.

14          Ms. Barber-Jones:  All right, well, do you

15  mind if we take a break of a couple minutes then before

16  I decide whether I need to ask any questions?

17          Ms. Quinn:        Sure.

18          Ms. Barber-Jones:  Okay, thanks; we'll just

19  go on to mute.

20          (A short break was taken at 2:50 P.M.)

21          (The proceedings resumed at 2:53 P.M.)

22          Ms. Barber-Jones:  Thank you all.

23      C R O S S - E X A M I N A T I O N    2:53 P.M.

24          By Ms. Barber-Jones:

25      Q    Mr. Hill, I just have a couple clarifying

Shelton S-Hill
August 1, 2022

Page 17

1    questions about the questions that Ms. Quinn asked you

2    about your social activities with the commissioners.

3    Can you describe whether any of those social activities

4    or relationships were close relationships, such as

5    going to each other's houses?

6        A    Probably two, one ex-commissioner, but he's

7    been out since 2018.  I've been to his house a number

8    of times, Commissioner Oxendine, and I don't think any

9    of the other commissioners I've been to their homes

10   except Commissioner Oxendine and went to two events

11   over the course of the years to Commissioner Edge's

12   home, and I think we traveled about one time about

13   fifteen years ago to D.C. for a weekend with our

14   families and that was -- that was I'm thinking around

15   twelve to fifteen years ago.

16       Q    For most of those social activities, about

17   how many people would be involved?

18       A    50, 75, 100, at an event, the last -- the

19   only two events I've been to Commissioner Edge's home,

20   a large number of people there.

21       Q    Are you related by marriage to any of the

22   commissioners?

23       A    No.

24            Ms. Barber-Jones:    Okay, those are all my

25   questions; thank you, all.

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 18

1          Ms. Quinn:          All right, thank you, Mr.

2    Hill; I don't have any other questions.

3               (The proceedings were concluded at 2:55 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Shelton S-Hill
August 1, 2022

Page 19

```
1

2

3    NORTH CAROLINA

4    WAKE COUNTY

5              C E R T I F I C A T E

6         I, David L. Overby, Notary/Reporter, do

7    hereby certify that the foregoing deposition of Shelton

8    Hill was taken by Lynn Houchins, Notary/Reporter, and

9    transcribed under my direction and that the nineteen

10   pages which constitute this deposition are a true and

11   accurate transcript of the witness's testimony.

12         I certify that I am not counsel for, or

13   employed by either party in this action, nor am I

14   interested in the outcome of this action.

15         IN WITNESS THEREOF, I have hereunto set my

16

17   hand this 8th day of August, 2022.

18

19

20

21            ___David L. Overby___

22

23            David L. Overby

24            Notary Public

25            Certificate No.: 19930120037
```

Overby Court Reporting Service
1-800-682-5267

Shelton S-Hill
August 1, 2022

Page 20

**A**
accurate 19:11
Act 11:14,18
action 1:2 4:9
  19:13,14
activities 14:1
  17:2,3,16
activity 15:24
  16:1,3
Administration
  6:10
affirmed 4:4
afternoon 4:8
agency 8:7
ago 11:23 16:1
  17:13,15
Americans 11:13
and/or 6:1
annual 11:18
answer 10:2,20
  10:22 12:10
  14:3,11
answered 10:1
answering 4:24
answers 4:18
Anthony 1:5 2:25
  4:9
application 5:12
  7:18 9:15,18
  12:16,17 13:11
applied 9:7 10:14
  12:14
apply 7:20,20,24
  8:22 9:22 12:5
applying 9:20,24
area 8:4
areas 10:16 11:11
asked 11:4 17:1
asking 14:13
assistance 13:25
assistant 5:19,23
  6:25 7:4,8,21
  7:22 8:16,23
  9:20 11:1,5,6

12:6,19 13:3,7
assisting 6:1
attorneys 5:6
August 1:18
  19:17
Avenue 2:12

**B**
B 3:3,21
back 5:8 7:8
  11:11 14:21
Barber-Jones
  2:11 3:9 10:1
  10:19,22 11:25
  12:3,8 14:2,10
  15:11,14 16:14
  16:18,22,24
  17:24
bear 13:25
began 8:6 11:5
best 5:3
Blue 6:15
break 16:15,20
brought 4:10

**C**
C 2:3 3:3 4:1,6
  16:23 19:5,5
called 4:4
can't 9:19
career 11:17
Carolina 1:1,16
  2:7,13 19:3
Caucasian 5:15
Certificate 19:25
certifications
  9:17
certify 19:7,12
citizens 9:5
Civil 1:2
claims 11:8
clarifying 16:25
close 17:4
closely 8:25 11:6
closer 9:2

college 9:13
combined 7:1,10
come 10:8
coming 11:1
Commissioner
  15:23,25 16:1
  17:8,10,11,19
commissioners
  10:11 15:9,19
  17:2,9,22
communications
  6:5
community 6:10
  6:12 16:4
compliance
  11:10,14
concerned 10:17
  14:16
concerns 9:9,11
  10:24
concluded 18:3
conducted 11:10
conducting 11:7
consideration
  10:15
constitute 19:10
consuming 7:14
continued 12:22
conversation 5:5
correct 9:13,14
couldn't 12:1
  16:9
counsel 19:12
county 1:8 2:10
  4:10 5:19,20,24
  6:1,8,9,17,20
  7:4 8:5,6,23
  9:20 10:10 11:1
  11:3,5,6,20
  12:6,20 13:3,7
  13:14,21 14:1
  14:25 15:4,8,9
  15:12,19 16:8
  19:4

couple 14:22
  16:15,25
course 17:11
court 1:1 4:20
  11:22 12:1
cover 12:16
covers 6:10
created 13:18
Cross 3:4
currently 5:16,18

**D**
D 4:1,6
D.C 17:13
David 15:7 19:6
  19:23
Davis 2:20
day 19:17
dealings 13:20
decide 8:22 16:16
decision 7:17
  9:21
Defendant 1:9
  2:10
degrees 9:13
delivery 9:4
department 6:8
departments
  5:25 6:2,4 8:20
  8:21 9:2 11:10
deposed 4:14
deposition 1:11
  5:7 19:7,10
describe 17:3
description 3:23
  9:6
desire 9:1
developing 9:2
development
  6:10,12 8:25
Dial 1:5 2:4,25
  4:9
didn't 10:23 13:9
  13:9,16

direct 3:4 8:20
directed 6:1
direction 19:9
directly 13:25
director 6:25 7:8
  7:21 8:16
director/risk
  7:23
Disabilities 11:14
discriminatory
  14:16
discuss 9:21
  10:10 13:16
discussed 10:4
discussing 5:5
DISTRICT 1:1,1
DIVISION 1:2
documents 5:11
  11:3 13:22
doesn't 10:8
doing 9:3
don't 4:22 5:1
  14:17 15:5 17:8
  18:2
DOT 6:25
drafted 12:17
duly 4:4
duties 5:23 7:7
  7:11,12 10:24
  11:7,12 13:4
duty 7:1,9

**E**
E 2:3,3 3:3,3,21
  4:1,1,6,6 16:23
  19:5,5
Edge 15:7,25
Edge's 17:11,19
educational 9:10
EEOC 13:20
  14:8
eight 5:25 6:13
eighteen 8:14
either 19:13

**emergency** 6:5,6
**employed** 5:16
  5:18 19:13
**employee** 13:14
  13:21
**employees** 8:9,12
  8:19
**employment**
  11:20
**encourage** 12:5
**entirely** 5:2
**Esquire** 2:5,11
  2:20
**event** 17:18
**events** 17:10,19
**ex-commissioner**
  16:2 17:6
**exhibits** 3:25
**expedite** 9:3
**experience** 11:2
  11:13
**experiences** 15:2

**F**

**F** 3:3 19:5
**families** 17:14
**family** 9:23 10:5
**feel** 13:17 15:1
**felt** 10:15,15
**fifteen** 17:13,15
**filling** 12:23
**fire** 6:6
**Firm** 2:6
**follows** 4:5
**foregoing** 19:7
**form** 10:19 11:24
  14:2
**fulfill** 9:1
**fully** 10:13
**function** 7:10,16
  7:19
**functions** 6:11
  7:17

**G**

**G** 4:1
**Garden** 2:6
**general** 5:23
**give** 4:18
**Glenwood** 2:12
**go** 7:6 16:19
**going** 12:25
  14:21 17:5
**good** 4:8,11,20
  14:24 15:2
**gotten** 15:1
**Greensboro** 1:2
  2:7
**ground** 4:17
**Group** 2:12

**H**

**H** 3:21
**hand** 19:17
**happen** 5:2
**happened** 16:10
**Hartzog** 2:12
**he's** 4:9 17:6
**Health** 6:9
**hear** 9:25 10:2
  12:1,8
**held** 1:14 6:16,19
  7:3
**helped** 16:7
**hereunto** 19:15
**Hill** 1:11 3:5 4:3
  4:8,13,14 5:13
  9:24 12:5 13:1
  14:19 16:12,25
  18:2 19:8
**home** 17:12,19
**homes** 17:9
**hopefully** 9:3
**Houchins** 19:8
**house** 17:7
**houses** 17:5
**hub** 6:8
**human** 7:1,15,21
  7:22 8:16

**I**

**I'll** 5:3
**I'm** 4:9 5:17 6:13
  6:18 8:11 10:4
  12:25 14:12,21
  14:21 15:11,13
  17:14
**I've** 14:21 15:1
  15:24 16:2 17:7
  17:9,19
**identify** 5:14
  13:10 16:9
**immediately** 7:3
**important** 4:18
  4:19
**improve** 9:4
**inspections** 6:11
  11:10
**insurance** 11:8
**intensive** 7:15
**interested** 19:14
**interrupt** 11:23
  12:2
**investigations**
  13:24 14:8,9
**involved** 17:17
**involving** 14:9
**it's** 4:18,19

**J**

**Jail** 6:9
**job** 9:6
**June** 5:22

**K**

**Katherine** 2:11
  11:22
**kbarber-jones...**
  2:14
**Kellie** 6:15
**know** 5:3 12:20
  15:23
**known** 15:25
  16:2

**L**

**L** 3:3 19:6,23
**large** 17:20
**Law** 2:6,12
**leadership** 6:2
**legal** 11:3,8,9
**letter** 12:16
**life** 15:24
**liked** 13:15
**limited** 16:1
**list** 12:25
**little** 8:25 9:2
  15:24
**lived** 16:4,4
**LLP** 2:12
**long** 8:3
**lost** 12:9
**Lynn** 19:8

**M**

**M** 4:6 16:23
**manage** 5:25
**management** 6:1
  6:6,7,23 7:5
  11:7
**manager** 5:19,24
  6:24 7:1,4,9,23
  8:4,17,23 9:21
  11:2,5,6 12:6
  12:20 13:3,8
**managers** 14:25
  15:4,8,12
**Marked** 3:23
**marriage** 17:21
**marshal's** 6:6
**matters** 11:9
**medical** 6:5
**medications** 4:23
**memory** 4:18
**MIDDLE** 1:1
**mind** 16:15
**minutes** 16:15
**moment** 11:23
**Monday** 1:18

**moved** 7:8 8:5,6
**mute** 16:19

**N**

**N** 2:3 3:3,3 4:1,6
  4:6 16:23,23
**name** 4:8,12
**Nancy** 2:5 4:8
  15:11
**NCDOT** 6:7
  11:21
**need** 16:16
**new** 7:13
**nineteen** 19:9
**North** 1:1,16 2:7
  2:13 19:3
**Notary** 19:24
**Notary/Reporter**
  19:6,8
**notes** 5:8,10
**npquinn@theq...**
  2:8
**number** 3:23 8:9
  8:12 15:21 17:7
  17:20

**O**

**O** 3:3,3 4:1,6
  16:23,23
**object** 11:24 14:2
**objection** 10:19
  11:23 14:10
**obligations** 8:18
**Obviously** 4:19
**office** 6:7,7,9,23
  7:5 12:23
**officer** 6:24,24
  11:4
**Okay** 6:4,14 7:3
  10:6,23 13:13
  15:7 16:13,18
  17:24
**operations** 6:24
  8:3
**opportunity** 8:24

originally 7:16
other's 17:5
outcome 19:14
Overby 19:6,23
oversight 6:3
Oxendine 16:2,2
  17:8,10

**P**

P 2:3,3,5 4:1
P.M 1:19 4:1,6
  16:20,21,23
  18:3
pages 1:25 19:10
parents 15:23
part 9:18 12:2
participated 14:7
Parties 1:15
party 19:13
people 9:2 14:15
  17:17,20
perform 5:25
period 7:2
person 13:9
personally 4:22
phone 2:23
picked 13:9
placing 13:12
Plaintiff 1:6 2:4
planning 6:11
please 4:22 5:3
position 5:21 7:6
  7:11,13,15,24
  8:7,10,13,23
  9:10,15,21
  10:14 11:16
  12:6,13,19,21
  13:2,5,6,13,15
  13:18
positions 6:16,19
  11:20 16:7
possible 5:2
preferred 9:9
preparation 5:6

13:22
present 2:17
prevent 4:24
previous 12:20
prior 9:20,24
  11:1,17
Probably 17:6
proceedings
  16:21 18:3
process 7:18
  13:11
progress 16:7
promise 12:13
providing 6:2
public 6:7 19:24
put 13:13

**Q**

qualified 10:13
  10:16 13:18
question 9:25
  14:5 15:17
questions 4:21
  5:2 12:25 14:20
  15:12 16:12,16
  17:1,1,25 18:2
quick 11:22
Quinn 2:5,6 3:7
  4:7,9 10:3,6,9
  10:25 12:4,9,12
  14:6,14,19,23
  15:13,16,18
  16:11,17 17:1
  18:1

**R**

R 2:3 4:1,6 16:23
  19:5
race 5:13
Raleigh 2:13
read 9:6
real 11:22
really 14:12
reason 4:23
recall 8:9,12

receive 10:15
received 12:19
record 4:12 5:13
Recross 3:4
Redirect 3:4
referred 9:16
refresh 4:17
refresher 11:19
reiterate 4:17
related 17:21
relationship
  14:24 15:5
relationships
  15:3 16:6 17:4
  17:4
remember 9:19
  14:17
Remotely 1:14
repeat 14:4
rephrase 5:3
  15:14,16
report 6:14
reporter 4:20
  11:22 12:1
representing 4:9
required 11:18
  13:24
requirements
  9:10
resource 7:21,22
resources 7:15
  8:16
resources/risk
  7:1
Responding
  13:22
responses 13:23
  13:25 14:7
resumed 16:21
review 5:11
reviewed 5:7
right 5:10 14:19
  16:11,14 18:1
risk 6:7,23 7:5,9

8:17 11:7
Rob 2:20
Robeson 1:8 2:10
  4:10 5:19 6:9
  6:16,19 8:6
  13:14,21
Roger 16:1,2
rules 4:17

**S**

S 2:3 3:3,21 4:1
  16:23,23
safety 6:23,24
  11:4
see 15:19
separate 7:17
separated 7:7
serve 8:3
served 7:10
service 9:4
services 6:6 8:5
  9:4
set 19:15
Shelton 1:11 3:5
  4:3,13 19:7
Sheriff's 6:9
short 16:20
slash 8:17
social 15:3,5,24
  15:25 16:3 17:2
  17:3,16
socially 15:20
sole 7:8
sorry 5:17 6:18
  8:11 10:3,4,21
  12:2 14:21
  15:11,13
split 7:12,19
  11:12 13:3
Spring 2:6
staff 8:25
start 5:21
state 4:12 8:7
STATES 1:1

Street 2:6
submit 9:17
successful 13:11
Suite 2:6,12
supervise 6:4
supervised 8:10
  8:13
supervision 8:20
supervisory 8:17
sure 5:4 14:7,12
  16:13,17
system 6:25 8:15

**T**

T 3:3,3,3,21 4:6,6
  16:23 19:5,5
take 4:22 14:21
  16:15
taken 9:16 16:20
  19:8
talk 4:19
talked 13:1
Taylor's 15:23
team 11:9
technologies 10:7
tell 15:22
testified 4:4
testimony 19:11
textile 11:17
thank 5:16 12:2,3
  16:12,22 17:25
  18:1
thanks 16:18
that's 6:13,13
  9:14 10:7 14:20
THEREOF
  19:15
thing 11:11,19
  13:23 16:13
things 5:9 9:3
  11:12 14:9,13
think 6:13 10:13
  12:9,23 13:1,3
  14:20 16:6 17:8

Shelton S-Hill
August 1, 2022

17:12
**thinking** 6:13
  17:14
**thought** 8:24
  14:15
**time** 5:1 7:14,15
  9:12 11:8 13:17
  17:12
**times** 17:8
**today** 4:10 5:7
**Tom** 15:23
**training** 11:19,19
**trainings** 9:16,18
**transcribed** 19:9
**transcript** 4:21
  19:11
**transportation**
  6:8,25 8:4,15
**traveled** 17:12
**true** 19:10
**truly** 16:11
**truthfully** 4:24
**twelve** 17:15
**twenty** 8:14
**two** 8:19 17:6,10
  17:19
**type** 11:11,19
  13:23

---

**U**

**underneath** 6:12
**understand** 5:1
**unfortunately**
  10:6
**UNITED** 1:1
**unqualified**
  10:18

---

**V**

**V** 1:7
**vagaries** 10:7
**vary** 8:14
**verbal** 4:18
**Volume** 1:23

---

**W**

**WAKE** 19:4
**want** 4:17 15:14
**wanted** 13:4
**way** 10:8
**we'll** 16:18
**we've** 13:1
**weekend** 17:13
**went** 5:8 7:11
  13:2,10 17:10
**witness** 3:4 4:4
  10:4,21,23
  12:11 14:4,12
  16:13 19:15
**witness's** 19:11
**work** 8:25 9:1
**worked** 8:7
**working** 8:19
  11:2,6,9 14:24

---

**X**

**X** 3:21 4:6 16:23

---

**Y**

**year** 12:23
**years** 9:1 11:17
  15:21,25 16:1,3
  17:11,13,15
**you're** 14:13
**you've** 4:16 5:5
  13:21

---

**Z**

**zoning** 6:11
**Zoom** 1:15 2:4,10
  2:18

---

**0**

---

**1**

**1** 1:18,23,25
**1:20CV01135** 1:2
**100** 17:18
**16-17** 3:9
**19** 1:25

**1990** 11:18
**19930120037**
  19:25
**1D** 2:6

---

**2**

**2:29** 1:19 4:1,6
**2:50** 16:20
**2:53** 16:21,23
**2:55** 18:3
**2004** 8:6
**2006** 8:7
**2007** 11:5
**2012** 7:10,11 8:8
**2016** 7:22,24
**2018** 7:7,9,12,13
  8:1 17:7
**2019** 5:22 8:23
**2020** 12:24
**2022** 1:18 19:17
**205** 2:12
**2626** 2:12
**272-9072** 2:7
**27401** 2:7
**27608** 2:13

---

**3**

**315** 2:6
**336** 2:7

---

**4**

**4-16** 3:7

---

**5**

**50** 17:18

---

**6**

**670-0338** 2:13

---

**7**

**75** 17:18

---

**8**

**8th** 19:17

---

**9**

**911** 6:5
**919** 2:13

Overby Court Reporting Service
1-800-682-5267

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

CIVIL ACTION NO. 1:20-cv-1135

ANTHONY DIAL,                          )
                                       )
              Plaintiff,               )
                                       )
       vs.                             )
                                       )
ROBESON COUNTY,                        )
                                       )
              Defendant.               )


DEPOSITION

OF

ANTHONY DIAL

April 27, 2022 - 10:05 a.m.

Greensboro, North Carolina


Stenographically
  Reported by:    Lisa A. Wheeler, RPR, CRR

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 2

1      A P P E A R A N C E S:

2      On behalf of the Plaintiff:

3            Nancy P. Quinn, Esq.
             Quinn Law Firm
4            315 Spring Garden Street, Suite 1-D
             Greensboro, North Carolina 27401
5            (336) 790-4178
             npquinn@triadbiz.rr.com

6

7      On behalf of the Defendant:

8            Katherine Barber-Jones, Esq.
             Hartzog Law Group
9            2626 Glenwood Avenue, Suite 205
             Raleigh, North Carolina 27608
10           (919) 670-0338
             kbarber-jones@hartzoglawgroup.com

11

12

13            This is the deposition of ANTHONY DIAL,

14     taken pursuant to Notice of the parties and in

15     accordance with the Federal Rules of Civil

16     Procedure before Lisa A. Wheeler, RPR, CRR, in

17     the offices of Quinn Law Firm, 315 Spring Garden

18     Street, Suite 1-D, Greensboro, North Carolina, on

19     the 27th day of April, 2022, beginning at 10:05

20     a.m.

21            The reading and signing of this

22     transcript is reserved.

23

24

25

www.huseby.com     Huseby Global Litigation     800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 3

1                    I N D E X

2                                           PAGE

3     EXAMINATION BY MS. BARBER-JONES              4

4

5                   E X H I B I T S

6

      DIAL
7     NUMBER            DESCRIPTION            PAGE

8     EXHIBIT 1  Amended Notice of Deposition       6

9     EXHIBIT 2  Plaintiff's Responses to          28
                 Defendant Robeson County's First
10               Set of Interrogatories and
                 Request for Production
11
      EXHIBIT 3  Complaint                         34
12
      EXHIBIT 4  Photocopied Pages from            65
13               Calendar/Diary

14    EXHIBIT 5  Notice of Charge of              107
                 Discrimination, December 4, 2019
15
      EXHIBIT 6  EEOC Charge Detail Inquiry,      119
16               2/5/2020

17    EXHIBIT 7  Dismissal and Notice of Rights,  124
                 8/14/2020
18
      EXHIBIT 8  Leave and Earnings Statement and 140
19               W-2s for Years 2018, 2019, 2020,
                 and 2021
20
      EXHIBIT 9  Assistant county manager Job     164
21               Description
22

23

24

25

www.huseby.com     Huseby Global Litigation     800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 20

1    had a lot of leadership classes and supervisor
2    training with the County, with the State --
3          Q.    Uh-huh.
4          A.    -- but I cannot -- it's been so long I
5    don't re- -- I couldn't give you the name of the
6    classes or anything.  No, I couldn't.  I had a
7    lot of leadership classes in the Marine Corps,
8    but I didn't bring any of that paperwork with me.
9          Q.    But you haven't taken any courses, for
10   example, toward a master's degree?
11         A.    Oh, no.  No.  No.  No.  No, I haven't.
12         Q.    Okay.  And aside from the training that
13   you received with the County or in the Marines,
14   is there any other certification training or
15   coursework that you've -- you've undertaken?
16         A.    It probably -- it's -- it may or not be
17   important, but I also worked with the North
18   Carolina Department of Corrections from '94 to
19   2000.  I was a certified correctional officer.  I
20   was a certified armorer, certified with
21   Remington, Ruger, and Smith & Wesson.  I was in
22   charge of weapons at the prison when I worked at
23   the prison.
24         Q.    And which prison did you work at?
25         A.    Lumberton -- Lumberton Correctional

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 21

1    Institution.  I was there from, I think I said
2    earlier, '94 to 2000.
3        Q.    Uh-huh.
4        A.    May I clear something up?
5        Q.    Yes.
6        A.    It may look odd, but during that time,
7    I was going to school at night while I was
8    working at the prison, so that may not add up for
9    some- -- for somebody just -- from -- from --
10   I -- I think I started college at -- at Robeson
11   County Community College in '95 and I -- you
12   know, I was there for two years, but I was
13   working at the prison at that time.  Then when I
14   transferred to UNCP, I -- I -- I still went to
15   school at night the best I could, but it -- the
16   prison worked with me, but I still was able to
17   finish my degree because there were some classes
18   I had to take during the day so they -- they
19   worked with me.  So it may not -- it may look
20   odd, but I was working at the same time that I
21   was going to school.  It took me five years, I
22   think.
23       Q.    And at that point when you worked for
24   the Department of Corrections, that was you
25   working as an employee of the State, correct?

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 22

```
 1        A.   I was an employee with the State of
 2   North Carolina, yes, for six and a half years.
 3        Q.   Did you participate in the state
 4   employees retirement plan?
 5        A.   Yes, I did.
 6        Q.   Have you transferred your credits over
 7   into the local government employees retirement
 8   plan?
 9        A.   I don't have to --
10        Q.   Uh-huh.
11        A.   -- because it's just sitting there.
12   There's two different -- I'm sure you know.
13   There's two different, the state level and then
14   the local government, and it's still sitting
15   there.  I haven't touched it.
16        Q.   I understand, yes.  So if you could --
17   you served in the Marines from 1987 to 1993 --
18        A.   '3.
19        Q.   -- right?
20        A.   Yes.
21        Q.   Okay.  What did you do day to day when
22   you were serving as a Marine?
23        A.   Obviously, I was a basic rifleman;
24   every Marine is.  I went to boot camp in Parris
25   Island, South Carolina.  From there, I was -- my
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 23

1    actual MOS was aviation -- or avionics, rather.
2    I went to -- they call it Memphis.  It's a
3    naval -- it's a air station in Memphis.  At that
4    time, it was actually Millington.  I was there
5    for basic electronics.  I done very well in
6    electronics.  I was top of my class so they sent
7    me to Mare Island, which is near San Francisco,
8    and I was in school there for a little while.
9    Then I come back to Memphis again, finished up
10   avionics curriculum or whatever it was called at
11   that time.  Then I went to the Fleet and I was
12   stationed in Jacksonville, North Carolina, and
13   from there, I was deployed basically to the
14   Mediterranean Sea.  I came back shortly, for
15   about a month or so, and then Saddam Hussein
16   invaded Kuwait so I went back again to Desert
17   Storm -- Per- -- Persian Gulf at that time, and I
18   stayed there basically till I got out of the
19   Marine Corps in '93.
20        Q.   How long were you deployed overseas
21   for?
22        A.   I had 15 months of oversea duties.  I
23   went a hundred days without seeing land.  At that
24   time, they anchored the boat and we had two
25   beers.  I -- my sleeping quarters was about this

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 24

```
 1    wide (indicates).
 2          Q.    And you -- when did you get married?
 3          A.    I got married when I got back home from
 4    my deployment in May of '91.
 5          Q.    What is your anniversary?
 6          A.    May the 8th, 1991.
 7          Q.    Coming up soon.
 8          A.    Yes.  She was talking about it coming
 9    up here.
10          Q.    And -- let's see.  Did you go directly
11    to work in corrections after you left the
12    Marines?
13          A.    Not immediately.  I did a little
14    odd-and-end jobs, whatever I could find until I
15    was able to get a job with the prison, but I
16    started -- I -- I think I started at the prison
17    in '94.  I think I started in June of '94.
18          Q.    And what caused you to decide on
19    working for the Department of Corrections?
20          A.    At that time, there were not many jobs
21    open in Robeson County.  That was the -- you
22    know, it was a good job.  It was -- it was, you
23    know, good benefits and I really -- I had a GI
24    Bill so I really wanted to do something so I
25    could continue my education.  You know, it seemed
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 25

1    like the best place to go.
2         Q.   And then in the year 2000, you got your
3    degree?
4         A.   Yes.
5         Q.   You left the Department of Corrections?
6         A.   Yes.  They were not happy with me.
7         Q.   What happened?
8         A.   Because they had helped me get my
9    degree and they didn't want me to leave.  They
10   really -- they liked me.  But it was more money
11   and it was more geared to human services and I
12   thought it was -- it was a better fit -- fit for
13   me and, you know...
14        Q.   So you're talking about going from the
15   Department of Corrections to being employed by
16   Robeson County?
17        A.   Exactly.
18        Q.   Okay.  I believe that you have just
19   answered my next question, which is, what brought
20   you to Robeson County DSS?  Is there -- were
21   there any other reasons why you went to go work
22   for the County?
23        A.   More ben- -- it's surprisingly, but
24   their benefits are better than the State's.  I
25   say, again, it was an opportunity for me to

www.huseby.com      Huseby Global Litigation      800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 26

1    help -- help more people because even working at

2    the prison, it was like a revolving door.  You

3    know, these guys -- just the little time I was

4    there, they were in and out and, you know -- I

5    made -- I made a little bit of a difference but

6    not much.  I made a lot more difference with the

7    County.

8        Q.    Uh-huh.  And did you start in Child

9    Protective Services?

10       A.    Yes.  It's called Child Protective

11   Services, but actually, it was -- foster care is

12   where I actually started as a foster care

13   worker -- a foster social worker.

14       Q.    Did you need to do any additional

15   education or training to become a social worker?

16       A.    Yes.  I forgot I got certified in that,

17   too.  You -- I -- I missed that.  Yes, I did.

18       Q.    What --

19       A.    In fact, we had to come here to

20   Greensboro to the -- the college here for,

21   like --

22       Q.    UNCG?

23       A.    Yes.

24       Q.    Uh-huh.

25       A.    -- for, like, three weeks to get our

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 35

1           MS. BARBER-JONES:  Once I find it.
2       BY MS. BARBER-JONES:
3           Q.   This is the complaint that was filed in
4       this matter.  And it has an exhibit sticker on it
5       that says, Exhibit 1, just because that was
6       attached to the notice of removal that was filed
7       in this case, but today it's Exhibit 3.
8               And have you seen this document before,
9       Mr. Dial?
10          A.   Yes, ma'am.
11          Q.   Okay.  I will represent to you that it
12      is the par- -- the complaint that was filed in
13      this case and that not all of the claims in the
14      complaint have reached the point of discovery.
15      So I'm just going to ask you about the
16      allegations related to the violation of Title VII
17      section starting at Paragraph 15 about the
18      assistant county manager position.
19              And in Paragraph 16 there you refer to
20      Shelton Hill, a Caucasian male who had less
21      education and experience and fewer qualifications
22      than plaintiff.
23              What did you mean by that statement?
24          A.   I meant for qualifications -- it
25      gave -- I cannot tell you exact qualifications on

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 36

1   the -- on the job posting, but it stated -- it
2   gave the requirements, have had an education --
3   college education, even a master's degree.  And a
4   combination of this and this and this and this is
5   what the qualifications said, but I don't
6   remember specifically what the qualifications
7   said.
8         Q.    So are you saying that --
9         A.    I'm saying that I have a four-year
10  degree and Mr. Shelton does not.
11        Q.    You also refer here to experience.
12  What -- how do you have -- or how does Mr. Hill
13  have less experience to you -- than you, rather,
14  to your knowledge?
15        A.    It would be hard for me to say exactly
16  other than I just know what I -- I can tell -- I
17  can answer for -- exactly for what I've done as
18  far as leadership role and being with the County
19  in a leadership role compared to what I have seen
20  Mr. Shelton do as a -- you know, in a leadership
21  role or supervisor role with -- with the County.
22  I think he had some experience with the -- we
23  call it SEATS, which is a travel -- I mean, a
24  transportation system with the County.  I think
25  he supervised that and he was also in charge of

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 37

```
 1   safety with the County.
 2        Q.   Did you work with Mr. Hill at all in
 3   your job duties with the County?
 4        A.   Yes and no.  It would depend on what we
 5   were doing.  If I needed help, say, during --
 6   during disaster food stamps relief -- I don't
 7   know if you're familiar with that.  If we needed
 8   help with transportation, we would have to
 9   coordinate, obviously, with SEATS.  If he was in
10   charge of that, then he would be our -- our point
11   of contact.  So if -- if I worked with him, it
12   would be in that capacity --
13        Q.   Uh-huh.
14        A.   -- not from day to day.  It would be
15   something, you know -- it would be hard to
16   explain but, yes.
17        Q.   So you worked for DSS and he works in
18   the county structure, but sometimes you would
19   work with him if you needed --
20        A.   This --
21        Q.   -- services --
22        A.   This is prior to his pos- -- current
23   position?
24        Q.   Yes.
25        A.   Yes.
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 38

1        Q.   So to just go back and redo that
2    question, you worked for DSS, correct?
3        A.   Yes.
4        Q.   And he worked for the County prior to
5    this application for assistant county manager?
6        A.   Yes.
7        Q.   And you would occasionally work with
8    him if your job duties required you to get
9    assistance with transportation?
10       A.   Exactly.  Even when he was a safety
11   office- -- officer for the County, if a -- if I
12   had a vehicle that was in a accident and you --
13   you know, you have to get -- you'd call him and
14   get, you know, the proper procedures of what to
15   do for this accident.  If it's -- if it's an
16   employee, you needed to get a drug test, all that
17   kind of -- that kind of stuff.  That would be my
18   interaction with him.
19       Q.   Otherwise, did you have any other
20   interactions with him while you were undertaking
21   your job duties or he was undertaking his?
22       A.   No.  I can't remember.  I don't think
23   so.
24       Q.   Have you ever talked to other people
25   about what Mr. Hill's job duties --

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 39

1          A.    No.
2          Q.    -- were?
3          A.    No, I have not.
4          Q.    So is your information about Mr. Hill's
5     experience that's known to you in making this
6     allegation in Paragraph 16, is that just based on
7     your interactions with him in your transportation
8     needs for your role?
9          A.    Yes.
10         Q.    The allegation in Paragraph 16 says,
11    less education and experience and fewer
12    qualifications.
13              Does the reference to less education
14    and fewer qualifications -- are those referring
15    to different things?
16         A.    Yes and no.  Education.  Obviously, a
17    four-year degree would -- compared to a high
18    school diploma is different, I would think.
19    Experience.  I have a lot of experience in
20    supervision and leadership with both the Marine
21    Corps, Department of Corrections, and very much
22    so with the County.  I have a lot of
23    qualifications.
24         Q.    So you have qualifications that are
25    related to your supervision and leadership

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 44

1       A.   Yes.
2       Q.   Okay.  What do you know about that?
3       A.   I know -- I wish I had my calendar, but
4   I can't refer to any date in my calendar.  But
5   according to Tom Taylor, who's county
6   commissioner, he stated that that position would
7   go to Mr. Shelton Hill before the position was
8   even posted or advertised.  I think I skipped one
9   of your --
10      Q.   Yeah.  I --
11      A.   Too fast.  I don't know.
12      Q.   I'm actually going to go back and --
13  I'm sorry to make you do this without reference
14  to your application, but I'd actually just like
15  to cover your employment history with the County
16  real quick --
17      A.   Okay.
18      Q.   -- and -- and go over what your duties
19  were in each position.  So when you first started
20  with the County, what was your position?
21      A.   I was a foster care social worker.
22      Q.   And how long were you in that position?
23      A.   At least two years, maybe two and a
24  half.
25      Q.   From approximately 2000 to 2002?

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 45

 1        A.   Yes.
 2        Q.   And what were your job duties in that
 3    position?
 4        A.   I supervised visits for children that
 5    were in care.  I offered services to their
 6    families.  I worked on definitely reunification
 7    with the families.  If those reunification
 8    efforts failed, of course, we changed the plan to
 9    guardianship with a relative, placement with a
10    relative, or even adoption.
11        Q.   Did you work with anyone else in your
12    department in this role or did -- were your job
13    duties mainly, like, solo?
14        A.   We had maybe four or five other
15    super- -- I had four or five in my unit.  No.
16    No.  No.  We had -- I wish I could tell you how
17    many social workers we had, but, no, that was
18    just one.  I worked in one unit and we had about
19    five social workers in my unit.  We probably had
20    about four other units in foster care because
21    it's a combination of foster care and adoptions.
22        Q.   And what was your leadership role, if
23    any, in this position?
24        A.   As a worker?
25        Q.   Uh-huh.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 46

```
1         A.   I wasn't a supervisor at that time.
2    My -- my main, I guess, focus or job was to
3    manage my caseload.  I didn't supervise anybody
4    other than monitoring, you know, the families,
5    make sure they receive services, but it wasn't --
6    it wasn't a supervisory role.
7         Q.   And what was the next position you held
8    with DSS?
9         A.   I was a Child Protective Services
10   investigator.
11        Q.   Is it possible that the formal title
12   for that position could have been Child
13   Protective Services Social Worker III?
14        A.   That's probably the technical name for
15   it, yeah.
16        Q.   And how long were you in that position?
17        A.   Probably another two, two and a half
18   years.
19        Q.   So approximately 2002 to 2005?
20        A.   I -- I would -- yes, maybe.  Yes.
21        Q.   And what were your job duties as an
22   investigator?
23        A.   I received referrals or complaints out
24   in the community for children that were abused or
25   neglected and I would go out and I would
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 47

1    investigate those complaints.  And if they were
2    confirmed, we would offer services.  If it was --
3    if it was really bad, we would take custody of
4    the children and at the same time still try to
5    front load services.  I would also build that
6    case and get it to what we -- what we call case
7    management and case management would work with
8    that family.
9        Q.   Did you have any supervisory duties in
10   this role?
11       A.   No, other than, again, managing my
12   caseloads.
13       Q.   And what was the next role that you had
14   with DSS?
15       A.   I think I was a sup- -- I became a
16   supervisor in 2005, I think.
17       Q.   Uh-huh.
18       A.   I -- but I -- I think I became a
19   supervisor in investigations.  It was either
20   investigations or foster care.  I can't remember.
21       Q.   I have a reference to Foster Care
22   Social Work Supervisor III.
23       A.   That's what I done.  I supervised
24   foster care then.
25       Q.   And for how long were you in that

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 48

```
 1    position?
 2         A.    I'm actually -- I'm saying the same
 3    answers all over again.  Two and a half years,
 4    maybe.  They -- there was an -- an issue with --
 5    they had a shortage of staff or they needed help
 6    in supervision and investigations, so I think I
 7    did that for a couple years.  And they asked if I
 8    would go to help with investigations as a
 9    supervisor, so I moved there probably two, two
10    and a half years, I think.  I can't remember
11    exact years.
12         Q.    And what did you do in that supervisory
13    position?
14         A.    For the foster care --
15         Q.    Yes.
16         A.    -- supervisor?  Again, I managed the --
17    the unit.  I managed caseloads.  Then for foster
18    care, money and budgeting are very important
19    because you have federal funding, you have state
20    funding, you -- you have county funding.  So when
21    a child's placed, you build that case.  It's very
22    important -- very important when you build that
23    case, if that child receives state or federal
24    funding, you have to make sure it's correct or
25    you're -- or you're going to have to pay that
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 49

1   money back so I had to monitor that to make sure
2   the budget was right when the child was placed
3   for five different workers.  I also had to make
4   sure that the families received ser- -- proper
5   services.
6          Q.   So when you say manage the budget, are
7   you referring to making sure that the -- the
8   state or federal aid received by the child was
9   correct?
10         A.   That we -- that DSS receives it and
11  when we pay out money for placement, whether it
12  be in a group home or another setting, there's so
13  much money that's paid per day that we have to
14  pay, but we can get reimbursed from the feds so
15  it has to be correct.  It has to be -- if there's
16  an error, the State -- the -- the County has to
17  eat it.  It has to -- I shouldn't use that word.
18  The County has to pay it if we mis- -- make --
19  make an error with placement and with the
20  paperwork.
21         Q.   Were you budgeting in the sense of
22  having, like, a pot of money and making decisions
23  about how that should be spent?
24         A.   Yes.  Yes.  Definitely.
25         Q.   So, for example, would you -- what

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 50

 1    kinds of things would you have to pay for?
 2         A.   Like, placement of the child versus --
 3    if you got to pay $3,000 a month for this child
 4    to be here or $1500 a month here, which is the
 5    best, and -- and also, is the child getting
 6    proper services?  You had to weigh that in as
 7    well.  Anything the child needed, things like
 8    that.  It varied.
 9         Q.   Uh-huh.  Did you have regulatory or
10    policy guidance on what the child should be
11    receiving?
12         A.   Yes.
13         Q.   Uh-huh.
14         A.   Yeah.  Even with foster homes -- that's
15    another thing.  I forgot to mention that.  With
16    foster homes -- it's changed since I worked down
17    there, but there's a certain amount per child
18    depending on their age that that -- that -- that
19    that foster home would receive for that placement
20    and, again, we had to make sure that was correct
21    even when -- the time that the child was there.
22    Everything had to be right.
23         Q.   Uh-huh.  And in addition to managing
24    the caseloads and budgeting, did you have any
25    other duties in that position?

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 51

1        A.    There's always other, which -- which
2    would mean anything that we needed at the time.
3    If we were having a party for the children --
4    which I forgot to mention.  I also supervised
5    LINKS, which is a -- it's a -- it's a -- a
6    program that helps children transition that --
7    sometimes children don't come out of foster care.
8    They end up aging out and LINKS helps them by
9    either figuring out what track -- if they want to
10   go to college, if they're going to pick up a
11   trade, whatever they want to do, LINKS would help
12   with those children so I also supervised that.
13   That was another budgeting issue.
14       Q.    And you had mentioned that you moved
15   over to the investigative unit as a supervisor.
16       A.    Yes, I did.
17       Q.    And how did your job duties as a
18   supervisor in the investigations unit differ from
19   your duties as a foster care supervisor?
20       A.    Foster care is slower pace.
21   Investigations is extremely fast because you can
22   get a referral.  It could be immediate.  A child
23   may be at home alone and you have to respond
24   immediately.  Sometimes it may be a -- a referral
25   where you'd have to respond in 24 hours, but the

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 52

1    max is 72 hours.  I had to make sure those
2    investigators got their referrals, that they
3    responded in a timely manner because if you
4    didn't, we would get, you know, hits from the
5    State and lose funding.  It was very -- each --
6    each one was very important.  Child Protective
7    Services is a very important area for DSS.
8         Q.   And how long were you in that position?
9         A.   I think two and a half years as
10   supervisor in investigations.  I think I've done
11   it for about two and a half years.
12        Q.   So between those two supervisor jobs,
13   were you a supervisor for, like, about five
14   years?
15        A.   I think so.
16        Q.   Okay.  So that would take us into, I
17   think, about 2010.
18        A.   '9, maybe.
19        Q.   2009?  Okay.
20        A.   2009, I -- I was income maintenance
21   administrator, I think.
22        Q.   And so what -- what is involved for the
23   job of income maintenance administrator?
24        A.   Back then -- and things change rapidly
25   at DSS, but then for income maintenance

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 53

1    administrator, it was having food nutrition
2    services under you, Medicaid -- which all of them
3    are income -- considered income maintenance, but
4    they're two different programs -- child support,
5    office support.  Also, at that time, I wrote a
6    grant for a child ad- -- advocacy unit, a
7    five-year grant, and -- and child advocacy unit
8    was pretty much something that assisted with the
9    DA's unit when you want to prosecute an alleged
10   perp on a child.  We sent investigators to, I
11   think, South Dakota to be able to actually
12   witness in court to -- I'd forgotten about that.
13   I'd done that, too.
14        Q.    Did you obtain the grant and --
15        A.    Yes.
16        Q.    -- start a unit?
17        A.    Yeah, we started a unit.  We had four
18   social workers in that -- and a supervisor in
19   that department just for ad- -- child ad- --
20   advocacy.
21        Q.    Did you have any role in serving in
22   that unit?
23        A.    I was -- just as supervisor for it,
24   just -- you know, I just -- I -- I'd go to the
25   monthly meetings.  We actually had what we --

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

                                                    Page 54

1    back then we called them community meetings with
2    teams with the DA's office with other
3    stakeholders or anybody that had anything to do
4    with -- with the program, but it lasted five
5    years.
6         Q.   I've heard of those referred to as
7    multidisciplinary --
8         A.   Yes.
9         Q.   -- meetings.
10        A.   MDTs.
11        Q.   And so you would meet with the DA's
12   office, law enforcement, potentially medical --
13        A.   Yes.
14        Q.   -- and social workers --
15        A.   Yeah.
16        Q.   -- and anyone else involved in
17   providing services?
18        A.   In fact, that was the only piece I
19   could not get.  I could not get anybody from
20   Robeson County, any medical provider, that would
21   be willing to be a part of it for testimony
22   and -- and testifying.  That -- that was why we
23   lost the grant.  I had five years to find someone
24   who would do it.  I -- I couldn't get anybody
25   that would commit.

        www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 55

```
 1          Q.   That's a shame.
 2          A.   Yeah.
 3          Q.   So in your income maintenance
 4     administrator position -- actually, I need to go
 5     back.  There's a question I forgot to ask.
 6               When you were a supervisor for foster
 7     care and investigations, who did you report to?
 8          A.   Oh, God.  For foster care?
 9          Q.   Right.  And you don't necessarily
10     need -- I'm more interested in, like, what was
11     the position that you -- or -- of the person who
12     you --
13          A.   A program manager.
14          Q.   -- reported to?
15          A.   I think her --
16          Q.   A program manager?
17          A.   I think her name was Linda Galacci for
18     foster care.
19          Q.   Uh-huh.  And was there a program
20     manager for foster care?
21          A.   Linda Galacci.
22          Q.   So that's --
23          A.   Did I say that?
24          Q.   -- a yes?
25          A.   Yes.
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 56

1          Q.   And when you moved over to supervise
2     investigations, was there a different program
3     manager that you re- -- reported to?
4          A.   Tina Barnes Dawson.
5          Q.   And what -- what was her --
6          A.   Let me stop.  I can't remember if it
7     was Tina or not.  Tina was my supervisor at one
8     time.  I think Tina was the program manager when
9     I was over there.  I can't remember, but it was a
10    program manager position.
11         Q.   What unit does the investigations fall
12    under as far as the program manager?  Who's above
13    it?
14         A.   Program administrator for -- for Child
15    Protective Services.  CPS administrator, I guess
16    you'd call it, is over the program managers and
17    then the administrator reports to the director.
18         Q.   And who is that program administrator
19    at that time?
20         A.   Tom Oxendine.
21         Q.   Uh-huh.  So there was someone in
22    between you and Ms. Oxendine?
23         A.   Yes.
24         Q.   And then when you moved to the income
25    maintenance administrator position, who did you

www.huseby.com     Huseby Global Litigation     800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 57

1    report to?

2          A.    The director --

3          Q.    Okay.

4          A.    -- Becky Morrow.

5          Q.    Did you supervise anyone in that

6    position?

7          A.    The child advocacy unit, the supervisor

8    for child support.  The program manager -- see,

9    they had a program manager for -- at that time,

10   they had a program manager for food and nutrition

11   services and a program manager for Medicaid and I

12   supervised them.

13         Q.    And they would have had reports under

14   them that they were supervising?

15         A.    Yes.  Exactly.  We were -- they're

16   actually -- the State comes down every month to

17   evaluate the cases and then we would meet and

18   they would tell me what we were doing wrong or

19   what we needed to work on.

20         Q.    And how long were you in this position

21   of income maintenance administrator?

22         A.    2009 to 2014, I think.

23         Q.    And what position did you hold next?

24         A.    The one I hold right now.  I'm program

25   manager for child support, I'm -- I'm -- I handle

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 58

```
 1    PR at work, and I'm the hearing officer for
 2    fraud.
 3         Q.   You're the hearing officer for fraud?
 4         A.   For fraud for Medicaid -- if someone
 5    files a -- a false Medicaid report or food and
 6    nutrition services report that's -- that's
 7    fal- -- I mean -- actually, it's called program
 8    integrity, but it's fraud.
 9         Q.   So this complaint about alleged
10    Medicaid fraud --
11         A.   Uh-huh.
12         Q.   -- that was sort of relevant to your
13    job duties at the time?
14         A.   Yes.
15         Q.   Okay.  And program integrity, program
16    manager for child support, and what was the third
17    part of your -- your current position?
18         A.   I said PR, program integrity, and I'm
19    here -- I'm Medi -- I'm actually over child
20    support right now.
21         Q.   So in your prior position as income
22    maintenance administrator, was there a program
23    manager for child support at that time?
24         A.   He le- -- that's another thing.  He
25    left and they had -- they didn't even freeze his
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 59

1    position.  They just got rid of it entirely.  So,
2    no, there is -- there wasn't one at that time.
3        Q.    So what is your official title now?
4        A.    Program manager for child support.
5        Q.    Okay.  Is that lateral to your position
6    as income maintenance --
7        A.    Yes.
8        Q.    -- administrator?
9        A.    Same pay grade, Pay Grade 77.
10        Q.    Uh-huh.  And then is serving as hearing
11    officer, is that, like, an additional position
12    that you hold?
13        A.    It is.  It is.  It's the duty I --
14    there's always other, but that's part -- that's
15    what I do.
16        Q.    And then you mentioned PR.
17        A.    Like, with the university.  Like,
18    yesterday I was at Robeson Community College.
19    They had a job fair and I went out there for
20    our -- represent our agency.  University of North
21    Carolina-Pembroke, when they have any functions,
22    I assist with that.  I'm doing a -- what they
23    call a stand-down with the veteran's office, the
24    Lumbee Tribe.  That's going to be, like, two
25    weeks and I'm -- I'll be there for that.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 60

```
 1        Q.   So is the PR -- is that, like, a role
 2   with a job description?
 3        A.   It is something the directors have
 4   asked me to do, but it's not really -- I don't
 5   even know that it's actually in writing.  I
 6   don't -- I don't think it is.  It's just what I
 7   was asked to do.
 8        Q.   Do you receive any additional pay or
 9   compensation --
10        A.   No.
11        Q.   -- for that role?
12        A.   No, I don't.
13        Q.   And when did you start doing PR?
14        A.   2014.
15        Q.   And at that time, the director was
16   Becky Morrow, right?
17        A.   Yes.
18        Q.   Have your job duties changed since you
19   started in this role in 2014?
20        A.   No, other than, obviously, I had to
21   take a -- a leadership role during the
22   hurricanes.  You know, no one saw that coming so
23   that was just something that was added.
24        Q.   Can you remind me.  What -- what year
25   were Matthew and Florence?
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 61

1     A.    '16 and '18.

2     Q.    Uh-huh.

3     A.    Two 100-year floods in less than two
4  years.

5     Q.    And so the -- the shelter
6  administrator --

7     A.    Shelter manager.  I'd work hand in hand
8  with -- with Red -- Red Cross whenever they would
9  arrive and hopefully be able to transition it to
10 them.  Hopefully but that didn't happen.

11    Q.    Did you receive additional compensation
12 for that role?

13    A.    During Matthew I wouldn't consider it
14 compensation, but they gave us -- because we were
15 working, like, 12- and 14-hour days, we did get
16 something in our paycheck, but it was just that
17 one time.  It wasn't anything extra.  I mean, no.
18 That was only during Matthew.  We didn't get
19 anything for Florence and it was basically just
20 overtime.  That was all it was.

21    Q.    And what is your current pay grade and
22 salary?

23    A.    I should know that.  My pay grade is a
24 Pay Grade 77.  I think with my longevity, I may
25 be around 86,000.  I'm not sure.  I think we're

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 62

1   getting a pay raise this payday.  That's what I
2   was told anyway.
3        Q.   And do you know what step you would be?
4        A.   If I get another step -- I wish I could
5   tell you.  Okay.  I'm -- I wish I had a copy of
6   it.  Year -- I'm, like, a Pay Grade 77 and then
7   each year you're with the County, you get steps.
8   So I'm a Pay Grade 77, Step 21.
9        Q.   Okay.  2000 until 2000- --
10       A.   2020- -- exactly.
11       Q.   Uh-huh.
12       A.   It's so much per year for incentive
13  raises to try to get employees to stay, retain
14  employees.
15       Q.   So how do you believe that your
16  experience as we've discussed it in the past half
17  hour or so would have transitioned over into
18  qualifications for the assistant county manager
19  position?
20       A.   I hate -- I hate to ask this:  How
21  could they not?  You know, an assistant county
22  manager position, it's a key position because you
23  have all these other departments under the County
24  including sort of DSS.  Even though DSS reports
25  to -- is -- is a stand-alone almost and so is the

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 63

 1    health department, but -- like, the water
 2    department, parks and rec, all the other
 3    departments, waste management, all of that falls
 4    under the County.  I don't mean to be coy or
 5    whatever, but all -- you really need leadership,
 6    you really need experience in budgeting, you
 7    really need experience with being able to
 8    collaborate with other entities because you
 9    always need help especially during an emergency.
10    You need to know how to speak with workers.  You
11    need to be, you know, able to communicate.
12    All -- all that comes from -- leadership is what
13    I would think you would need as assistant county
14    manager.
15         Q.   And there are two assistant county
16    managers, right?
17         A.   Yes.
18         Q.   The other one is Jason King?
19         A.   Yes.
20         Q.   And do the two co- -- assistant county
21    managers have responsibility for different areas
22    of the County's work?
23         A.   Yes, they do.
24         Q.   So within the position that you were
25    applying for, do you know what programs that

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 64

1    position would be responsible for?

2        A.   I -- I do not.  Part of her questions,

3    I think, had something to do with the water

4    department so I assume the water department would

5    be under that position, but I don't -- I really

6    don't know.  I really couldn't answer that

7    question because I don't know.  I don't know how

8    Ms. Blue has the -- you know, the departments

9    under each admin- -- I mean, manager.  I don't

10   know.

11       Q.   And at the time that you were applying

12   for the position of assistant county manager, who

13   do you think would have been the most

14   knowledgeable about the qualifications for that

15   position?

16       A.   Ms. Blue, I would think.

17       Q.   Uh-huh.  And she actually held that

18   position at one point, right?

19       A.   She did.

20       Q.   Uh-huh.  Did you talk to anyone about,

21   you know, what that position did or what the

22   qualifications were before you interviewed for

23   the position?

24       A.   Just -- I just read the qualifications

25   from the job posting.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 65

```
 1        Q.   Uh-huh.  And I think my records reflect
 2   that you applied for the job in February of
 3   2015 -- or February of 2019.  Does that --
 4        A.   I think so.  I -- I don't remember the
 5   exact date.
 6        Q.   All right.  I am going to go through
 7   and give out copies of a document that I got from
 8   your attorney and I think you would have given to
 9   her and mark this as Exhibit 4.
10             (DIAL EXHIBIT 4, Photocopied Pages from
11   Calendar/Diary, was marked for identification.)
12             THE WITNESS:  I'm sorry.
13             MS. BARBER-JONES:  Sorry.  That was a
14   brain lapse.
15   BY MS. BARBER-JONES:
16        Q.   And I'll let you look through it and
17   then we'll talk about what it is.
18             MS. BARBER-JONES:  And, actually, would
19   you all be agreeable to about a five-minute
20   break?
21             MS. QUINN:  That's probably good for
22   him to review this many pages.
23             MS. BARBER-JONES:  Uh-huh.  So if we
24   could go off the record.
25             (Whereupon, there was a recess in the
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 68

```
 1    not answer that call -- or those calls or another
 2    call that you received on Thursday.
 3              Is that an accurate reading of your
 4    notes here?
 5         A.   Yes.
 6         Q.   Uh-huh.  Okay.  And after that note
 7    also on Thursday, January 3rd, it says, spoke
 8    with Tom Taylor and Reese three-way.
 9              Is that Reese Oxendine?
10         A.   Yes, it is.
11         Q.   Okay.  And who is Reese Oxendine?
12         A.   He is a county employee.  He works with
13    the waste management system.
14         Q.   What is his role with the waste
15    management system?
16         A.   He is, like, a -- I would call it law
17    enforcement.  Anyone -- if he finds any --
18    anybody that's violating litter policies or
19    rules, he's -- he has authority to write a -- a
20    litter ticket or citation.
21         Q.   Is he in a supervisory or leadership
22    role?
23         A.   No.  No.  Just enforcement.
24         Q.   And it says on a three-way.  Does that
25    mean a three-way call?
```

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 69

1          A.   Yes, it does.
2          Q.   And what were you discussing on the
3     three-way call?
4          A.   I can't remember why Reese would be
5     calling me, but he put Tom Taylor on three-way.
6     Reese called me and he put Tom Taylor on the
7     call.
8          Q.   Why did Reese call you?
9          A.   I can't remember exactly why he'd be
10    calling me that day.  I might have been out still
11    with my grandson, who was born that day before.
12         Q.   And what is your relationship with
13    Reese Oxendine?
14         A.   We're friends.
15         Q.   Do you have any interaction in your job
16    roles for the County?
17         A.   With Reese?
18         Q.   Yes.
19         A.   Again, I forgot.  I -- I'm responsible
20    for the recycling project at DSS and I did get
21    assistance from waste management in placing
22    recycling stations all throughout the agency
23    separating plastics and bottles and regular
24    trash.
25         Q.   Is that done through Reese?

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 70

```
 1        A.   He assisted or gave me knowledge on
 2   what to do.  He assisted.
 3        Q.   But other than that, your job duties
 4   don't overlap?
 5        A.   With Reese?  No.
 6        Q.   Yes.  And then Tom Taylor is a Robeson
 7   County commissioner?
 8        A.   Yes, he is.
 9        Q.   And it said, asked about county
10   business.  What does that mean?
11        A.   Where I'm from, if a county
12   commissioner calls you or you're talking to them,
13   you'll -- normally you'll say, what's going on?
14   It's basically county business.  Anything --
15   what's new coming, you know, what can we expect?
16   Example would be, you think we'll get a
17   cost-of-living raise this year, things like that.
18        Q.   And so is this a -- a conversation
19   among friends and acquaintances or would you
20   consider this to be a conversation you had as
21   part of your job duties for -- for DSS?
22        A.   Friends and acquaintances, I would
23   guess.
24        Q.   Are you friends with Tom Taylor?
25        A.   He says that we are friends.
```

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 71

1          Q.    You don't agree?
2          A.    Depends on what you call a friend --
3    your definition of a friend is, but I -- I
4    would -- I -- it would be hard to answer.  I
5    couldn't answer that question.
6          Q.    Could you describe for me the nature of
7    your relationship with Tom Taylor.
8          A.    I'm a county employee.  He's a county
9    commissioner.  We speak when we see each other.
10   If I need something for DSS, say -- ano- -- an
11   example would be during COVID, no one could get
12   their hands on hand sanitizer.  Mr. Taylor is on
13   the board with the county fair.  The county fair
14   has those big barrels with water and soap that
15   you can wash your hands.  That's -- that's all we
16   could get our hands on during COVID because
17   nobody could get their hands on any hand
18   sanitizer.  I -- I actually called Mr. Taylor and
19   asked could we borrow one for DSS to put at the
20   front door.  That's the kind of calls I would
21   make with Mr. Taylor.  He was -- since he's on
22   the board, he was able to get one for the front
23   and the back of the entrance during COVID.  So he
24   would help me if I asked for help and I would do
25   the same for him.

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 72

```
 1          Q.   So you would call him about things for
 2     the County, but maybe this wasn't, you know, a --
 3     an official -- I'm sorry.  I'm blanking on the
 4     term.  -- line of leadership or --
 5          A.   No.  It was just Reese called me and I
 6     answered the phone.
 7          Q.   Uh-huh.  And it says that -- it just --
 8     when you -- in your description in the entry for
 9     January 3rd, it goes on to say, stated assistant
10     comanager position should be filled by a white
11     person, She- -- Shelton Hill.
12               Did somebody state that on the call?
13          A.   Yes.
14          Q.   Who said that?
15          A.   Commissioner Tom Taylor.
16          Q.   And how did it come up that he said
17     that?
18          A.   I think Reese asked about the county
19     commissioner -- assistant county manager.  Did
20     you have -- here's how Reese said it:  Do you
21     have any idea about the assistant county
22     count- -- county manager position?  And then
23     that's when Tom said what he just said and what
24     you just read.
25          Q.    And was he saying that as his own
```

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 73

```
 1    personal opinion?
 2         A.   I don't know.
 3         Q.   Do you -- did he give any context for
 4    why he was saying that?
 5         A.   Yes.
 6         Q.   What did he say?
 7         A.   He said, you would not have two Indians
 8    and African-American in administration.  You'd
 9    have to have a white.
10         Q.   So are you saying that because you and
11    Ms. Kellie Blue are Native American and the other
12    assistant county manager who's currently in that
13    position is African-American -- Jason King,
14    right?
15         A.   Yes.
16         Q.   -- are you saying that Mr. Taylor said
17    you, Anthony Dial, could not be in the position
18    of assistant county manager because you're Native
19    American?
20         A.   That's what I gathered.
21         Q.   Did he outright say that?
22         A.   Yes, he did.
23         Q.   What did he say precisely?
24         A.   Exactly what I just said.  He said that
25    we would not have two Native Americans, an
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 74

1    African-American uptown.  You'd have to have a
2    white as well.
3         Q.   Uh-huh.  And was he saying we as in the
4    board of commissioners?
5         A.   Yes.
6         Q.   Was he saying this as we -- this is my
7    personal opinion and I'm going to talk to the
8    other county commissioners about it or was he
9    telling you that this is what the other county
10   commissioners felt about it?
11        A.   He just said we.  That was how he --
12   exactly how he -- I can't --
13        Q.   So he didn't specifically tell you who
14   he was talking about?
15        A.   He said we.
16        Q.   We.  And you inferred that he was
17   referring to the county commissioners?
18        A.   I would think so.
19        Q.   Okay.  When you inferred that, were
20   there any specific county commissioners who you
21   thought he might have been referring to?
22        A.   I was -- I -- it would be speculation
23   if I even said.  I couldn't -- I don't know.
24        Q.   Okay.  Why would Reese bring Tom Taylor
25   onto the phone other than to talk about the

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 75

1    assistant county manager position?

2        A.    I think they were actually in a

3    conversation about something else and they --

4    they called me.  I really don't know why they

5    were talking.  I don't know.

6        Q.    So it may have been that he and

7    Mr. Taylor were on the phone and they brought you

8    in?

9        A.    Yes.  Exactly.

10       Q.    Okay.  And then your note goes on to

11   say, however, stated Shelton does not have a

12   four-year degree.

13       A.    Yes.

14       Q.    Is that something that Tom said --

15   Taylor said to you?

16       A.    No.  It's just a note.

17       Q.    Ah.  Well, it says, stated; is that

18   right?

19       A.    Maybe Reese may have said that then --

20       Q.    You --

21       A.    -- because Tom didn't say it.

22       Q.    Okay.  Did Mr. Taylor say anything

23   related to that statement about Shelton Hill does

24   not have a four-year degree?

25       A.    I can't remember what Tom said after

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 76

```
 1    that.
 2         Q.   Okay.  And the -- the next note in here
 3    says, which means they will rewrite the job
 4    classification to fit Mr. Hill.
 5         A.   Yes.
 6         Q.   Did somebody say that?
 7         A.   No.  But for my speculation of him not
 8    ha- -- I -- I -- I pretty much thought that a
 9    position as assistant county manager, you -- the
10    minimum would be a four-year degree.  Most people
11    would think that.
12         Q.   In your opinion, are you saying that
13    you don't think there is any equivalent of
14    experience and training that could replace a
15    four-year degree in the qualifications for
16    assistant county manager?
17         A.   It would be difficult.  I'm sure it's
18    possible.
19         Q.   It would be difficult, but you're sure
20    it's possible?
21         A.   It -- it could be.
22         Q.   It could be possible.  At that point in
23    time when you had this conversation on January
24    3rd of 2019, had you seen any copies of the job
25    description for assistant county manager?
```

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 77

1    A.   I don't even think it had been
2    advertised.  Like I said earlier, I don't think
3    it had been posted.
4    Q.   So how would people be discussing the
5    availability of that position?
6    A.   I can't remember when Kellie Blue moved
7    up so it was a vacant position so people are
8    going to talk about that vacant position.  It's
9    vacant so they're going to ask about it.  I can't
10   remember exactly when Kellie moved.
11   Q.   Was there any --
12   A.   You had --
13   Q.   -- assumption among people that the
14   position would be filled internally by someone
15   working for the County already?
16   A.   I don't know.
17   Q.   And then the final sentence here says,
18   another discrimination suit in the making.
19   A.   Yes.
20   Q.   So what -- what does that mean?
21   A.   The County has a history of
22   discriminating against employees.
23   Q.   Are you talking about discrimination
24   suits filed against the County?
25   A.   Yes.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 78

```
 1        Q.   Okay.
 2        A.   Or at least complaints.
 3        Q.   And so you believed that what you heard
 4   from -- or -- from Mr. Taylor during this
 5   conversation reflected potential discrimination
 6   by the County?
 7        A.   Yes.
 8        Q.   Does this refer at all to you planning
 9   to file a discrimination suit?
10        A.   No.  I didn't plan it.  I did not plan
11   it.
12        Q.   Is there anything else that you
13   remember about this conversation on January 3rd
14   that we haven't discussed?
15        A.   No.  I think you've been pretty --
16        Q.   Okay.  So going on to the next page
17   that I have on Exhibit 4, it looks like it's
18   February 11th, which is a Monday at the top.  So
19   jumping from January 3rd to February 11th.  It
20   looks like the -- just above that entry is an
21   EEOC charge number.
22             Is that what that is?
23        A.   Yes.
24        Q.   Was that written by you about one of
25   your charges?
```

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 79

```
 1        A.   Yes.
 2        Q.   And it says, informed Velvet is fishing
 3   for e-mails.  What does that refer to?
 4        A.   I'm trying to think.  This was in 2019?
 5        Q.   Uh-huh.
 6        A.   I think Ms. -- it says, referenced
 7   Mitszi.  She's a supervisor in child support.  I
 8   think she had an opening, maybe, and there may
 9   have been some kind of conversation about
10   positions and I think Ms. Velvet was asking about
11   certain e-mails and I just wrote that down.  I
12   really don't know specifically what it was about
13   now.  I can't remember.
14        Q.   When you use the word fishing, do you
15   mean that she had some kind of bad intent?
16        A.   No.  She was just asking questions
17   about some kind of e-mails in reference to
18   positions -- possible positions.  I don't even
19   know if they even had an opening.
20        Q.   Uh-huh.  And then after that it says,
21   assistant county manager position posted.
22        A.   I think it posted on February 11th if I
23   wrote it down.
24        Q.   And it says after that, informed
25   position will be filled by Mr. Shelton Hill.
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

```
                                                    Page 80
 1          A.   Yes.
 2          Q.   Did somebody inform you of that on
 3     February 11th?
 4          A.   No.  That was my note from January 3rd.
 5     I just put it as a reminder --
 6          Q.   So that --
 7          A.   -- for me.
 8          Q.   Oh, sorry.
 9          A.   It's just a remind- -- you -- can I
10     talk?
11          Q.   I -- yes.  I was stopping myself from
12     interrupting you.
13          A.   That's just a reminder from the note
14     from the 3rd.
15          Q.   So that -- that note on February 11th,
16     informed position will be filled by Mr. Shelton
17     Hill, refers back to that note from January --
18          A.   Back to --
19          Q.   -- 3rd?
20          A.   -- the previous note, yes.
21          Q.   Uh-huh.  And then moving on to the next
22     page, I believe this is Friday, February 15th,
23     just judging from part of the page before.
24               Does that look about right to you?
25          A.   Yes.
```

www.huseby.com     Huseby Global Litigation     800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

                                              Page 81

 1        Q.   Okay.  And it looks like you said that
 2   you dropped off your assistant county manager
 3   application.  It says, reception downtown HR.
 4             Is that where you dropped off your
 5   application?
 6        A.   You would think you would but -- yes, I
 7   did, but luckily, I -- which you -- I'm sure
 8   you're going to get to it.  You're supposed to do
 9   it online, but I dropped a paper application off
10   downtown and left it with HR and I documented it
11   because, obviously, I wanted to make sure they
12   had it on time.  And I did let Ms. Velvet know
13   that I was doing that, that I was applying for
14   that position.
15        Q.   And did you schedule a meeting with her
16   to let her know?
17        A.   No.  I just walk- -- her off- --
18   we're -- we're in the same wing.  I just walked
19   by and just told her what I was doing.
20        Q.   And it says here, stated I am doing an
21   awesome job and would make an excellent assistant
22   county manager.
23             Is that referring to something
24   Ms. Nixon said?
25        A.   Yes.  About me.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 82

1       Q.    During that conversation on February
2  15th?
3       A.    Yes.
4       Q.    And then moving on to the next page,
5  this entry on February 18th is circled.  It said,
6  hand delivered college transcript to assistant HR
7  Brian.
8       A.    I can't remember Brian's last name.
9  He's -- he's no longer with the County, but his
10  first name is Brian.
11       Q.    So at this point, you were still
12  submitting paper application materials.  Under
13  that it says, spoken with T Taylor.  Is that Tom
14  Taylor?
15       A.    Yes, it is.
16       Q.    And stated assistant county manager
17  would go to Shelton Hill.
18       A.    Yes.
19       Q.    So how did you end up speaking with
20  Mr. Taylor on February the 18th?
21       A.    Okay.  Went -- downtown Lumberton is
22  where our HR is.  I dropped my transcript off
23  there.  Tom Taylor has a business downtown.  I
24  stopped and spoke and said hello to him and I
25  did.  I asked about the assistant county manager

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 83

1   job and, again, he said that would go to Shelton
2   Hill.
3           Q.    And when he said this, did he say this
4   in the context of telling you to expect not to
5   receive the position?
6           A.    Yes.
7           Q.    Did he say this as a -- as a -- as
8   though it was a fact or --
9           A.    Yes.  It appeared.
10          Q.    Did he state anything indicating it was
11  his opinion like, I think the position should go
12  to Shelton Hill?
13          A.    No.  It was not in his opinion; it was
14  a fact.
15          Q.    And the next day, Tuesday the 19th, it
16  says that you had breakfast with Sheriff Ferris.
17  Is that the county sheriff?
18          A.    Yes, it is.
19          Q.    Okay.  And was it for a work breakfast
20  or a personal matter?
21          A.    It was work.  It was break- -- it --
22  actually, his name is Burnis Wilkins.  That's
23  just my note, the way I wrote it.  Fran's is the
24  actual restaurant.
25          Q.    Ah, at Fran's.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 134

1    happened during your actual interview for --
2         A.    For my --
3         Q.    -- this position.
4         A.    I went into a room and I'd forgotten my
5    glasses and I think I was -- I was given like
6    a -- some type of budget thing and it had --
7    it -- yeah, you wouldn't tell what department it
8    was or what was going on, but you had to look at
9    the numbers and figure out what offset was or why
10   the numbers were in the red or why this was going
11   on.  I had to explain the budget from -- from
12   what -- from what I was reading.  And I just
13   wrote down what I thought it was and I really
14   don't know what the answer was.  I -- no one ever
15   told me.  I think it had a lot -- and I think,
16   again -- I keep saying the water department.  It
17   had something do with the water department and
18   the County getting new meters that you don't have
19   to actually physically inspect.  Some kind of
20   internet or some kind of a signal to get their
21   meter readings and I was explaining that from
22   what it looked like to me, because the -- the
23   budget had gone down in maintenance and up in
24   buying equipment and to me, it was them buying
25   that upgraded equipment versus staff and that's

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 135

1    how I explained it when I answered the question,
2    I think.
3         Q.    Uh-huh.  So no one ever told you, like,
4    what the correct answer to that --
5         A.    I have no idea.
6         Q.    Did you answer any questions during
7    your interview?
8         A.    Yes.
9         Q.    Okay.  Who interviewed you?
10        A.    Kellie Blue.
11        Q.    Did -- was anyone else in there asking
12   questions?
13        A.    No.
14        Q.    Was anyone else in there, period?
15        A.    Her clerk came in and out but didn't
16   stay.  There was also a time reading that on --
17   that budget.  I can't remember how much -- it
18   was, like, ten or 15 minutes.
19        Q.    Did you do that before or after you
20   answered questions?
21        A.    Before I answered.  The questions were
22   the last.
23        Q.    Uh-huh.  Did anyone tell you in advance
24   of the interview what the questions would be?
25        A.    Oh, no.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 136

```
 1        Q.   And before this interview, were you
 2   previously acquainted with Kellie Blue?
 3        A.   Yes.
 4        Q.   Okay.  What is the nature of your
 5   relationship, if any, with Kellie Blue?
 6        A.   Again, just county business.  You know,
 7   if I need something, she -- she helps me.  If
 8   she's needing something, I'll -- I'll help her
 9   just if -- you know, if she needs something from
10   my department.
11        Q.   Did you know her when you were -- or,
12   rather, when she was in the assistant county
13   manager position?
14        A.   I knew her also when she was in
15   finance.
16        Q.   Do you associate with her outside of
17   the office at all?
18        A.   Rarely.  Rarely.  I -- I -- in fact, I
19   saw her at the bank yesterday and I spoke to her.
20        Q.   So you're -- you're work acquaintances.
21   Would that be accurate?
22        A.   Yes.
23        Q.   And Kellie Blue is Native American --
24        A.   Yes.
25        Q.   -- right?  Do you have any reason to
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 137

1    believe that she would view your qualifications
2    more negatively because you're a Native American?
3          A.    I don't know.  I would -- I would hope
4    not, but I don't know.
5          Q.    Do you have any information or evidence
6    known to you that would indicate to you she would
7    view your qualifications more negatively because
8    you're Native American?
9          A.    As I said earlier, the only way that I
10   could think was if she was influenced by the
11   commissioners to get someone else of a different
12   race because they are her bosses and she does
13   what they tell her to do.
14         Q.    Do you know or has anyone told you
15   about any conversations between commissioners and
16   Ms. Blue about the selection for this position?
17         A.    No, not that I'm aware of.
18         Q.    So no one has told you a- -- about any
19   conversations between Ms. Blue and any
20   commissioner?
21         A.    No.
22         Q.    Do you have any reason to believe that
23   the board of commissioners called her into a
24   closed session to discuss the selection process?
25         A.    It's possible, but I can't say yes or

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 138

1    no.
2        Q.    Uh-huh.  Do you -- do you think that's
3    something that Mr. Cummings would have told you
4    about if he was present for a closed session
5    where the assistant county manager selection
6    process was discussed?
7        A.    He was not in that circle.  If there
8    was a meeting, he would not have been a part of
9    it.
10        Q.    So I'm talk- -- he was a county
11   commissioner at that point in 2019, right?
12        A.    Yes.
13        Q.    And I'm talking about an official
14   meeting of the board of commissioners.  If they
15   went into closed session and discussed the
16   selection for this position, do you believe that
17   Mr. Cummings would have told you about it?
18        A.    I can't say because that was the time
19   that he was sick.  I can't say.  He was in and
20   out of the hospital, I think.
21        Q.    Have you ever discussed not getting
22   this position with Kellie Blue?
23        A.    No.  I mean, we -- I wouldn't do that.
24   That's not professional.  I wouldn't do that.
25        Q.    Have you ever discussed not getting

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 175

```
 1                  DEPOSITION ERRATA SHEET
 2          I, ANTHONY DIAL, do hereby certify that I
 3     have read the foregoing transcript of my
 4     testimony, and further certify that it is a true
 5     and accurate record of my testimony (with the
 6     exception of the corrections listed below):
 7     Page      Line                Correction
 8     ____      ____      _____
 9     ____      ____      _____
10     ____      ____      _____
11     ____      ____      _____
12     ____      ____      _____
13     ____      ____      _____
14     ____      ____      _____
15
16          WITNESS my hand and seal on this, the _____
17     day of _____, 20___.
18                       _____
19                          WITNESS SIGNATURE
20          This deposition was signed in my presence by
21     _____ on the ____ day of _____,
22     20___.
23                       _____
24                       NOTARY PUBLIC
                          NOTARY NO. _____
25                       My commission expires:_____
```

www.huseby.com    Huseby Global Litigation    800-333-2082

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 176

1              CERTIFICATE OF COURT REPORTER

2      North Carolina

3      Wake County

4          I, Lisa A. Wheeler, RPR, CRR, Notary Public

5      in and for the State of North Carolina, certify

6      that on April 27, 2022, in Greensboro, North

7      Carolina, ANTHONY DIAL, having produced

8      satisfactory evidence of identification and

9      having been first duly sworn by me to tell the

10     truth, thereupon testified as set forth in the

11     preceding 175 pages, exclusive of errata sheet

12     and signature page, if required, the examination

13     being reported by me verbatim and reduced to

14     typewritten form by me personally.

15         I further certify that I am not of counsel

16     or in the employ of the parties to this action;

17     that I am not related by blood nor connected by

18     marriage to the parties of this action; that I am

19     not interested in the outcome thereof; that the

20     foregoing is a true and accurate transcript of

21     said proceeding to the best of my ability and

22     understanding.

23         This the 10th day of May, 2022.

24     _____

25                    Lisa A. Wheeler, RPR, CRR
                       Notary Public, #19981350007

www.huseby.com    Huseby Global Litigation    800-333-2082

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | OMB Control No. 3046-0008 |
|---|---|
| **STATE AND LOCAL GOVERNMENT INFORMATION REPORT (EEO-4)** <br> EEOC Form 164 | |

Control Number: 37200790

Reporting Year: 2019

## A. TYPE OF GOVERNMENT (Check one box only)

☐ 1. State ☑ 2. County ☐ 3. City ☐ 4. Township ☐ 5. Special District

☐ 6. Other (Specify)

## B. IDENTIFICATION

1. NAME OF POLITICAL JURISDICTION

ROBESON COUNTY

| 2. MAILING ADDRESS | CITY/TOWN | COUNTY | STATE | ZIP |
|---|---|---|---|---|
| 701 N ELM ST | LUMBERTON | ROBESON | NC | 28358 |

## C. FUNCTION

| | |
|---|---|
| 1.**FINANCIAL ADMINISTRATION**. Tax billing and collection, budgeting, purchasing, central accounting and similar financial administration carried on by a treasurer's, auditor's or comptroller's office and; <br><br> **GENERAL CONTROL**. Duties usually performed by boards of supervisors or commissioners, central administration offices and agencies, central personnel or planning agencies, all judicial offices and employees (judges, magistrates, bailiffs, et al.) | ✔ 8. **HEALTH**. Provision of public health services, outpatient clinics, visiting nurses, food and sanitary inspections, mental health, alcohol rehabilitation service, etc. <br><br> 9. **HOUSING**. Code enforcement, low-rent public housing, fair housing ordinance enforcement, housing for elderly, housing rehabilitation, rent control. |
| 2. **STREETS AND HIGHWAYS**. Maintenance, repair, construction and administration of streets, alleys, sidewalks, roads, highways, and bridges. | 10. **COMMUNITY DEVELOPMENT**. Planning, zoning, land development, open space, beautification, preservation. |
| ✔ 3. **PUBLIC WELFARE**. Maintenance of homes and other institutions for the needy; administration of public assistance. (Hospitals should be reported under function 7.) | 11. **CORRECTIONS**. Jails, reformatories, detention homes, halfway houses, prisons, parole and probation activities. |
| ✔ 4. **POLICE PROTECTION**. Duties of a police department, sheriff's, constable's, coroner's office, etc. Including technical and clerical employees engaged in police activities. | 12. **UTILITIES AND TRANSPORTATION**. Includes water supply, electric power, transit, gas, airports, water transportation and terminals. |
| 5. **FIRE PROTECTION**. Duties of the uniformed fireforce and clerical employees. (Forest fire protection activities should be reported under function 6.) | 13. **SANITATION AND SEWAGE**. Street cleaning, garbage and refuse collection and disposal. Provision, maintenance and operation of sanitary and storm sewer systems and sewage disposal plants. |
| 6. **NATURAL RESOURCES**. Agriculture, forestry, forest fire protection, irrigation drainage, flood control, etc., and; <br><br> **PARKS AND RECREATION**. Provision, maintenance and operation of parks, playgrounds, swimming pools, auditoriums, museums, marinas, zoos, etc. | 14. **EMPLOYMENT SECURITY.** State governments only. <br><br> ✔ 15. **OTHER** (Specify.) |
| 7. **HOSPITALS**. Operation and maintenance of institutions for inpatient medical care. | X - SUMMARY FUNCTION SELECTED |

ROBESON 001115

**Control Number:** 37200790    **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | | D. EMPLOYMENT DATA AS OF JUNE 30 | | | | | | | | | | | | | Function 3 - PUBLIC WELFARE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **1. FULL-TIME EMPLOYEES** | | | | | | | | | | | | | |
| | | HISPANIC OR LATINO | | RACE/ETHNICITY — NOT-HISPANIC OR LATINO | | | | | | | | | | | | |
| | | | | MALE | | | | | | FEMALE | | | | | | |
| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| OFFICIALS - ADMINISTRATORS | 1. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 3. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 4. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 5. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 6. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 7. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 8. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| PROFESSIONALS | 9. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 10. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 11. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 12. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 2 |
| | 13. $33.0 – 42.9 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 3 | 14 | 0 | 0 | 3 | 0 | 22 |
| | 14. $43.0 – 54.9 | 1 | 1 | 2 | 1 | 0 | 0 | 2 | 0 | 13 | 24 | 0 | 0 | 23 | 0 | 67 |
| | 15. $55.0 – 69.9 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 7 | 10 | 0 | 0 | 12 | 0 | 32 |
| | 16. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 3 |
| TECHNICIANS | 17. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 18. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 19. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 20. $25.0 – 32.9 | 0 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| | 21. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 22. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 23. $55.0 – 69.9 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 3 |
| | 24. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PROTECTIVE SERVICE | 25. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 26. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 27. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 28. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 29. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 30. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 31. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 32. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARAPROFESSIONALS | 33. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 34. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 2 |
| | 35. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 36. $25.0 – 32.9 | 1 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 17 | 18 | 0 | 0 | 24 | 0 | 63 |
| | 37. $33.0 – 42.9 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 14 | 13 | 0 | 0 | 17 | 0 | 46 |
| | 38. $43.0 – 54.9 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 15 | 6 | 0 | 0 | 14 | 0 | 37 |
| | 39. $55.0 – 69.9 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 6 |
| | 40. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 3 |

**Control Number:** 37200790          **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| D. EMPLOYMENT DATA AS OF JUNE 30 | Function 3 - PUBLIC WELFARE |
|---|---|

**1. FULL-TIME EMPLOYEES**

| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO — MALE | | | | | | NOT-HISPANIC OR LATINO — FEMALE | | | | | | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | |
| ADMINISTRATIVE SUPPORT | 41. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 42. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 43. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 44. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 9 | 7 | 0 | 0 | 6 | 1 | 24 |
| | 45. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 2 | 0 | 5 |
| | 46. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 1 | 0 | 0 | 0 | 0 | 5 |
| | 47. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 48. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SKILLED CRAFT | 49. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 50. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 51. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 52. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 53. $33.0 – 42.9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 54. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 55. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 56. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SERVICE - MAINTENANCE | 57. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 58. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 59. $20.0 – 24.9 | 0 | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| | 60. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 61. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 62. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 63. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 64. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **65. TOTAL FULL-TIME (LINES 1-64)** | | 3 | 3 | 13 | 6 | 0 | 0 | 9 | 0 | 93 | 98 | 0 | 0 | 105 | 1 | 331 |

**2. OTHER THAN FULL-TIME EMPLOYEES**

| JOB CATEGORY | | | | | | | | | | | | | | | | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66. OFFICIALS – ADMINISTRATORS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 67. PROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68. TECHNICIANS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 69. PROTECTIVE SERVICE | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 70. PARAPROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 3 |
| 71. ADMINISTRATIVE SUPPORT | | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| 72. SKILLED CRAFT | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 73. SERVICE – MAINTENANCE | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| **74. TOTAL OTHER THAN FULL-TIME (LINES 66 – 73)** | | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 1 | 0 | 6 |

ROBESON 001117

**Control Number:** 37200790          **Reporting Year:** 2019

**Jurisdiction:** ROBESON COUNTY

| | D. EMPLOYMENT DATA AS OF JUNE 30 | Function 3 - PUBLIC WELFARE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **RACE/ETHNICITY** | | | | | | | | | | | | | | |
| | **HISPANIC OR LATINO** | | **NOT-HISPANIC OR LATINO** | | | | | | | | | | | | |
| | | | **MALE** | | | | | | **FEMALE** | | | | | | |
| | **MALE** | **FEMALE** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **TOTALS** |
| **3. NEW HIRES DURING EEO-4 FISCAL YEAR (JULY 1 – JUNE 30)** | | | | | | | | | | | | | | | |
| 75. OFFICIALS – ADMINISTRATORS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 76. PROFESSIONALS | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 | 13 | 0 | 0 | 4 | 0 | 21 |
| 77. TECHNICIANS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 78. PROTECTIVE SERVICE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 79. PARAPROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 7 | 0 | 0 | 8 | 0 | 17 |
| 80. ADMINISTRATIVE SUPPORT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | 1 | 1 | 5 |
| 81. SKILLED CRAFT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 82. SERVICE – MAINTENANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **83. TOTAL NEW HIRES (LINES 75 – 82)** | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 7 | 21 | 0 | 0 | 13 | 1 | 43 |

**E. DEPARTMENTS/AGENCIES INCLUDED IN THIS FUNCTION REPORT**

**F. DEPARTMENTS/AGENCIES NOT INCLUDED IN THIS FUNCTION REPORT**

**G. REMARKS ABOUT THIS FUNCTION REPORT**

ROBESON 001118

**Control Number:** 37200790  **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | | D. EMPLOYMENT DATA AS OF JUNE 30 | | | | | | | | | | | | | | Function 4 - POLICE PROTECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1. FULL-TIME EMPLOYEES | | | | | | | | | | | | | | |
| | | RACE/ETHNICITY | | | | | | | | | | | | | | |
| | | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | |
| | | | | MALE | | | | | | FEMALE | | | | | | |
| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| OFFICIALS - ADMINISTRATORS | 1. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 3. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 4. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 5. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 6. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 7. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 8. $70.0 PLUS | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| PROFESSIONALS | 9. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 10. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 11. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 12. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 13. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 14. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 15. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 16. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TECHNICIANS | 17. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 18. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 19. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 20. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 21. $33.0 – 42.9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 |
| | 22. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 |
| | 23. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 24. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PROTECTIVE SERVICE | 25. $0.1 – 15.9 | 0 | 0 | 4 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 10 |
| | 26. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 27. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 28. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 29. $33.0 – 42.9 | 0 | 0 | 26 | 5 | 0 | 0 | 21 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 56 |
| | 30. $43.0 – 54.9 | 0 | 0 | 24 | 8 | 0 | 0 | 21 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 55 |
| | 31. $55.0 – 69.9 | 0 | 0 | 6 | 2 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 |
| | 32. $70.0 PLUS | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| PARAPROFESSIONALS | 33. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 34. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 35. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 36. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 37. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 38. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 39. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 40. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ROBESON 001119

**Control Number:** 37200790  **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | | **D. EMPLOYMENT DATA AS OF JUNE 30** | | | | | | | | | | | | | Function 4 - POLICE PROTECTION | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **1.    FULL-TIME EMPLOYEES** | | | | | | | | | | | | | | |
| | | **RACE/ETHNICITY** | | | | | | | | | | | | | | |
| | | **HISPANIC OR LATINO** | | **NOT-HISPANIC OR LATINO** | | | | | | | | | | | | |
| | | | | **MALE** | | | | | | **FEMALE** | | | | | | |
| **JOB CATEGORY** | **ANNUAL SALARY (in thousands 000)** | **MALE** | **FEMALE** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **TOTALS** |
| **ADMINISTRATIVE SUPPORT** | 41. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 42. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 43. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 44. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 2 | 0 | 0 | 0 | 0 | 5 |
| | 45. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| | 46. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 47. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 48. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **SKILLED CRAFT** | 49. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 50. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 51. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 52. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 53. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 54. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 55. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 56. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **SERVICE – MAINTENANCE** | 57. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 58. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 59. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 60. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 61. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 62. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 63. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 64. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **65. TOTAL FULL-TIME (LINES 1-64)** | | 0 | 0 | 63 | 15 | 0 | 0 | 46 | 0 | 7 | 5 | 0 | 0 | 9 | 0 | 145 |
| **2.    OTHER THAN FULL-TIME EMPLOYEES** | | | | | | | | | | | | | | | | |
| 66. OFFICIALS – ADMINISTRATORS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 67. PROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68. TECHNICIANS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 69. PROTECTIVE SERVICE | | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 4 |
| 70. PARAPROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 71. ADMINISTRATIVE SUPPORT | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72. SKILLED CRAFT | | 0 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| 73. SERVICE – MAINTENANCE | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **74. TOTAL OTHER THAN FULL-TIME (LINES 66 – 73)** | | 0 | 0 | 1 | 1 | 0 | 0 | 3 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 7 |

ROBESON 001120

**Control Number:** 37200790    **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | D. EMPLOYMENT DATA AS OF JUNE 30 | | Function 4 - POLICE PROTECTION | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RACE/ETHNICITY | | | | | | | | | | | | | |
| | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | |
| | | | MALE | | | | | | FEMALE | | | | | |
| | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| 3. NEW HIRES DURING EEO-4 FISCAL YEAR (JULY 1 – JUNE 30) | | | | | | | | | | | | | | |
| 75. OFFICIALS – ADMINISTRATORS | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 76. PROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77. TECHNICIANS | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 |
| 78. PROTECTIVE SERVICE | 0 | 0 | 10 | 4 | 0 | 0 | 5 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 21 |
| 79. PARAPROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 80. ADMINISTRATIVE SUPPORT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 3 |
| 81. SKILLED CRAFT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 82. SERVICE – MAINTENANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 83. TOTAL NEW HIRES (LINES 75 – 82) | 0 | 0 | 12 | 4 | 0 | 0 | 5 | 0 | 3 | 2 | 0 | 0 | 1 | 0 | 27 |

**E. DEPARTMENTS/AGENCIES INCLUDED IN THIS FUNCTION REPORT**

**F. DEPARTMENTS/AGENCIES NOT INCLUDED IN THIS FUNCTION REPORT**

**G. REMARKS ABOUT THIS FUNCTION REPORT**

nc0780000

**Control Number:** 37200790        **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | | D. EMPLOYMENT DATA AS OF JUNE 30 | | | | | | | Function 8 - HEALTH | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1. FULL-TIME EMPLOYEES | | | | | | | | | | | | | | |
| | | RACE/ETHNICITY | | | | | | | | | | | | | | |
| | | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | |
| | | | | MALE | | | | | | FEMALE | | | | | | |
| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| OFFICIALS - ADMINISTRATORS | 1. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 3. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 4. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 5. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 6. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 7. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 8. $70.0 PLUS | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| PROFESSIONALS | 9. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 10. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 11. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 12. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 13. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 7 | 0 | 11 |
| | 14. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 | 5 | 0 | 0 | 13 | 0 | 27 |
| | 15. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 0 | 10 | 0 | 20 |
| | 16. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 | 0 | 0 | 0 | 1 | 0 | 8 |
| TECHNICIANS | 17. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 18. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 19. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 20. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 21. $33.0 – 42.9 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 6 | 0 | 11 |
| | 22. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 2 | 1 | 0 | 0 | 1 | 0 | 6 |
| | 23. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 3 | 0 | 5 |
| | 24. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 4 |
| PROTECTIVE SERVICE | 25. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 26. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 27. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 28. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 29. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 30. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 31. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 32. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PARAPROFESSIONALS | 33. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 34. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 35. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 |
| | 36. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 37. $33.0 – 42.9 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 38. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 39. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 40. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ROBESON 001122

**Control Number:** 37200790   **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | | D. EMPLOYMENT DATA AS OF JUNE 30 | | | | | | | Function 8 - HEALTH | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **1. FULL-TIME EMPLOYEES** | | | | | | | | | | | | | |
| | | **RACE/ETHNICITY** | | | | | | | | | | | | | |
| | | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | |
| | | | | MALE | | | | | | FEMALE | | | | | | |
| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| ADMINISTRATIVE SUPPORT | 41. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 42. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 43. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 44. $25.0 – 32.9 | 0 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 3 | 0 | 0 | 2 | 0 | 20 |
| | 45. $33.0 – 42.9 | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 4 | 0 | 0 | 1 | 0 | 8 |
| | 46. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 47. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 4 |
| | 48. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| SKILLED CRAFT | 49. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 50. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 51. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 52. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 53. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 54. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 55. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 56. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SERVICE – MAINTENANCE | 57. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 58. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 59. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 60. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 61. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 62. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 63. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 64. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **65. TOTAL FULL-TIME (LINES 1-64)** | | 1 | 10 | 3 | 1 | 1 | 0 | 7 | 0 | 42 | 17 | 1 | 0 | 50 | 0 | 133 |
| | | **2. OTHER THAN FULL-TIME EMPLOYEES** | | | | | | | | | | | | | |
| 66. OFFICIALS – ADMINISTRATORS | | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 2 | 0 | 7 |
| 67. PROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68. TECHNICIANS | | 0 | 1 | 3 | 2 | 0 | 0 | 0 | 0 | 3 | 0 | 1 | 0 | 7 | 0 | 17 |
| 69. PROTECTIVE SERVICE | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 70. PARAPROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 71. ADMINISTRATIVE SUPPORT | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| 72. SKILLED CRAFT | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 73. SERVICE – MAINTENANCE | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **74. TOTAL OTHER THAN FULL-TIME (LINES 66 – 73)** | | 0 | 1 | 5 | 3 | 0 | 0 | 0 | 0 | 5 | 1 | 1 | 0 | 9 | 0 | 25 |

**Control Number:** 37200790  **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | D. EMPLOYMENT DATA AS OF JUNE 30 | | Function 8 - HEALTH | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RACE/ETHNICITY | | | | | | | | | | | | | | | |
| | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | | |
| | | | MALE | | | | | | FEMALE | | | | | | | |
| | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| 3. NEW HIRES DURING EEO-4 FISCAL YEAR (JULY 1 – JUNE 30) | | | | | | | | | | | | | | | |
| 75. OFFICIALS – ADMINISTRATORS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 76. PROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | 5 | 0 | 8 |
| 77. TECHNICIANS | 0 | 0 | 1 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 7 |
| 78. PROTECTIVE SERVICE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 79. PARAPROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 80. ADMINISTRATIVE SUPPORT | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 5 |
| 81. SKILLED CRAFT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 82. SERVICE – MAINTENANCE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 83. TOTAL NEW HIRES (LINES 75 – 82) | 0 | 4 | 1 | 0 | 0 | 0 | 2 | 0 | 2 | 1 | 0 | 0 | 10 | 0 | 20 |

**E. DEPARTMENTS/AGENCIES INCLUDED IN THIS FUNCTION REPORT**

**F. DEPARTMENTS/AGENCIES NOT INCLUDED IN THIS FUNCTION REPORT**

**G. REMARKS ABOUT THIS FUNCTION REPORT**

ROBESON 001124

**Control Number:** 37200790    **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | MALE | | | | | | FEMALE | | | | | | |
| | | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | |
| **OFFICIALS - ADMINISTRATORS** | 1. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 2. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 3. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 4. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 5. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 6. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 7. $55.0 – 69.9 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| | 8. $70.0 PLUS | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| **PROFESSIONALS** | 9. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 10. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 11. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 12. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 13. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 14. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 2 |
| | 15. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 16. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TECHNICIANS** | 17. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 18. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 19. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 20. $25.0 – 32.9 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 4 |
| | 21. $33.0 – 42.9 | 0 | 0 | 9 | 1 | 0 | 0 | 2 | 0 | 2 | 2 | 0 | 0 | 7 | 0 | 23 |
| | 22. $43.0 – 54.9 | 0 | 0 | 4 | 1 | 0 | 0 | 2 | 0 | 5 | 2 | 0 | 0 | 6 | 0 | 20 |
| | 23. $55.0 – 69.9 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 5 |
| | 24. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **PROTECTIVE SERVICE** | 25. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 26. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 27. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 28. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 29. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 30. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 31. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 32. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **PARAPROFESSIONALS** | 33. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 34. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 35. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 36. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 37. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 38. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 39. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 40. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

**D. EMPLOYMENT DATA AS OF JUNE 30** — Function 15 - OTHER

1. FULL-TIME EMPLOYEES
RACE/ETHNICITY

ROBESON 001125

**Control Number:** 37200790        **Reporting Year:** 2019

**Jurisdiction:** ROBESON COUNTY

| | | D. EMPLOYMENT DATA AS OF JUNE 30 | | Function 15 - OTHER | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **1.    FULL-TIME EMPLOYEES** | | | | | | | | | | | | | | |
| | | **RACE/ETHNICITY** | | | | | | | | | | | | | | |
| | | **HISPANIC OR LATINO** | | **NOT-HISPANIC OR LATINO** | | | | | | | | | | | | |
| | | | | **MALE** | | | | | | **FEMALE** | | | | | | |
| **JOB CATEGORY** | **ANNUAL SALARY (in thousands 000)** | **MALE** | **FEMALE** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **TOTALS** |
| ADMINISTRATIVE SUPPORT | 41. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 42. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 43. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 44. $25.0 – 32.9 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 5 | 5 | 0 | 0 | 6 | 0 | 18 |
| | 45. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 5 | 0 | 6 |
| | 46. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 3 | 0 | 5 |
| | 47. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| | 48. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SKILLED CRAFT | 49. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 50. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 51. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 52. $25.0 – 32.9 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 2 |
| | 53. $33.0 – 42.9 | 0 | 0 | 2 | 3 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| | 54. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| | 55. $55.0 – 69.9 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| | 56. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SERVICE – MAINTENANCE | 57. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 58. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 59. $20.0 – 24.9 | 0 | 1 | 0 | 2 | 0 | 0 | 2 | 0 | 0 | 1 | 2 | 0 | 3 | 0 | 11 |
| | 60. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 3 |
| | 61. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 62. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 63. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 64. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **65. TOTAL FULL-TIME (LINES 1-64)** | | 0 | 2 | 20 | 11 | 1 | 0 | 16 | 0 | 18 | 12 | 2 | 0 | 36 | 0 | 118 |
| | | **2.    OTHER THAN FULL-TIME EMPLOYEES** | | | | | | | | | | | | | | |
| 66. OFFICIALS – ADMINISTRATORS | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 2 |
| 67. PROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68. TECHNICIANS | | 1 | 0 | 9 | 2 | 0 | 0 | 11 | 0 | 4 | 2 | 1 | 0 | 8 | 0 | 38 |
| 69. PROTECTIVE SERVICE | | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 70. PARAPROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 71. ADMINISTRATIVE SUPPORT | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 72. SKILLED CRAFT | | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 |
| 73. SERVICE – MAINTENANCE | | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 6 |
| **74. TOTAL OTHER THAN FULL-TIME (LINES 66 – 73)** | | 1 | 0 | 10 | 3 | 0 | 0 | 16 | 0 | 5 | 2 | 1 | 0 | 12 | 0 | 50 |

ROBESON 001126

**Control Number:** 37200790          **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | D. EMPLOYMENT DATA AS OF JUNE 30 | | Function 15 - OTHER | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | RACE/ETHNICITY | | | | | | | | | | | | | |
| | HISPANIC OR LATINO | NOT-HISPANIC OR LATINO | | | | | | | | | | | | | |
| | | MALE | | | | | | FEMALE | | | | | | | |
| | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| 3.   NEW HIRES DURING EEO-4 FISCAL YEAR (JULY 1 – JUNE 30) | | | | | | | | | | | | | | | |
| 75. OFFICIALS – ADMINISTRATORS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 76. PROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77. TECHNICIANS | 0 | 0 | 4 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 8 |
| 78. PROTECTIVE SERVICE | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 79. PARAPROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 80. ADMINISTRATIVE SUPPORT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 3 | 0 | 0 | 3 | 0 | 8 |
| 81. SKILLED CRAFT | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 82. SERVICE – MAINTENANCE | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 5 |
| 83. TOTAL NEW HIRES (LINES 75 – 82) | 0 | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 3 | 4 | 2 | 0 | 6 | 0 | 23 |

E. DEPARTMENTS/AGENCIES INCLUDED IN THIS FUNCTION REPORT

F. DEPARTMENTS/AGENCIES NOT INCLUDED IN THIS FUNCTION REPORT

G. REMARKS ABOUT THIS FUNCTION REPORT

ROBESON 001127

**Control Number:** 37200790    **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | | D. EMPLOYMENT DATA AS OF JUNE 30 | | | | | | Function 16 - SUMMARY | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **1. FULL-TIME EMPLOYEES** | | | | | | | | | | | | | |
| | | **RACE/ETHNICITY** | | | | | | | | | | | | | |
| | | **HISPANIC OR LATINO** | | **NOT-HISPANIC OR LATINO** | | | | | | | | | | | |
| | | | | **MALE** | | | | | | **FEMALE** | | | | | |
| **JOB CATEGORY** | **ANNUAL SALARY (in thousands 000)** | **MALE** | **FEMALE** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **WHITE** | **BLACK OR AFRICAN AMERICAN** | **ASIAN** | **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** | **AMERICAN INDIAN OR ALASKA NATIVE** | **TWO OR MORE RACES** | **TOTALS** |
| OFFICIALS - ADMINISTRATORS | 1. $0.1 – 15.9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 2. $16.0 – 19.9 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 3. $20.0 – 24.9 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 6 |
| | 4. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 5. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 6. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 2 |
| | 7. $55.0 – 69.9 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 5 |
| | 8. $70.0 PLUS | 0 | 0 | 4 | 1 | 0 | 0 | 2 | 0 | 1 | 1 | 0 | 0 | 3 | 0 | 12 |
| PROFESSIONALS | 9. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 10. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 11. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 12. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 13. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 0 | 1 | 0 | 4 |
| | 14. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 15. $55.0 – 69.9 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 4 |
| | 16. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| TECHNICIANS | 17. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 18. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 19. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 20. $25.0 – 32.9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 21. $33.0 – 42.9 | 0 | 0 | 3 | 0 | 0 | 0 | 2 | 0 | 0 | 2 | 0 | 0 | 1 | 0 | 8 |
| | 22. $43.0 – 54.9 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 0 | 3 | 0 | 8 |
| | 23. $55.0 – 69.9 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| | 24. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| PROTECTIVE SERVICE | 25. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 26. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 27. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 28. $25.0 – 32.9 | 1 | 0 | 7 | 3 | 0 | 0 | 9 | 0 | 3 | 2 | 0 | 0 | 5 | 0 | 30 |
| | 29. $33.0 – 42.9 | 0 | 1 | 5 | 0 | 0 | 0 | 12 | 0 | 3 | 2 | 0 | 0 | 4 | 0 | 27 |
| | 30. $43.0 – 54.9 | 0 | 0 | 1 | 2 | 0 | 0 | 4 | 0 | 2 | 0 | 0 | 0 | 4 | 0 | 13 |
| | 31. $55.0 – 69.9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 |
| | 32. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| PARAPROFESSIONALS | 33. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 34. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 35. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 36. $25.0 – 32.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 37. $33.0 – 42.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 38. $43.0 – 54.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 39. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 40. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ROBESON 001128

**Control Number:** 37200790   **Reporting Year:** 2019

**Jurisdiction:** ROBESON COUNTY

| | | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | |
| | | | | MALE | | | | | | FEMALE | | | | | | |
| JOB CATEGORY | ANNUAL SALARY (in thousands 000) | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **D. EMPLOYMENT DATA AS OF JUNE 30** | | | | | | Function 16 - SUMMARY | | | | | | | | | | |
| **1. FULL-TIME EMPLOYEES** | | | | | | | | | | | | | | | | |
| ADMINISTRATIVE SUPPORT | 41. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 42. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 43. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 44. $25.0 – 32.9 | 0 | 0 | 2 | 1 | 0 | 0 | 3 | 0 | 7 | 5 | 0 | 0 | 5 | 0 | 23 |
| | 45. $33.0 – 42.9 | 0 | 0 | 1 | 2 | 0 | 0 | 1 | 0 | 5 | 4 | 1 | 0 | 10 | 0 | 24 |
| | 46. $43.0 – 54.9 | 0 | 1 | 3 | 1 | 0 | 0 | 2 | 0 | 4 | 3 | 1 | 0 | 6 | 0 | 21 |
| | 47. $55.0 – 69.9 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 2 | 0 | 5 |
| | 48. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SKILLED CRAFT | 49. $0.1 – 15.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 50. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 51. $20.0 – 24.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 52. $25.0 – 32.9 | 0 | 0 | 1 | 2 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| | 53. $33.0 – 42.9 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 |
| | 54. $43.0 – 54.9 | 0 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| | 55. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 56. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SERVICE – MAINTENANCE | 57. $0.1 – 15.9 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | 58. $16.0 – 19.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 59. $20.0 – 24.9 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 | 2 | 0 | 0 | 2 | 0 | 7 |
| | 60. $25.0 – 32.9 | 0 | 0 | 2 | 2 | 0 | 0 | 8 | 0 | 0 | 3 | 0 | 0 | 5 | 0 | 20 |
| | 61. $33.0 – 42.9 | 0 | 0 | 1 | 1 | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| | 62. $43.0 – 54.9 | 0 | 0 | 0 | 3 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 6 |
| | 63. $55.0 – 69.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 64. $70.0 PLUS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **65. TOTAL FULL-TIME (LINES 1-64)** | | 1 | 2 | 38 | 28 | 0 | 0 | 64 | 0 | 31 | 33 | 3 | 0 | 56 | 0 | 256 |
| **2. OTHER THAN FULL-TIME EMPLOYEES** | | | | | | | | | | | | | | | | |
| 66. OFFICIALS – ADMINISTRATORS | | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 6 |
| 67. PROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68. TECHNICIANS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |
| 69. PROTECTIVE SERVICE | | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 3 |
| 70. PARAPROFESSIONALS | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 71. ADMINISTRATIVE SUPPORT | | 0 | 0 | 2 | 3 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 7 |
| 72. SKILLED CRAFT | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| 73. SERVICE – MAINTENANCE | | 0 | 0 | 21 | 24 | 0 | 0 | 37 | 0 | 2 | 3 | 0 | 0 | 12 | 0 | 99 |
| **74. TOTAL OTHER THAN FULL-TIME (LINES 66 – 73)** | | 0 | 0 | 25 | 28 | 0 | 0 | 39 | 0 | 4 | 6 | 0 | 0 | 15 | 0 | 117 |

ROBESON 001129

**Control Number:** 37200790      **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| | D. EMPLOYMENT DATA AS OF JUNE 30 | | | | | | | | | | | | | | Function 16 - SUMMARY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RACE/ETHNICITY | | | | | | | | | | | | | | |
| | HISPANIC OR LATINO | | NOT-HISPANIC OR LATINO | | | | | | | | | | | | |
| | | | MALE | | | | | | FEMALE | | | | | | |
| | MALE | FEMALE | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | WHITE | BLACK OR AFRICAN AMERICAN | ASIAN | NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER | AMERICAN INDIAN OR ALASKA NATIVE | TWO OR MORE RACES | TOTALS |
| **3. NEW HIRES DURING EEO-4 FISCAL YEAR (JULY 1 – JUNE 30)** | | | | | | | | | | | | | | | |
| 75. OFFICIALS – ADMINISTRATORS | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 3 |
| 76. PROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 |
| 77. TECHNICIANS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |
| 78. PROTECTIVE SERVICE | 2 | 0 | 7 | 2 | 0 | 0 | 7 | 0 | 3 | 2 | 0 | 0 | 3 | 0 | 26 |
| 79. PARAPROFESSIONALS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 80. ADMINISTRATIVE SUPPORT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | 1 | 0 | 4 |
| 81. SKILLED CRAFT | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 82. SERVICE – MAINTENANCE | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| **83. TOTAL NEW HIRES (LINES 75 – 82)** | 2 | 0 | 7 | 3 | 0 | 0 | 10 | 0 | 5 | 5 | 1 | 0 | 5 | 0 | 38 |

**E. DEPARTMENTS/AGENCIES INCLUDED IN THIS FUNCTION REPORT**

**F. DEPARTMENTS/AGENCIES NOT INCLUDED IN THIS FUNCTION REPORT**

**G. REMARKS ABOUT THIS FUNCTION REPORT**

ROBESON 001130

**Control Number:** 37200790          **Reporting Year:** 2019
**Jurisdiction:** ROBESON COUNTY

| SUMMARY OF FUNCTIONS | | | |
|---|---|---|---|
| | 1 - FINANCIAL ADMINISTRATION/GENERAL CONTROL | | 9 - HOUSING |
| | 2 - STREETS AND HIGHWAYS | | 10 - COMMUNITY DEVELOPMENT |
| ✔ | 3 - PUBLIC WELFARE | | 11 - CORRECTIONS |
| ✔ | 4 - POLICE PROTECTION | | 12 - UTILITIES AND TRANSPORTATION |
| | 5 - FIRE PROTECTION | | 13 - SANITATION AND SEWAGE |
| | 6 - NATURAL RESOURCES/PARKS AND RECREATION | | 14 - EMPLOYMENT SECURITY |
| | 7 - HOSPITALS | ✔ | 15 - OTHER |
| ✔ | 8 - HEALTH | | X - SUMMARY FUNCTION SELECTED |

**COMMENTS**

**CERTIFICATION. I certify that the information given in this report is correct and true to the best of my knowledge and was reported in accordance with accompanying instructions. (Willfully false statements on this report are punishable by law, US Code, Title 18, Section 1001.)**

| NAME OF CERTIFYING OFFICIAL | TITLE |
|---|---|
| BRYAN  HOWARD | ASSISTANT HUMAN RESOURCES DIRECTOR |

| MAILING ADDRESS | TELEPHONE NUMBER |
|---|---|
| 701 N ELM ST | 910-671-4315 |
| LUMBERTON, NC 28358 | |

| DATE | EMAIL ADDRESS | TYPED NAME |
|---|---|---|
| 9/16/2019 | bryan.howard@co.robeson.nc.us | BRYAN  HOWARD |

ROBESON 001131

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:20-cv-1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF H.T. ("TOM")** |
| | ) | **TAYLOR, JR.** |
| ROBESON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

H.T. ("Tom") Taylor, Jr., under penalty of perjury, declares the following:

1.    I am over the age of 18 and competent to give witness testimony. The following statements are based on my personal knowledge.

2.    I am an elected member of the Robeson County Board of Commissioners, where I have represented District 7 since my election in 2000. I also own and operate a hardware store in Lumberton.

3.    I am acquainted with Anthony Dial, who is also known locally as "Rudy," and I am aware that he is the Plaintiff in this lawsuit. I know that he is claiming that the County engaged in employment discrimination when he was not selected as Assistant County Manager in 2019.

4.    When the retirement of the former County Manager, Ricky Harris, was announced and Kellie Blue was made the "manager in waiting," in late 2018, Rudy began to visit my hardware store regularly, although he had not been in the habit of visiting before. His wife accompanied him on some of these visits, and she also brought cupcakes.

5.      At least once or twice, Rudy brought up the Assistant County Manager position in discussions with me. He told me why he thought he thought he should get the position, and I listened to what he had to say. However, I told Rudy that the Board of Commissioners did not do the hiring for the position, that I couldn't get him the job, and that I wasn't not going to tell anyone who they should hire. I also mentioned that I thought there was someone else in the running who would be a natural fit for the position. I was referring to Shelton Hill because I was familiar with his work for the County. Rudy told me, "I know I ain't gonna get it, but I'm going to apply so down the road I can have this job as a reference."

6.      Rudy also sent a mutual friend, Reese Oxendine, to ask me to support him for the position. Reese told me that Rudy needed the position. I listened to Reese and told him the same as I told Rudy.

7.      At no time did I say that "we're not going to have two Indians and an African American running the County," or make any statement like that. I have been informed that Rudy testified that I made that remark to him, and that is simply false.  That remark would also not make any sense, because the County's top administrators had been composed of two Native Americans and an African American for the prior two years. Jason King, an African American, was hired as Assistant County Manager in 2013. The prior County Manager, Ricky Harris, was Native American, and his other Assistant County Manager was Kellie Blue, who is Native American. Before that, Charles Britt, who is Caucasian, was the Services Manager, whose job duties transitioned to the second Assistant County Manager position.

2

8.     I never told Kellie Blue anything about who she should hire for the position. It's her job, as County Manager, to pick the people who will be working directly for her, and I trust her to run a fair hiring process.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on September _6th_, 2022.

H. T. ("TOM") TAYLOR, JR.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:20-cv-1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF KELLIE BLUE** |
| | ) | |
| ROBESON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Kellie Blue, under penalty of perjury, declares the following:

1.    I am over the age of 18 and competent to give witness testimony.

2.    The following statements are based on my personal knowledge, or, where indicated, knowledge that I have been provided from records collected in the regular course of business of Robeson County.

3.    I am the County Manager for Robeson County by appointment of the Robeson County Board of Commissioners (the "Board"). On January 1, 2019, I began working in the position pursuant to a four-year contract that I entered with the Board.

4.    I am Native American.

5.    From 2017 until my appointment as County Manager, I served as Assistant County Manager to my predecessor, Ricky Harris, who is also Native American.

6.    Before I was hired for the position of Assistant County Manager, I was the County's Finance Officer.

1

7.     My predecessor as Assistant County Manager was Charles Britt, whose title was previously referred to as "Services Manager." Mr. Britt's responsibilities passed to me when I took the position of Assistant County Manager.

8.     Robeson County has had two Assistant County Managers for many years, who oversee different departments on behalf of the County Manager. Jason King, the other Assistant County Manager, was hired for the position in 2013 by Mr. Harris. He is African American.

9.     Mr. King's areas of responsibility include the County's water and sewer enterprises, building management, fleet management, veterans' services, and human resources.

10.     The other areas of responsibility, which I oversaw when I served as Assistant County Manager, include human services, the health department, transportation, insurance and risk management, emergency management services, communications, IT, claims, and planning and zoning.

11.     When I was promoted from Assistant County Manager to County Manager, my prior position became vacant. I wished to fill the position as soon as possible with someone who could "hit the ground running" and would not need extensive training, as I was very busy transitioning into the County Manager role at the time.

12.     The Human Resources Department posted the position on February 12, 2019. A copy of the job posting and its posting history as it appeared on the Robeson County Employment Website, robesoncountycareers.com, is attached as Exhibit A.

2

13.    A copy of the job description for the position of Assistant County Manager in 2019 is attached as Exhibit B.

14.    The Human Resources Department collected applications and reviewed them to screen any applicants who did not meet the basic job requirements.

15.    A true and accurate copy of the application submitted by Anthony Dial for the position of Assistant County Manager is attached as Exhibit C.

16.    A true and accurate copy of the application submitted by Shelton Hill for the position of Assistant County Manager is attached as Exhibit D.

17.    The eight remaining, qualified applicants, including Anthony Dial and Shelton Hill, were interviewed by me over the course of several days. I prepared a list of interview questions and asked all the candidates the questions on the list. I also prepared a budget exercise where the candidates were asked to propose solutions to reduce the total budget for Public Utilities by 5%.

18.    I interviewed Anthony Dial for the position of Assistant County Manager on or about Wednesday, May 1, 2019. My notes from the interview of Mr. Dial and his completed budget exercise are attached as Exhibit E.

19.    I interviewed Shelton Hill for the position of Assistant County Manager on or about Wednesday, May 1, 2019. My notes from the interview of Mr. Hill and his completed budget exercise are attached as Exhibit F.

20.    I am aware that Mr. Dial contends that the job description was changed between 2016, when I was recruited, and 2019, when Mr. Dial, Mr. Hill, and others were

3

considered for the position, to remove the requirement of a four-year college degree. This is not true.

21.    A copy of the 2016 job description is attached as Exhibit G. As shown by comparison to the 2019 job description in Exhibit B, the only changes included a re-wording of the education and experience description and the addition of requirements that were not present in 2016. The "General Statement of Job," Essential Job Functions," "Minimum Qualifications or Standards Required to Perform Essential Job Functions," and "Performance Indicators" remained the same, except for that "Assumes duties of County Manager in his/her absence" was changed from an "Additional" to an "Essential" job function.

22.    The "Minimum Training and Experience" section of the Assistant County Manager Job Description had the following wording in 2016:

> Graduation from a four-year college or university with a master's degree in public administration, business administration or a related field, with a master's degree in public administration preferred, and 5 to 7 years of increasingly responsible experience in the administration and management of local government programs and personnel; or any equivalent combination of training and experience which provides the required skills, knowledge and abilities.

23.    The "Minimum Training and Experience" section of the Assistant County Manager Job Description had the following wording in 2016:

> Bachelor's degree in Business/Public Administration, or a related field; considerable increasingly responsible experience in the administration and management of local government programs and personnel; or any equivalent combination of training and experience which provides the required skills, knowledge and abilities.

4

Municipal and County Administration Certificate from required within two years of appointment. Valid North Carolina Driver's License required upon hire and duration of employment.

Must take and successfully pass a pre-employment drug test, Motor Vehicle Records driver license check, as well as submit to random, reasonable suspicion, and post-accident drug and alcohol testing. A criminal background check must be completed by the County of Robeson for potential applicants.

### Special Requirements

The candidate is required to be a permanent resident of Robeson County within (1) One year of employment.

24.     Neither job description requires a college degree, as both provide that: "...or any equivalent combination of training and experience which provides the required skills, knowledge and abilities" could substitute for a degree and stated years of experience.

25.     When I considered the applicants, I felt that Mr. Hill had the most relevant experience for the position. He had worked in transportation, human services, human resources, risk management, safety, and inspections. This meant that Mr. Hill's prior experience gave him a proven track record in the areas that the person hired as Assistant County Manager would be expected to supervise. This included technical areas such as obtaining Medicaid/Medicare and other grant reimbursements, handling claims, and managing departments that provide important services to the County's residents.

26.     Prior to working for Robeson County, Mr. Hill worked for the Lumber River Council of Governments for two years and the Department of Transportation for a year, which gave him almost 20 years' experience in public sector work directly related to the role he was interviewing for. Before that, Mr. Hill had a decade and a half of management experience in one of the largest textile firms in Robeson County, supervising over a

5

hundred people. Since 1987, Mr. Hill had worked in relevant managerial roles in the public and private sector.

27.     While Mr. Dial gained management experience with the Department of Social Services, his experience working for the County was limited to RCDSS, which meant that he did not have direct experience with any of the areas of County operations that the person hired as Assistant County Manager would be expected to supervise. Likely, with extensive training, he could have gained the skills needed for the position, but he would not have been able to "hit the ground running" in the role.

28.     The issue of a four-year degree was not relevant to my considerations in selecting one of the eight finalists for the position. Mr. Hill had a proven track record and direct, hands-on experience in the work that the person hired as Assistant County Manager would need to be familiar with. During my tenure as Finance Officer and Assistant County Manager, I had personal experience working with Mr. Hill. I knew from my experience that he is a hard worker, conscientious, detail-oriented, punctual, a great writer, organized, has great rapport with colleagues, knows how to oversee federal and state funds, and works well with department heads, even on difficult issues.

29.     I do not consider or fulfill anyone's request for hiring a particular person to any position that I am responsible for filling, and I am clear about that. As a result, I am not bombarded with special requests to hire based on favors or favoritism, because people know that I won't listen.

6

30.    No one else's opinion of a candidate was a factor or even considered in my decision in hiring the Assistant County Manager. The Board of Commissioners did not have any say in my decision.

31.    I did not make my decision based on the race of any of the candidates. In fact, I am surprised that I, a Native American woman, am accused of discriminating against a Native American man based on his race.

32.    I did not have access to and did not consider any County employee's personnel files in making my decision.

33.    I considered the applicants' interviews, experience, skills, and knowledge in determining which candidate was the best qualified, based on objective consideration of their merits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August _30_ , 2022.

_____
KELLIE HUNT BLUE

7

# EXHIBIT A

DECLARATION OF KELLIE BLUE

*Job Posting for 2019 Assistant County Manager Position*

9/16/2019                          View Posting Summary - Assistant County Manager

## View Posting Summary - Assistant County Manager

| Posting Details | |
|---|---|
| Posting Number: | 0000491 |
| **POSITION INFORMATION** | |
| Job Title: | Assistant County Manager |
| Classificaiton Code: | 41201002 |
| Position Number: | 412004 |
| Employee Status: | FTE |
| FLSA: | Exempt |
| Annual Salary: | $77,007.12 - $119,957.84 |
| Pay Rate: | |
| Pay Grade Level: | 84 |
| Position Type: | Directors |
| Number of positions currently hiring for: | One |
| **DEPARTMENT INFORMATION:** | |
| Department: | Administration |
| Department Users with Access: | Stone, Norma |
| Contact(s): | Norma Stone |
| Contact Phone/Extension: | 910-671-3016 |
| Contact Email: | norma.stone@co.robeson.nc.us |
| Contact Fax: | 910-671-6224 |
| **POSTING TEXT** | |
| Example of Duties: | Under limited supervision, performs responsible administrative and managerial work overseeing assigned programs and assisting the County Manager in overall administration of County government. Work involves supervising activities of assigned county department managers as well as overseeing County construction projects, and safety and ADA administration. Performs various administrative duties and/or conducts studies at the request of the County Manager and assists County departments and assumes duties and responsibilities of the County Manager in his absence. Supervises department employees which involves such duties as instructing, assigning and reviewing work, maintaining standards, acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases. Exercises considerable initiative and independent judgment in all phases of work. Employee must also exercise considerable tact and courtesy in frequent contact with County employees, service vendors, and the general public. Reports to the County Manager. |
| Education and Experience: | Bachelor's degree in Business/Public Administration, or a related field; considerable increasingly responsible experience in the administration and management of local government programs and personnel; or any equivalent combination of training and experience which provides the required skills, knowledge and abilities.<br><br>Municipal and County Administration Certificate from required within two years of appointment.<br>Valid North Carolina Driver's License required upon hire and duration of employment. |

|  |  |
|---|---|
| | Must take and successfully pass a pre-employment drug test, Motor Vehicle Records driver license check, as well as submit to random, reasonable suspicion, and post-accident drug and alcohol testing. A criminal background check must be completed by the County of Robeson for potential applicants.<br><br>We are an equal opportunity employer<br>Robeson County Local Government considers applicants on the basis of qualifications and without regard to race, color, religion, sex, national origin, age, marital or veteran status, sexual orientation, disability or any other legally protected status.<br><br>Special Requirements<br><br>The candidate is required to be a permanent resident of Robeson County within (1) One year of employment. |
| Special Requirements: | IMPORTANT-PLEASE READ BELOW:<br>Documents required in the "Education and Experience" job posting description must be submitted before the closing date. If documents are not submitted to Human Resources before the closing date your application will be considered incomplete and the applicant will not be considered for the position. If you cannot submit the required documents online, you can mail them to human resources @ 701 North Elm St. Lumberton, NC 28358; you can also fax them to 910-671-6224; or bring documents to Human Resource Office for copies to be made before closing date; or email them to norma.stone@co.robeson.nc.us . For application process inquiries please contact Norma Stone in Human Resources at (910)671-3016. The application must be completely filled out and all requirements submitted in order to be considered for the position. |
| Work Hours: | |
| Posting Date: | 02-11-2019 |
| Closing Date: | Open Until Filled |
| Optional Applicant Documents: | Resume<br>Cover Letter<br>Other Document<br>Other Graduate Degrees<br>Certifications |
| Required Applicant Documents: | Bachelors Degree/Transcripts<br>Copy of Drivers License |
| Special Instructions to Applicants: | **Pre-employment Drug Testing Requirements:**<br>New Hires are required to pay the cost of a pre-employment drug screening at Occupational Health Works, and will be reimbursed by the County for a Negative Result. Reimbursement will be made after the completion of thirty days of employment with Robeson County. Also, the employee must sign a release of information allowing Occupational Health Works to release drug testing results to: Robeson County Human Resources, 701 North Elm Street, Lumberton, N.C. 28358, as a condition of reimbursement. |
| Pass Message: | Thank you for your interest in this position. The screening and selection process is currently underway and will continue until a successful candidate is chosen. Should review of your qualifications result in a decision to pursue your candidacy, you will be contacted. |
| Fail Message: | Thank you for your interest in this position. Based on your responses to the questions on the employment application, you do not meet the minimum qualifications for this position. Please do not let this discourage you from applying for other positions that interest you. |
| Application Types Accepted: | General Application |
| If you plan to advertise externally, indicate the advertising sources: (Departments will be responsible for the cost associated with these advertisements) | Job Lines<br>Robesonian<br>Employment Security Commission<br>Robeson Journal ($20-60) |

| | |
|---|---|
| Please list any other advertising sources: | |
| Quicklink for Posting: | robesoncountycareers.com/applicants/Central?quickFind=50993 |

## Posting Specific Questions

**Do you have a Bachelor's degree in Business/Public Administration, or a related field?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Do you have a valid North Carolina Driver's License ?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Do you have considerable increasingly responsible experience in the administration and management of local government programs and personnel?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Have you attached a copy of your Bachelor's degree or related education diploma?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Have you attached a copy of your valid NC Driver's License?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Will you be able to maintain a valid North Carolina Driver's license as required on the job description?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Do you have a Municipal and County Administration Certificate?**

**ANSWER**

No Response

Yes.

No.

This question is required.

**Will you be able to obtain the Municipal and County Administration Certificate within 2 years of hire?**

**ANSWER**

No Response
Yes.
No.
This question is required.

**Will you be able to be a permanent resident of Robeson County within (1) One year of employment?**

ANSWER
No Response
Yes.
No.
This question is required.

**Are you currently a resident of Robeson County?**

ANSWER
No Response
Yes.
No.
This question is required.

## Disqualifying / Points

Maximum Points Possible:  **0**

### Posting Specific Questions

**Do you have a valid North Carolina Driver's License ?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | DISQ | 0 |

0 %

**Do you have a Bachelor's degree in Business/Public Administration, or a related field?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | | 0 |

0 %

**Will you be able to be a permanent resident of Robeson County within (1) One year of employment?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | DISQ | 0 |

0 %

**Have you attached a copy of your valid NC Driver's License?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | | 0 |

0 %

**Have you attached a copy of your Bachelor's degree or related education diploma?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |

|  | Yes. | 0 |
|  | No. | 0 |

**0 %**

**Do you have considerable increasingly responsible experience in the administration and management of local government programs and personnel?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | | 0 |

**0 %**

**Will you be able to maintain a valid North Carolina Driver's license as required on the job description?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | DISQ | 0 |

**0 %**

**Do you have a Municipal and County Administration Certificate?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | | 0 |

**0 %**

**Will you be able to obtain the Municipal and County Administration Certificate within 2 years of hire?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | DISQ | 0 |

**0 %**

**Are you currently a resident of Robeson County?**

| ANSWER | DISQUALIFYING | SCORE |
|---|---|---|
| No Response | | 0 |
| Yes. | | 0 |
| No. | | 0 |

**0 %**

### Hiring Proposal

| Candidate Selected: | No Response |
|---|---|
| Recommended Salary: | |
| Start Date: | |

### Comments

| Department Mgr Comments: | |
|---|---|
| County Mgr Comments: | |
| Human Resources Comments: | |

### Notes / History

9/16/2019                                    View Posting Summary - Assistant County Manager

| 02-08-2019 2:35 PM | Norma Stone |
|---|---|
| *Saved Without Submitting* | |
| **02-08-2019 3:04 PM** | **Norma Stone** |
| *Approved for Later Posting* | |
| **02-08-2019 3:05 PM** | **Norma Stone** |
| *Save* | |
| **02-08-2019 3:10 PM** | **Norma Stone** |
| *Save* | |
| **02-11-2019 12:00 AM** | **System Generated** |
| *Posted* | |
| **07-02-2019 1:39 PM** | **Norma Stone** |
| *Closed/Removed from Web* | |
| **07-02-2019 1:42 PM** | **Norma Stone** |
| *Position Filled* | |

# EXHIBIT B

DECLARATION OF KELLIE BLUE

*2019 Job Description for Assistant County Manager*

**CODE: 41201002**

<div align="center">

**ROBESON COUNTY, NORTH CAROLINA**
**JOB DESCRIPTION**

**JOB TITLE: ASSISTANT COUNTY MANAGER**
**ADMINISTRATION DEPARTMENT**

**<u>GENERAL STATEMENT OF JOB</u>**

</div>

Under limited supervision, performs responsible administrative and managerial work overseeing assigned programs and assisting the County Manager in overall administration of County government. Work involves supervising activities of assigned county department managers as well as overseeing County construction projects, and safety and ADA administration. Performs various administrative duties and/or conducts studies at the request of the County Manager and assists County departments and assumes duties and responsibilities of the County Manager in his absence. Supervises department employees which involves such duties as instructing, assigning and reviewing work, maintaining standards, acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases. Exercises considerable initiative and independent judgment in all phases of work. Employee must also exercise considerable tact and courtesy in frequent contact with County employees, service vendors, and the general public. Reports to the County Manager.

<div align="center">

**<u>SPECIFIC DUTIES AND RESPONSIBILITIES</u>**

</div>

**ESSENTIAL JOB FUNCTIONS**

Assists the County Manager in development of policies and procedures pertaining to personnel, capital improvement, fiscal control, construction projects and public relations issues; serves as member of County Manager's management team, participating in meetings and discussions to formulate and develop planning on various issues pertaining to operations of County government.

Oversees County capital improvement projects, ensuring adherence to specified standards; confers with department heads, supervisory boards, County Commissioners, court officials, architects, contractors, etc., to resolve disputes, as necessary.

Oversees, coordinates and administers various personnel programs in accordance with local, state and federal ordinances, statutes and laws; develops amendments to local personnel ordinance, as necessary, and presents recommendations to County Commissioners.

Represents the County in official capacities on various regional and County boards and committees.

Assumes duties of County Manager in his/her absence, ensuring adherence to established policies, procedures and standards.

Confers with department heads regarding intended discipline of management level and professional level employees, advising as necessary; represents interests of County in disputes with employees before oversight agencies such as Equal Employment Opportunity Commission, Employment Security Commission, etc.; investigates complaints made by employees, and addresses accordingly.

©Archer Company 2004
Revised 2/2014                                   1

### ASSISTANT COUNTY MANAGER

Serves as liaison between County and the general public, investigating and addressing disputes and inquiries, as necessary; advises County Manager on matters pertaining to the image of the County and resolves problems on behalf of the County Manager and the Board of Commissioners.

Monitors and reviews activities of department heads, ensuring adherence to established policies, procedures and standards; assists and advises subordinates, as necessary, resolving problems as non-routine situations arise.

Supervises department employees which involves such duties as instructing, assigning and reviewing work, maintaining standards, acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases.

Oversees assigned programs including County vehicle, property and liability insurance, construction projects, safety, and ADA compliance.

Assists commissioners, department heads, other personnel and/or the general public, as necessary.

Administers liability and property insurance programs; prepares accident and damage reports; submits claims to insurance carrier.

Develops policies, procedures, and programs to meet safety standards set by state and federal laws, codes, and regulations including United States and state occupational safety and health administration regulations.

Administers County vehicle program; coordinates maintenance and repair of vehicles; maintains accident report files and other incidents to insurance carriers; and coordinates payments of reimbursements or settlements liability claimants through insurance carriers.

Maintains files of records pertaining to insurance programs; researches options to obtain insurance at rates most favorable to County; and collects and submits data for insurance purchase or renewal.

Coordinates annual surplus property sales, overseeing identification of surplus property, scheduling and location sales; obtaining manpower to conduct sales, etc.

Performs administrative duties and/or compiles data for special projects or reports as assigned.

Receives and/or reviews agenda items, County construction projects to monitor and inspect to insure accuracy, presentations from vendors to make recommendations, safety and accident reports to report to insurance company, and invoices to approve for payment.

Prepares and/or generates accident reports to submit to insurance company, requests for checks, list to coordinate maintenance and repair of vehicles, and surplus property sales.

Refers to budget, software from predecessor on existing projects, purchasing policy, Internet, and account balances.

Interacts and communicates with County Manager, Board of Commissioners, department managers, executive from outside corporations, and general public.

©Archer Company 2004
Revised 2/2014                                    2

**ASSISTANT COUNTY MANAGER**

**ADDITIONAL JOB FUNCTIONS**

Performs other related work as required.

**MINIMUM TRAINING AND EXPERIENCE**

Bachelor's degree in Business/Public Administration, or a related field; considerable increasingly responsible experience in the administration and management of local government programs and personnel; or any equivalent combination of training and experience which provides the required skills, knowledge and abilities.

Municipal and County Administration Certificate from required within two years of appointment.
Valid North Carolina Driver's License required upon hire and duration of employment.

Must take and successfully pass a pre-employment drug test, Motor Vehicle Records driver license check, as well as submit to random, reasonable suspicion, and post-accident drug and alcohol testing. A criminal background check must be completed by the County of Robeson for potential applicants.

**Special Requirements**

The candidate is required to be a permanent resident of Robeson County within (1) One year of employment.

**MINIMUM QUALIFICATIONS OR STANDARDS REQUIRED
TO PERFORM ESSENTIAL JOB FUNCTIONS**

**Physical Requirements:**  Must be physically able to operate a variety of machinery and equipment including computers, typewriters, calculators, copiers, facsimile machines, etc. Must be physically able to a negligible amount of force frequently or constantly to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.

**Data Conception:**  Requires the ability to compare and or judge the readily observable functional, structural, or compositional characteristics (whether similar to or divergent from obvious standards) of data, people, or things.

**Interpersonal Communication:**  Requires the ability of speaking and/or signaling people to convey or exchange information. Includes giving instructions, assignments and/or directions to subordinates and assistants.

**Language Ability:** Requires the ability to read various reports, records, forms, budgets, invoices, legal documents, contracts, insurance statements, etc. Requires the ability to prepare reports, correspondence, studies, advertisements, etc., utilizing proper formats and conforming to all rules of grammar, diction and style. Requires the ability to speak before groups of people with poise, voice control and confidence.

**Intelligence:** Requires the ability to apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions; to interpret an extensive variety of technical instructions in mathematical or diagrammatic form; deal with several abstract and concrete variables.

©Archer Company 2004
Revised 2/2014                                      3

**ASSISTANT COUNTY MANAGER**

**Verbal Aptitude:** Requires the ability to record and deliver information and to follow and give verbal and written instructions. Must be able to communicate effectively and efficiently in a variety of technical or professional languages including accounting, personnel and governmental terminology.

**Numerical Aptitude:** Requires the ability to utilize mathematical formulas; adding and subtracting totals; multiplying and dividing; determining percentages and decimals.

**Form/Spatial Aptitude:** Requires the ability to inspect items for proper length, width and shape, visually with office equipment and recording devices.

**Motor Coordination:** Requires the ability to coordinate hands and eyes in using automated office equipment to operate motor vehicles.

**Manual Dexterity:** Requires the ability to handle a variety of items, office equipment, control knobs, switches, etc. Must have minimal levels of eye/hand/foot coordination.

**Color Discrimination and Visual Acuity:** Requires the ability to differentiate colors and shades of color; requires the visual acuity to determine depth perception, night vision, peripheral vision, inspection for small parts; preparing and analyzing written or computer data, etc.

**Interpersonal Temperament:** Requires the ability to deal with people beyond receiving instructions. The worker needs to relate to people in situations involving more than receiving instructions. Must be adaptable to performing under high levels of stress when confronted with an emergency.

**Physical Communication:** Requires the ability to talk and/or hear (talking - expressing or exchanging ideas by means of spoken words). (Hearing - perceiving nature of sounds by ear.)

## PERFORMANCE INDICATORS

**Knowledge of Job:** Has thorough knowledge of the methods, procedures, and policies of the Department of Administration as they pertain to the performance of duties of the Assistant County Manager. Has thorough knowledge of the principles and practices of business or public administration as applied to County government. Has thorough knowledge of the principles, practices and procedures of public administration. Has thorough knowledge of federal, state and local laws, rules and regulations governing County administration. Has thorough knowledge of the policies, procedures, methods and practices of financial budgeting and analysis. Has thorough knowledge of local government organization and functions. Has considerable knowledge of modern practices and principles of accounting as applied to local government. Has considerable knowledge of personnel and management resources and planning, position management, staff development and training, policy development and administration, employee relations, and related management functions and services. Has considerable knowledge of the current literature, trends and developments in the field of public administration. Has considerable knowledge of the principles of supervision, organization and administration. Is able to use common office machines, including popular computer-drive word processing, spreadsheet and file maintenance programs. Is able to make administrative decisions independently and in accordance with established laws, regulations and County policies and procedures. Is able to work independently and to apply knowledge to a variety of situations. Is able to analyze complex organizational and administrative problems and to formulate, develop and present recommendations for their solution. Is able to supervise the work of assigned employees and to coordinate programs and activities. Is able to effectively express ideas orally and in writing. Is able to make oral

©Archer Company 2004
Revised 2/2014                    4

## ASSISTANT COUNTY MANAGER

presentations before large groups of people. Is able to exercise tact and discretion in the handling of confidential personnel records. Is able to establish and maintain effective working relationships as necessitated by work assignments.

**Quality of Work:** Maintains high standards of accuracy in exercising duties and responsibilities. Exercises immediate remedial action to correct any quality deficiencies that occur in areas of responsibility. Maintains high quality communication and interacts within department and division, and with co-workers and the general public.

**Quantity of Work:** Maintains effective and efficient output of all duties and responsibilities as described under "Specific Duties and Responsibilities".

**Dependability:** Assumes responsibility for doing assigned work and meeting deadlines. Completes assigned work on or before deadlines in accordance with directives, County policy, standards and pre-scribed procedures. Accepts accountability for meeting assigned responsibilities in the technical, human and conceptual areas.

**Attendance:** Attends work regularly and adheres to County policies and procedures regarding absences and tardiness. Provides adequate notice to higher management with respect to vacation time and time-off requests.

**Initiative and Enthusiasm:** Maintains an enthusiastic, self-reliant and self-starting approach to meet job responsibilities and accountabilities. Strives to anticipate work to be done and initiates proper and acceptable direction for completion of work with a minimum of supervision and instruction.

**Judgment:** Exercises analytical judgment in areas of responsibility. Identifies problems or situations as they occur and specifies decision objectives. Identifies or assists in identifying alternative solutions to problems or situations. Implements decisions in accordance with prescribed and effective policies and procedures and with a minimum of errors. Seeks expert or experienced advice and researches problems, situations and alternatives before exercising judgment.

**Cooperation:** Accepts supervisory instruction and direction and strives to meet the goals and objectives of same. Questions such instruction and direction when clarification of results or consequences are justified, i.e., poor communications, variance with County policy or procedures, etc. Offers suggestions and recommendations to encourage and improve cooperation between all staff persons within the department.

**Relationships with Others:** Shares knowledge with supervisors and staff for mutual benefit. Contributes to maintaining high morale among employees. Develops and maintains cooperative and courteous relationships inter- and intra-departmentally, and with external entities with whom the position interacts. Tactfully and effectively handles requests, suggestions and complaints in order to establish and maintain good will. Emphasizes the importance of maintaining a positive image.

**Coordination of Work:** Plans and organizes daily work routine. Establishes priorities for the completion of work in accordance with sound time management methodology. Avoids duplication of effort. Estimates expected time of completion of elements of work and establishes a personal schedule accordingly. Attends meetings, planning sessions and discussions on time. Implements work activity in accordance with priorities and estimated schedules. Maintains a calendar for meetings, deadlines and events.

**Safety and Housekeeping:** Adheres to all safety and housekeeping standards established by the County

©Archer Company 2004
Revised 2/2014                                                    5

**ASSISTANT COUNTY MANAGER**

and various regulatory agencies. Sees that the standards are not violated. Maintains a clean and orderly workplace.

**Planning:** Plans, coordinates and uses information effectively to enhance activities and production. Knows and understands expectations regarding the activities and works to ensure such expectations are met. Designs and formulates ways, means and timing to achieve established goals and objectives. Effectively and efficiently organizes, arranges and allocates manpower, financial and other designated resources to achieve such goals and objectives.

©Archer Company 2004
Revised 2/2014                              6

## ASSISTANT COUNTY MANAGER

**Organizing:** Organizes work and that of subordinate staff well. Ensures that staff members know what results are expected of them and that they are regularly and appropriately informed of all County and department matters affecting them and/or of concern to them.

**Staffing:** Works with other department officials and management to select and recommend employment of personnel for the division who are qualified both technically and philosophically to meet the needs of the division and the department. Personally directs the development and training of division personnel in order to ensure that they are properly inducted, oriented and trained.

**Leading:** Provides a work environment, which encourages clear and open communications. Has a clear and comprehensive understanding of the principles of effective leadership and how such principles are to be applied. Provides adequate feedback to staff so that they know whether their performance levels are satisfactory. Commends and rewards employees for outstanding performance yet does not hesitate to take disciplinary action when necessary. Exercises enthusiasm in influencing and guiding others toward the achievement of department goals and objectives.

**Controlling:** Provides a work environment, which is orderly and controlled. Coordinates, audits and controls manpower and financial resources efficiently and effectively. Coordinates, audits and controls the utilization of materials and equipment efficiently and effectively. Has a clear and comprehensive understanding of County standards, methods and procedures.

**Delegating:** Assigns additional duties to staff as necessary and/or appropriate in order to meet division goals, enhance staff abilities, build confidence on the job and assist staff members in personal growth. Has confidence in staff to meet new or additional expectations.

**Decision Making:** Uses discretion and judgment in developing and implementing courses of action affecting the division. When a particular policy, procedure or strategy does not appear to be achieving the desired result, moves decisively and definitively to develop and implement alternatives.

**Creativity:** Regularly seeks new and improved methodologies, policies and procedures for enhancing the effectiveness of the division and the department. Employs imagination and creativity in the application of duties and responsibilities. Is not adverse to change.

**Human Relations:** Strives to develop and maintain good rapport with all staff members. Listens to and considers suggestions and complaints and responds appropriately.  Maintains the respect and loyalty of staff.

**Policy Implementation:** Has a clear and comprehensive understanding of County policies regarding the division, department and County function. Adheres to those policies in the discharge of duties and responsibilities and ensures the same from subordinate staff.

**Policy Formulation:** Keeps abreast of changes in operating philosophies and policies of the County and continually reviews division policies in order to ensure that any changes in County philosophy or practice are appropriately incorporated. Also understands the relationship between operating policies and practices and department morale and performance. Works to see that established policies enhance same.

**DISCLAIMER:  This job description is not an employment agreement or contract.  Management has the exclusive right to alter this job description at any time without notice.**

©Archer Company 2004
Revised 2/2014                                    7

# EXHIBIT G

DECLARATION OF KELLIE BLUE

*2016 Job Description for Assistant County Manager*

2016

**CODE: 41201002**

**ROBESON COUNTY, NORTH CAROLINA**
**JOB DESCRIPTION**

**JOB TITLE: ASSISTANT COUNTY MANAGER**
**DEPARTMENT OF ADMINISTRATION**

**GENERAL STATEMENT OF JOB**

Under limited supervision, performs responsible administrative and managerial work overseeing assigned programs and assisting the County Manager in overall administration of county government. Work involves supervising activities of assigned county department managers as well as overseeing county construction projects, and safety and ADA administration. Performs various administrative duties and/or conducts studies at the request of the county manager; and assists county departments and assumes duties and responsibilities of the County Manager in his absence. Supervises department employees which involves such duties as instructing, assigning and reviewing work, maintaining standards, acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases. Exercises considerable initiative and independent judgment in all phases of work. Employee must also exercise considerable tact and courtesy in frequent contact with County employees, service vendors, and the general public. Reports to the County Manager.

**SPECIFIC DUTIES AND RESPONSIBILITIES**

**ESSENTIAL JOB FUNCTIONS**

Assists the County Manager in development of policies and procedures pertaining to personnel, capital improvement, fiscal control, construction projects and public relations issues; serves as member of County Manager's management team, participating in meetings and discussions to formulate and develop planning on various issues pertaining to operations of County government.

Oversees County capital improvement projects, ensuring adherence to specified standards; confers with department heads, supervisory boards, County Commissioners, court officials, architects, contractors, etc., to resolve disputes, as necessary.

Oversees, coordinates and administers various personnel programs in accordance with local, state and federal ordinances, statutes and laws; develops amendments to local personnel ordinance, as necessary, and presents recommendations to County Commissioners.

Represents the County in official capacities on various regional and County boards and committees.

Confers with department heads regarding intended discipline of management level and professional level employees, advising as necessary; represents interests of County in disputes with employees before oversight agencies such as Equal Employment Opportunity Commission, Employment Security Commission, etc.; investigates complaints made by employees, and addresses accordingly.

Archer 2004                                  1

## ASSISTANT COUNTY MANAGER

Serves as liaison between County and the general public, investigating and addressing disputes and inquiries, as necessary; advises County Manager on matters pertaining to the image of the County and resolves problems on behalf of the County Manager and the Board of Commissioners.

Monitors and reviews activities of department heads, ensuring adherence to established policies, procedures and standards; assists and advises subordinates, as necessary, resolving problems as non-routine situations arise.

Supervises department employees which involves such duties as instructing, assigning and reviewing work, maintaining standards, acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases.

Oversees assigned programs including county vehicle, property and liability insurance, construction projects, safety, and ADA compliance.

Assists commissioners, department heads, other personnel and/or the general public, as necessary.

Administers liability and property insurance programs; prepares accident and damage reports; submits claims to insurance carrier.

Develops policies, procedures, and programs to meet safety standards set by state and federal laws, codes, and regulations including United States and state occupational safety and health administration regulations.

Administers county vehicle program; coordinates maintenance and repair of vehicles; maintains accident report files and other incidents to insurance carriers; and coordinates payments of reimbursements or settlements liability claimants through insurance carriers.

Maintains files of records pertaining to insurance programs; researches options to obtain insurance at rates most favorable to county; and collects and submits data for insurance purchase or renewal.

Coordinates annual surplus property sales, overseeing identification of surplus property, scheduling and location sales; obtaining manpower to conduct sales, etc.

Administers county's compliance with ADA.

Performs administrative duties and/or compiles data for special projects or reports as assigned.

Receives and/or reviews agenda items, county construction projects to monitor and inspect to insure accuracy, presentations from vendors to make recommendations, safety and accident reports to report to insurance company, and invoices to approve for payment.
Prepares and/or generates preparation of accident reports to report to insurance company, requests for checks, list to coordinate maintenance and repair of vehicles, and surplus property sales.

Refers to budget, software from predecessor on existing projects, purchasing policy, Internet, and account balances.

Operates vehicle and office equipment such as telephone, calculator, etc.

Archer 2004                                       2

**ASSISTANT COUNTY MANAGER**

Utilizes general computer and office supplies.

Interacts and communicates with County Manager, Board of Commissioners, department managers, executive from outside corporations, and general public.

<u>ADDITIONAL JOB FUNCTIONS</u>

Assumes duties of County Manager in his/her absence, ensuring adherence to established policies, procedures and standards.

Performs other related work as required.

## <u>MINIMUM TRAINING AND EXPERIENCE</u>

Graduation from a four-year college or university with a master's degree in public administration, business administration or a related field, with a master's degree in public administration preferred, and 5 to 7 years of increasingly responsible experience in the administration and management of local government programs and personnel; or any equivalent combination of training and experience which provides the required skills, knowledge and abilities.

## <u>MINIMUM QUALIFICATIONS OR STANDARDS REQUIRED</u><br><u>TO PERFORM ESSENTIAL JOB FUNCTIONS</u>

<u>**Physical Requirements:**</u>  Must be physically able to operate a variety of machinery and equipment including computers, typewriters, calculators, copiers, facsimile machines, etc.  Must be physically able to a negligible amount of force frequently or constantly to lift, carry, push, pull, or otherwise move objects.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.

<u>**Data Conception:**</u>  Requires the ability to compare and or judge the readily observable functional, structural, or compositional characteristics (whether similar to or divergent from obvious standards) of data, people, or things.

<u>**Interpersonal Communication:**</u>  Requires the ability of speaking and/or signaling people to convey or exchange information. Includes giving instructions, assignments and/or directions to subordinates and assistants.

<u>**Language Ability:**</u> Requires the ability to read various reports, records, forms, budgets, invoices, legal documents, contracts, insurance statements, etc. Requires the ability to prepare reports, correspondence, studies, advertisements, etc., utilizing proper formats and conforming to all rules of grammar, diction and style. Requires the ability to speak before groups of people with poise, voice control and confidence.

<u>**Intelligence:**</u>  Requires the ability to apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions; to interpret an extensive variety of technical instructions in mathematical or diagrammatic form; deal with several abstract and concrete variables.

Archer 2004                                    3

## ASSISTANT COUNTY MANAGER

**Verbal Aptitude:** Requires the ability to record and deliver information and to follow and give verbal and written instructions. Must be able to communicate effectively and efficiently in a variety of technical or professional languages including accounting, personnel and governmental terminology.

**Numerical Aptitude:** Requires the ability to utilize mathematical formulas; adding and subtracting totals; multiplying and dividing; determining percentages and decimals.

**Form/Spatial Aptitude:** Requires the ability to inspect items for proper length, width and shape, visually with office equipment and recording devices.

**Motor Coordination:** Requires the ability to coordinate hands and eyes in using automated office equipment to operate motor vehicles.

**Manual Dexterity:** Requires the ability to handle a variety of items, office equipment, control knobs, switches, etc. Must have minimal levels of eye/hand/foot coordination.

**Color Discrimination and Visual Acuity:** Requires the ability to differentiate colors and shades of color; requires the visual acuity to determine depth perception, night vision, peripheral vision, inspection for small parts; preparing and analyzing written or computer data, etc.

**Interpersonal Temperament:** Requires the ability to deal with people beyond receiving instructions. The worker needs to relate to people in situations involving more than receiving instructions. Must be adaptable to performing under high levels of stress when confronted with an emergency.

**Physical Communication:** Requires the ability to talk and/or hear (talking - expressing or exchanging ideas by means of spoken words). (Hearing - perceiving nature of sounds by ear.)

## PERFORMANCE INDICATORS

**Knowledge of Job:** Has thorough knowledge of the methods, procedures, and policies of the Department of Administration as they pertain to the performance of duties of the Assistant County Manager. Has thorough knowledge of the principles and practices of business or public administration as applied to county government. Has thorough knowledge of the principles, practices and procedures of public administration. Has thorough knowledge of federal, state and local laws, rules and regulations governing County administration. Has thorough knowledge of the policies, procedures, methods and practices of financial budgeting and analysis. Has thorough knowledge of local government organization and functions. Has considerable knowledge of modern practices and principles of accounting as applied to local government. Has considerable knowledge of personnel and management resources and planning, position management, staff development and training, policy development and administration, employee relations, and related management functions and services. Has considerable knowledge of the current literature, trends and developments in the field of public administration. Has considerable knowledge of the principles of supervision, organization and administration. Is able to use common office machines, including popular computer-drive word processing, spreadsheet and file maintenance programs. Is able to make administrative decisions independently and in accordance with established laws, regulations and County policies and procedures. Is able to work independently and to apply knowledge to a variety of situations. Is able to analyze complex organizational and administrative problems and to formulate, develop and present recommendations for their solution. Is able to supervise the work of assigned employees and to coordinate programs and activities. Is able to effectively express ideas orally and in writing. Is able to

Archer 2004                                              4

**ASSISTANT COUNTY MANAGER**

make oral presentations before large groups of people. Is able to exercise tact and discretion in the handling of confidential personnel records. Is able to establish and maintain effective working relationships as necessitated by work assignments.

**Quality of Work:** Maintains high standards of accuracy in exercising duties and responsibilities. Exercises immediate remedial action to correct any quality deficiencies that occur in areas of responsibility. Maintains high quality communication and interacts within department and division, and with co-workers and the general public.

**Quantity of Work:** Maintains effective and efficient output of all duties and responsibilities as described under "Specific Duties and Responsibilities."

**Dependability:** Assumes responsibility for doing assigned work and meeting deadlines. Completes assigned work on or before deadlines in accordance with directives, County policy, standards and prescribed procedures. Accepts accountability for meeting assigned responsibilities in the technical, human and conceptual areas.

**Attendance:** Attends work regularly and adheres to County policies and procedures regarding absences and tardiness. Provides adequate notice to higher management with respect to vacation time and time-off requests.

**Initiative and Enthusiasm:** Maintains an enthusiastic, self-reliant and self-starting approach to meet job responsibilities and accountabilities. Strives to anticipate work to be done and initiates proper and acceptable direction for completion of work with a minimum of supervision and instruction.

**Judgment** Exercises analytical judgment in areas of responsibility. Identifies problems or situations as they occur and specifies decision objectives. Identifies or assists in identifying alternative solutions to problems or situations. Implements decisions in accordance with prescribed and effective policies and procedures and with a minimum of errors. Seeks expert or experienced advice and researches problems, situations and alternatives before exercising judgment.

**Cooperation:** Accepts supervisory instruction and direction and strives to meet the goals and objectives of same. Questions such instruction and direction when clarification of results or consequences are justified, i.e., poor communications, variance with County policy or procedures, etc. Offers suggestions and recommendations to encourage and improve cooperation between all staff persons within the department.

**Relationships with Others:** Shares knowledge with supervisors and staff for mutual benefit. Contributes to maintaining high morale among employees. Develops and maintains cooperative and courteous relationships inter- and intra-departmentally, and with external entities with whom the position interacts. Tactfully and effectively handles requests, suggestions and complaints in order to establish and maintain good will. Emphasizes the importance of maintaining a positive image.

**Coordination of Work:** Plans and organizes daily work routine. Establishes priorities for the completion of work in accordance with sound time-management methodology. Avoids duplication of effort. Estimates expected time of completion of elements of work and establishes a personal schedule accordingly. Attends meetings, planning sessions and discussions on time. Implements work activity in accordance with priorities and estimated schedules. Maintains a calendar for meetings, deadlines and events.

Archer 2004                                    5

**ASSISTANT COUNTY MANAGER**

**Safety and Housekeeping:** Adheres to all safety and housekeeping standards established by the County and various regulatory agencies. Sees that the standards are not violated. Maintains a clean and orderly workplace.

**Planning:** Plans, coordinates and uses information effectively to enhance activities and production. Knows and understands expectations regarding the activities and works to ensure such expectations are met. Designs and formulates ways, means and timing to achieve established goals and objectives. Effectively and efficiently organizes, arranges and allocates manpower, financial and other designated resources to achieve such goals and objectives.

**Organizing:** Organizes work and that of subordinate staff well. Ensures that staff members know what results are expected of them and that they are regularly and appropriately informed of all County and department matters affecting them and/or of concern to them.

**Staffing:** Works with other department officials and management to select and recommend employment of personnel for the division who are qualified both technically and philosophically to meet the needs of the division and the department. Personally directs the development and training of division personnel in order to ensure that they are properly inducted, oriented and trained.

**Leading:** Provides a work environment, which encourages clear and open communications. Has a clear and comprehensive understanding of the principles of effective leadership and how such principles are to be applied. Provides adequate feedback to staff so that they know whether their performance levels are satisfactory. Commends and rewards employees for outstanding performance yet does not hesitate to take disciplinary action when necessary. Exercises enthusiasm in influencing and guiding others toward the achievement of department goals and objectives.

**Controlling:** Provides a work environment, which is orderly and controlled. Coordinates, audits and controls manpower and financial resources efficiently and effectively. Coordinates, audits and controls the utilization of materials and equipment efficiently and effectively. Has a clear and comprehensive understanding of County standards, methods and procedures.

**Delegating:** Assigns additional duties to staff as necessary and/or appropriate in order to meet division goals, enhance staff abilities, build confidence on the job and assist staff members in personal growth. Has confidence in staff to meet new or additional expectations.

**Decision Making:** Uses discretion and judgment in developing and implementing courses of action affecting the division. When a particular policy, procedure or strategy does not appear to be achieving the desired result, moves decisively and definitively to develop and implement alternatives.

**Creativity:** Regularly seeks new and improved methodologies, policies and procedures for enhancing the effectiveness of the division and the department. Employs imagination and creativity in the application of duties and responsibilities. Is not adverse to change.

**Human Relations:** Strives to develop and maintain good rapport with all staff members. Listens to and considers suggestions and complaints and responds appropriately. Maintains the respect and loyalty of staff.

Archer 2004                                     6

**ASSISTANT COUNTY MANAGER**

**Policy Implementation:** Has a clear and comprehensive understanding of County policies regarding the division, department and County function. Adheres to those policies in the discharge of duties and responsibilities and ensures the same from subordinate staff.

**Policy Formulation:** Keeps abreast of changes in operating philosophies and policies of the County and continually reviews division policies in order to ensure that any changes in County philosophy or practice are appropriately incorporated. Also understands the relationship between operating policies and practices and department morale and performance. Works to see that established policies enhance same.

**DISCLAIMER:**    This job description is not an employment agreement or contract. Management has the exclusive right to alter this job description at any time without notice.

Archer 2004                              7

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No.:1:20cv1135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Plaintiff's Response in Opposition to |
| | ) | Defendant's Motion for Summary Judgment |
| | ) | |
| ROBESON COUNTY | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Plaintiff, by and through counsel, and files this Response in

Opposition to Defendant's Motion for Summary Judgment. Material issues of fact exist

with respect to the discriminatory motivation in the failure to promote Plaintiff to

Assistant County Manager in violation of Title VII of the Civil Rights Act of 1964, as

amended (42 U.S.C. §2000e) on the basis of his race, Native American.

Wherefore, Plaintiff respectfully requests that the motion be denied. Plaintiff has

filed a memo in opposition to the motion which further explains his position.

Respectfully submitted, this the 27th____ day of September, 2022.


/s/Nancy P. Quinn,
Attorney for Plaintiff
NC State Bar No.:16799
315 Spring Garden St., Suite 1D
Greensboro, NC 27401
Telephone: (336) 272-9072
Email: npquinn@thequinnlawfirm.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the Plaintiff's Response in

Opposition to the Defendant's Motion for Summary Judgment was served on the

Defendant electronically through the CM/ECF system addressed as follows:

> Ms.  Katharine Barber-Jones
> Hartzog Law Group
> kbarber-jones@hartzoglawgroup.com
> 1903 N. Harrison Avenue, Suite 200
> Cary, NC 27513

This the  27th   day of September, 2022.


> /s/Nancy P. Quinn,
> Attorney for Plaintiff
> NC State Bar No.:16799
> 315 Spring Garden St., Suite 1D
> Greensboro, NC  27401
> Telephone:  (336) 272-9072
> Email: npquinn@thequinnlawfirm.com

2

EXHIBIT A

Case No.:    1:20cv01135

**Plaintiff's Deposition Excerpts**

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

```
 1            IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2                   GREENSBORO DIVISION

 3            CIVIL ACTION NO. 1:20-cv-1135

 4

 5    ANTHONY DIAL,                    )
                                       )
 6                  Plaintiff,         )
                                       )
 7         vs.                         )
                                       )
 8    ROBESON COUNTY,                  )
                                       )
 9                  Defendant.         )

10

11

12

13                   DEPOSITION

14                       OF

15                 ANTHONY DIAL

16          April 27, 2022 - 10:05 a.m.

17          Greensboro, North Carolina

18

19

20

21

22    Stenographically
         Reported by:    Lisa A. Wheeler, RPR, CRR
23

24

25
```

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 13

```
 1    your wife's family live in the Pembroke area?

 2        A.   Yes.

 3        Q.   Okay.

 4        A.   We all live in the Pembroke area.  Most

 5    of us.

 6        Q.   And what is your wife's full name?

 7        A.   Rhonda Goins Dial.

 8        Q.   How do you spell Goins?

 9        A.   G-o-i-n-s.

10        Q.   And what does your wife do for a job?

11        A.   She is a supervisor with CDSA.  That

12    stands for Child Development Services Agency.

13    They work with children with special needs from

14    zero to three years of age.

15        Q.   All right.  And what involvement in

16    community organizations do you or your wife have?

17        A.   Okay.  Let me think for a minute.  We

18    have a Robeson House shelter in Lumberton.  I'm

19    the vice chair.  The Robeson House is a -- it's

20    an emergency shelter for children ages seven to

21    16.  Law enforcement can place children there.

22    Local agencies like DSS can place children there

23    including the private sector for up to 90 days

24    until we can find permanent placement.

25        Q.   Uh-huh.
```

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 14

```
 1        A.    I serve on the Rape Crisis Center
 2   board.  I'm also the vice chair on that board.
 3   And we know what Rape Crisis Center does.  What
 4   other boards do I serve on?  I'm on the Clean and
 5   Green committee with the county.  Clean and
 6   Green.  It's like a litter project.
 7        Q.    Uh-huh.
 8        A.    They bring litter awareness to the
 9   community.  I am also the watch commander for my
10   district for community watch.  What else do I
11   serve on?  I am a deacon at my church.
12        Q.    And what church do you attend?
13        A.    Thompson Community Baptist Church.  And
14   I'm in the process of being -- I'm involved in
15   the Lions Club in Pembroke.  I've gone to two
16   different meetings and they're asking me to join.
17        Q.    All right.  Other than the Robeson
18   House shelter, the Rape Crisis Center, Clean and
19   Green, neighborhood watch or community watch, the
20   Thom- -- Thompson County Baptist --
21        A.    Community Baptist.  I'm sorry.
22        Q.    Community Bap- --
23        A.    Yeah.
24        Q.    Yeah.  That's -- my notes are bad.
25   -- and the Lions Club, are there any other
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 15

1   community organizations that you're involved in?

2       A.    Yes.  Domestic Violence Task Force, I

3   mean, with the DA's office and sheriff's office

4   at least quarterly.

5       Q.    **Does that relate to your job or is**

6   **that --**

7       A.    Yes.  It's -- certain jobs.  It's a --

8   it is and it isn't.  We still work with the

9   community.  It's outreach because I do a lot of

10  PR also with the County.

11      Q.    **Are there any organizations that your**

12  **wife is involved in?**

13      A.    She is -- serves on the executive board

14  for the Lumbee River Electric Membership

15  Corporation.  She also serves on another board, I

16  think it's Robeson County Partnership, and what

17  Robeson County Partnership does is they help --

18  they're -- they're geared basically to help the

19  children with special needs --

20      Q.    **Uh-huh.**

21      A.    -- like the Smart Start program and all

22  that kind of stuff.  She's in -- she's in that

23  and she's a secretary at our church and a

24  youth -- and the youth coordinator.

25      Q.    **Wow.  You guys must be really busy.**

1    experience?

2        A.    Yes.  As well as I am also a shelter

3    manager during disasters with the County.  I was

4    a shelter manager for Purnell Swett High School

5    during Hurricanes Matthew and Florence.  During

6    Hurricane Matthew we had a thousand evacuees in

7    my shelter.

8        Q.    And do you know anything about

9    Mr. Hill's supervision and leadership history or

10   experience?

11       A.    Only from what I've seen from what I

12   just said.  He was -- he was in charge of the

13   transportation system.  He was also the safety

14   officer with the County.

15       Q.    This paragraph says that you were

16   informed that your prior EEOC activity was a

17   negative factor in scoring for the position.

18       A.    Yes.

19       Q.    Who told you that?

20       A.    Mr. Roger Oxendine, county

21   commissioner, and also Mr. Tom Taylor, county

22   commissioner.

23       Q.    When did Mr. Oxendine tell you that?

24       A.    I'd have to refer to my notes, and I

25   don't have them.

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 41

```
 1      Q.    Okay.  And Tom Taylor.

 2      A.    Yes.

 3      Q.    Do you believe -- or what is your

 4  understanding of the role, if any, that the

 5  county commissioners had in selecting for this

 6  position?

 7      A.    The county commissioners are very

 8  involved with the positions with the County.

 9  They have a lot of influence.  In fact, I wish I

10  had my notes, but just recently, Commissioner

11  Judy Sampson told me that during a county

12  commissioner meeting, they had a sidebar and the

13  commissioners talked about anyone that files a

14  complaint should never advance.  She -- she said

15  those words to me.

16      Q.    I'm sorry.  I'm going to need you to

17  repeat her name.

18      A.    Judy Sampson.

19      Q.    And what is Ms. Sampson's --

20      A.    She -- she --

21      Q.    -- role --

22      A.    -- is the county commissioner for my

23  district, District 5.

24      Q.    And are you saying that she was in a

25  meeting?
```

1       A.    I wish I had the statute, but when

2    certain -- when certain number of county

3    commissioners get together, it's still considered

4    a meeting so it was a actual county commissioners

5    meeting.  However, I guess they were on break.

6    They had a side- -- I call it a sidebar.  They

7    got together and they were talking and the

8    commissioner said, anyone that files a complaint

9    against the County should never advance.  And

10    she -- her words to me were, I can't believe they

11    even said that.

12       Q.    Did she say who said that?

13       A.    She didn't give me the names, no.

14       Q.    Did she say who else was in the room?

15       A.    She didn't give me any names.  Just

16    said they were commissioners.

17       Q.    And when did she tell you this?

18       A.    I'd have to refer to my calendar.

19       Q.    If you had to ballpark it, would it

20    have been in the last year?

21       A.    I'd say last six months.

22       Q.    So in this reference to scoring for the

23    position in Paragraph 16, do you have any

24    knowledge that the commissioners were scoring

25    people based on a rubric or assigning number --

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022                                    Page 43

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

1      A.    I --

2      Q.    -- scores to anyone?

3      A.    I couldn't answer that question at all.

4      Q.    Do you have any knowledge of any kind

5   of scoring process undertaken by the

6   commissioners for this position?

7      A.    No, I do not.

8      Q.    Okay.  In the -- in Paragraph 17 it

9   says, while the selection decision for the

10  assistant county manager was within the scope of

11  county manager Kellie Blue's duties, she serves

12  at the pleasure of the county commissioners and,

13  upon information and belief, would not ignore

14  their input in the process.

15          What makes you believe that the county

16  manager would not ignore the input of a county

17  commissioner in this process?

18     A.    They are her boss.  They decide whether

19  she gets a pay raise, whether she gets a bonus,

20  whether she even has her job.  The county

21  commissioners are totally responsible for the

22  position of county manager.

23     Q.    Do you believe that there was consensus

24  or majority or action by the county commissioners

25  to give input to Ms. Blue?

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 61

```
 1        A.    '16 and '18.

 2        Q.    Uh-huh.

 3        A.    Two 100-year floods in less than two

 4   years.

 5        Q.    And so the -- the shelter

 6   administrator --

 7        A.    Shelter manager.  I'd work hand in hand

 8   with -- with Red -- Red Cross whenever they would

 9   arrive and hopefully be able to transition it to

10   them.  Hopefully but that didn't happen.

11        Q.    Did you receive additional compensation

12   for that role?

13        A.    During Matthew I wouldn't consider it

14   compensation, but they gave us -- because we were

15   working, like, 12- and 14-hour days, we did get

16   something in our paycheck, but it was just that

17   one time.  It wasn't anything extra.  I mean, no.

18   That was only during Matthew.  We didn't get

19   anything for Florence and it was basically just

20   overtime.  That was all it was.

21        Q.    And what is your current pay grade and

22   salary?

23        A.    I should know that.  My pay grade is a

24   Pay Grade 77.  I think with my longevity, I may

25   be around 86,000.  I'm not sure.  I think we're
```

```
1    getting a pay raise this payday.  That's what I
2    was told anyway.
3         Q.   And do you know what step you would be?
4         A.   If I get another step -- I wish I could
5    tell you.  Okay.  I'm -- I wish I had a copy of
6    it.  Year -- I'm, like, a Pay Grade 77 and then
7    each year you're with the County, you get steps.
8    So I'm a Pay Grade 77, Step 21.
9         Q.   Okay.  2000 until 2000- --
10        A.   2020- -- exactly.
11        Q.   Uh-huh.
12        A.   It's so much per year for incentive
13   raises to try to get employees to stay, retain
14   employees.
15        Q.   So how do you believe that your
16   experience as we've discussed it in the past half
17   hour or so would have transitioned over into
18   qualifications for the assistant county manager
19   position?
20        A.   I hate -- I hate to ask this:  How
21   could they not?  You know, an assistant county
22   manager position, it's a key position because you
23   have all these other departments under the County
24   including sort of DSS.  Even though DSS reports
25   to -- is -- is a stand-alone almost and so is the
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022                                                Page 63

1    health department, but -- like, the water
2    department, parks and rec, all the other
3    departments, waste management, all of that falls
4    under the County.  I don't mean to be coy or
5    whatever, but all -- you really need leadership,
6    you really need experience in budgeting, you
7    really need experience with being able to
8    collaborate with other entities because you
9    always need help especially during an emergency.
10   You need to know how to speak with workers.  You
11   need to be, you know, able to communicate.
12   All -- all that comes from -- leadership is what
13   I would think you would need as assistant county
14   manager.
15       Q.    And there are two assistant county
16   managers, right?
17       A.    Yes.
18       Q.    The other one is Jason King?
19       A.    Yes.
20       Q.    And do the two co- -- assistant county
21   managers have responsibility for different areas
22   of the County's work?
23       A.    Yes, they do.
24       Q.    So within the position that you were
25   applying for, do you know what programs that

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 72

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

1   Q.    So you would -- him about things for

2   the County, but maybe this wasn't, you know, a --

3   an official -- I'm sorry.  I'm blanking on the

4   term.  -- line of leadership or --

5   A.    No.  It was just Reese called me and I

6   answered the phone.

7   Q.    Uh-huh.  And it says that -- it just --

8   when you -- in your description in the entry for

9   January 3rd, it goes on to say, stated assistant

10  comanager position should be filled by a white

11  person, She- -- Shelton Hill.

12        Did somebody state that on the call?

13  A.    Yes.

14  Q.    Who said that?

15  A.    Commissioner Tom Taylor.

16  Q.    And how did it come up that he said

17  that?

18  A.    I think Reese asked about the county

19  commissioner -- assistant county manager.  Did

20  you have -- here's how Reese said it:  Do you

21  have any idea about the assistant county

22  count- -- county manager position?  And then

23  that's when Tom said what he just said and what

24  you just read.

25  Q.    And was he saying that as his own

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 73

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

```
 1    personal opinion?
 2        A.    I don't know.
 3        Q.    Do you -- did he give any context for
 4    why he was saying that?
 5        A.    Yes.
 6        Q.    What did he say?
 7        A.    He said, you would not have two Indians
 8    and African-American in administration.  You'd
 9    have to have a white.
10        Q.    So are you saying that because you and
11    Ms. Kellie Blue are Native American and the other
12    assistant county manager who's currently in that
13    position is African-American -- Jason King,
14    right?
15        A.    Yes.
16        Q.    -- are you saying that Mr. Taylor said
17    you, Anthony Dial, could not be in the position
18    of assistant county manager because you're Native
19    American?
20        A.    That's what I gathered.
21        Q.    Did he outright say that?
22        A.    Yes, he did.
23        Q.    What did he say precisely?
24        A.    Exactly what I just said.  He said that
25    we would not have two Native Americans, an
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 74

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

1    African-American, we'd have to have a
2    white as well.
3         Q.    Uh-huh.  And was he saying we as in the
4    board of commissioners?
5         A.    Yes.
6         Q.    Was he saying this as we -- this is my
7    personal opinion and I'm going to talk to the
8    other county commissioners about it or was he
9    telling you that this is what the other county
10   commissioners felt about it?
11        A.    He just said we.  That was how he --
12   exactly how he -- I can't --
13        Q.    So he didn't specifically tell you who
14   he was talking about?
15        A.    He said we.
16        Q.    We.  And you inferred that he was
17   referring to the county commissioners?
18        A.    I would think so.
19        Q.    Okay.  When you inferred that, were
20   there any specific county commissioners who you
21   thought he might have been referring to?
22        A.    I was -- I -- it would be speculation
23   if I even said.  I couldn't -- I don't know.
24        Q.    Okay.  Why would Reese bring Tom Taylor
25   onto the phone other than to talk about the

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

**alleged reflect negatively on you as a person?**

A. Because I am a natural leader and it's my core -- that's what I do. I -- I like doing -- advancing, but to tell me that I can't because of my race, it -- it's disheartening, that I can't get a certain position because of my race.

**Q. But how does that reflect negatively on your reputation is what I was asking?**

A. Because it's -- there should be no reason why I shouldn't be able to advance based on my past experience and my work history. There's no reason why I should not be able to move up. And as I said earlier, with the meeting of Commissioner Judy Sampson, that little sidebar meeting, I won't advance with the County.

**Q. Do you think what Judy Sampson said reflects a county policy?**

A. It's unwritten pol- -- there's no way they'd put that in writing.

**Q. When she told you about it, it was a remark made by a commissioner, correct?**

A. Yes.

**Q. Did she tell you about that remark being made by any other commissioners?**

www.huseby.com Huseby Global Litigation 800-333-2082

**ANTHONY DIAL vs ROBESON COUNTY**

Anthony Dial on 04/27/2022

Page 150

```
 1        A.    She has said it was a group of
 2   commissioners.  She didn't give me names.  Judy
 3   Sampson is the type of commissioner that's afraid
 4   to use her cell phone.  She's very paranoid.
 5   When she talks to you, she almost has to do it
 6   face-to-face.  She had to come to my house and
 7   tell me what she told me because she wouldn't do
 8   it on the phone.
 9        Q.    And when did she come to your house to
10   tell you that?
11        A.    I have it in my -- I have it written
12   down in my calendar.  I don't have it with me.
13   It was recent.  It was less than six months ago.
14        Q.    And have you had any physical symptoms
15   related to stress or embarrassment that you
16   believe were caused by not being selected for
17   assistant county manager?
18        A.    Just headaches and tension and, like I
19   said earlier, having to walk out of that
20   Christmas celebration.
21        Q.    Have you talked to any medical
22   professionals about these physical symptoms?
23        A.    I've gone to the VA.
24        Q.    Was this a special visit for --
25        A.    It was --
```

ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

```
 1        Q.    Uh-huh.

 2        A.    So that would be about the extent of

 3   that for me.

 4        Q.    And is there -- do you have any other

 5   experience in managing people other than the

 6   supervisory experience that we went through when

 7   we were talking about your positions with Robeson

 8   County?

 9        A.    Yes.

10        Q.    Okay.  Tell me about that other

11   experience.

12        A.    Managing people?

13        Q.    Uh-huh.

14        A.    In the Marine Corps I was actually

15   barrack sergeant for, like, 500 Marines when we

16   were home, when we were at the station.  I

17   managed my own night crew for aviation for night

18   flights.  I was the supervisor for that.  I was

19   the sergeant.  I was actually an inspector.  I

20   signed planes off safe for flight --

21        Q.    Uh-huh.

22        A.    -- before Marines would even get on

23   those planes.  So I have that background as well

24   as, you know, supervising inmates at a prison and

25   then what I'm doing right now with the Department
```

ANTHONY DIAL vs ROBESON COUNTY
ANTHONY DIAL vs ROBESON COUNTY
Anthony Dial on 04/27/2022

Page 161

```
 1   of Social Services.
 2        Q.   When you -- how long were you a
 3   sergeant when you were in the Marine Corps?
 4        A.   I was a sergeant for 18 months, I was a
 5   corporal I think for 24 months, and I was a
 6   private first class prior to that -- or lance
 7   corporal.  I'm sorry.
 8        Q.   And when you worked at the Department
 9   of Corrections, did you have any supervisory role
10   over other corrections officers or --
11        A.   Just inmates.
12        Q.   -- DOC employees?
13        A.   Just inmates.  And as I said -- I'm --
14   now?  Go now?
15        Q.   Yes.
16        A.   Just inmates.  Like I said earlier, I
17   was in charge of weapons, so that meant that I
18   was in -- back then they had road crews that went
19   out on the roads and I was in charge of those six
20   road crews as far as weapons and equipment when
21   they'd go out in the -- in the County and pick up
22   trash or cut ditch bands.
23        Q.   Uh-huh.  Do you have any records
24   related to the leadership training that you've
25   done with the County?
```

www.huseby.com
www.huseby.com          Huseby Global Litigation          800-333-2082
          Huseby Global Litigation          800-333-2082

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 166

```
 1    copy that I am saying.
 2         Q.   Sure.  Yeah.  Well, then I -- I'll ask
 3    you to forward that to your attorney.  But this
 4    is a very long document with a lot of duties and
 5    responsibilities.
 6              Did you review this in detail --
 7         A.   Yes, I --
 8         Q.   -- before you were interviewed for the
 9    position?
10         A.   Yes, I did.
11         Q.   Okay.  And when you were interviewing
12    for the position, did you connect your experience
13    or qualifications to any of the -- the functions
14    that you see in this job app- -- application?
15         A.   Yes.
16         Q.   Okay.  Can you give me an example of
17    what you said or --
18         A.   To the --
19         Q.   -- if you remember what you said.
20         A.   I can't remember.  I remember that I
21    thought it would have been more about capital
22    building, like you said, and -- and knowing
23    different codes for the buildings.  I thought the
24    process would have been more about that.  I don't
25    remember the questions going around that
```

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 167

```
 1    don't remember being asked about
 2    code -- being codes unless I -- you know, I can't
 3    remember, but I don't think it was asked.
 4        Q.    So do you -- in your roles and
 5    experience at DSS, do you have any involvement in
 6    developing policies and procedures?
 7        A.    Yes.
 8        Q.    Okay.  Can you give me examples of
 9    that.
10        A.    It could be dress codes.  It could be
11    policies and procedures for coming in late to
12    work, disciplinary process.
13        Q.    So when were you involved with, like,
14    dress codes and disciplinary policy writing?
15        A.    We just completed a dress code.  It's
16    probably about two years ago.  We com- -- I -- in
17    fact, I helped with the committee, put certain
18    supervisors, certain program managers, certain
19    employees on that committee --
20        Q.    Uh-huh.
21        A.    -- to build the dress code for work.
22        Q.    Was that before you interviewed for the
23    assistant county manager position?
24        A.    Yes.
25        Q.    Okay.  Are there any other policies or
```

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 168

```
 1    procedures that you were been involved in
 2    developing?
 3         A.    It says here -- you know, it says Asher
 4    Company here in 2004 on this document --
 5         Q.    Uh-huh.
 6         A.    -- that you're reading.  We had to
 7    develop a policy for retention, keeping
 8    employees, but we were -- we -- it never went
 9    through, but we -- we worked on it as upper
10    management does.  I've been involved with that,
11    too.
12         Q.    Okay.  Do you have any involvement with
13    telling people how to discipline other people?
14         A.    Yes.
15         Q.    Or how to manage them?
16         A.    Yes.
17         Q.    What -- what involvement do you have
18    in -- in instructing others on how to discipline?
19         A.    An example would be just yesterday, one
20    of my supervisors sent me an e-mail.  She
21    received a complaint on one of our workers that
22    she had gone up to a bar or something with this
23    person and this person was actually one of our
24    clients or our custodial parents in child
25    support.
```

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

Page 169

```
 1       Q.     Unh-huh.
 2       A.     They got into an altercation and this
 3   person called to complain on the employee.  The
 4   supervisor comes to me and wants to know -- know
 5   what should we do and I explained to her, well,
 6   do we need to -- did -- did -- well, first off,
 7   what did the employee say because there's always
 8   two sides and she told me what happened and what
 9   the employee said.  So I gave her instructions on
10   how to handle it di- -- as a disciplinary action
11   and also as -- even though you are on your own
12   time, you're held to a higher standard as a
13   county employee.  I wanted the worker to
14   understand that, too.  Or we'd go through the
15   disciplinary process because that was a
16   documented conference.  If anything else happens
17   again, it will go up to a written warning, second
18   written warning, and then we go from there.  And
19   that's --
20       Q.     So you explained to someone else how to
21   do this process?
22       A.     Yes.
23       Q.     Okay.  Have you ever attended meetings
24   of the board of commissioners?
25       A.     Rare, but I have.
```

**ANTHONY DIAL vs ROBESON COUNTY**
Anthony Dial on 04/27/2022

EXHIBIT B

Case No.:    1:20cv01135

**Affidavit of Rhonda Dial**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

GREENSBORO DIVISION

Civil Action No.:1:20cv1135

ANTHONY DIAL,                                    )
                                                 )
            Plaintiff,                           )
                                                 )
v.                                               )  Affidavit of Rhonda Dial
                                                 )
ROBESON COUNTY                                   )
                                                 )
                                                 )
            Defendant.                           )

I, Rhonda Dial, make this statement of my personal knowledge.

1. I am over the age of 18 and competent to give witness testimony. The following statements are based on my personal knowledge.
2. I am a resident of Robeson County and have been for 53 years.
3. I am Married to Anthony R. Dial and I am aware that he is the Plaintiff
4. I am very well acquainted with Robeson County Commissioners , Tom Taylor, Faline Dial, and Judy Sampson
5. I am very well acquainted with the Robeson County Manager, Kellie Blue.
6. I had several conversations with Commissioner Tom Taylor about various topics which did include the job of Assistant County Manager position in 2019.
7. I have visited with Mr. Taylor and his Brother Benji in their furniture store many times. Some visits were initiated by Mr. Taylor who brought lunch for myself and my husband and some visits initiated by myself. The visits initiated by myself where usually around holidays when I would be delivering cookies to different individuals in the community to include Mr. Tom and his Brother Benji. At no time were these treats intended to garner favor from Mr. Tom for my husband's career.

8. Mr. Tom and I did discuss issues in the county on several occasions. During one visit we were discussing the HR Director Angela Jones and how Angela and I had worked together several years ago with Mental Health. At this time the position of the Assistant County Manager had not been posted. I made the statement that "if Angela was qualified to work with Human Resources after working in Mental Health then I should be qualified to apply for the Assistant County Manager's job" Mr. Tom's response was "That is Shelton Hill's job." This conversation took place in his furniture store while we were standing in the middle of the store where he had couches for sale.

9. I had a conversation with Commissioner Faline Dial after Anthony Dial's interview. I said to Commissioner Dial that "I wished that they could consider Anthony for the position but I knew Mr. Hill would be getting that job." Her respondence was "I wish we could too."

This the 26TH day of September, 2022.

*Rhonda Dial*

Rhonda Dial

ROBESON COUNTY, NORTH CAROLINA,
I CERTIFY THAT THE FOLLOWING PERSON PERSONALLY
APPEARED BEFORE ME THIS DAY, EACH ACKNOWLEDGING
TO ME THAT SHE SIGNED THE FOLLOWING DOCUMENT:
RHONDA DIAL.

SEPTEMBER 26TH, 2022



JOHN E JONES JR.
NOTARY
MY COMMISSION EXPIRES
5 – MAY 2024
PUBLIC
ROBESON COUNTY, N.

JOHN E. JONES JR.
MY COMMISSION EXPIRES:
5 MAY 2024

EXHIBIT C

Case No.:   1:20cv01135

**Affidavit Roger Oxendine**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

GREENSBORO DIVISION

Civil Action No.:1:20cv1135

| | |
|---|---|
| ANTHONY DIAL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Affidavit of Roger Oxendine |
| | ) |
| ROBESON COUNTY | ) |
| | ) |
| Defendant. | ) |

I, Roger Oxendine, make this statement of my personal knowledge.

1. I am a resident of Robeson County
2. I currently serve on the Board of Directors for Lumbee River Electrical Membership Corporative
3. I served as a County Commissioner for Robeson County from 2006-2020 and I am aware that Anthony Dial is the Plaintiff
4. I am very well acquainted with all seating Robeson County Commissioners.
5. I sat on the Robeson County Board with Tom Taylor, David Edge, Lance Herndon, Pauline Campbell, and Faline Dial.
6. I am very well acquainted with the Robeson County Manager, Kellie Blue
7. I am very aware of the Politics of Robeson County Government
8. During my 16 years as a Robeson County Commissioner, it was standard practice to recommend people for positions within the County. County Commissioners do have influence with Department Heads and with the Robeson County Manager when hiring new staff and promoting current staff within Robeson County Local Government.

Roger Oxendine

Notary Signature

My Commission expires May 25, 2024.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANTHONY DIAL,                     )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          1:20-cv-1135
                                  )
ROBESON COUNTY,                   )
                                  )
          Defendant.              )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

     Before this court is Defendant Robeson County's Motion for
Summary Judgment. (Doc. 25.) For the following reasons, this
court will grant Defendant's motion.

I.   **PROCEDURAL HISTORY**

     On May 16, 2017, Plaintiff Anthony Dial filed a charge of
employment discrimination alleging race and sex discrimination,
as well as retaliation, with the Equal Employment Opportunity
Commission ("EEOC"). (Ex. 1, 2017 EEOC Charge (Doc. 8-1).)[1] On
December 10, 2019, Plaintiff filed another charge of employment
discrimination alleging race discrimination and retaliation with
the EEOC. (Ex. 2, 2019 EEOC Charge (Doc. 8-2).) These charges

---

     [1] All citations in this Memorandum Opinion and Order to
documents filed with the Court refer to the page numbers located
at the bottom righthand corner of the documents as they appear
on CM/ECF.

were timely submitted to the EEOC, and the EEOC issued Plaintiff right to sue letters, pursuant to 42 U.S.C § 200(e)-(5)(f) <u>et seq.</u> (<u>See</u> Compl. (Doc. 3) ¶¶ 12, 18, 22.) This court has previously found that Plaintiff's complaint incorporates by reference both of Plaintiff's charges of discrimination to the EEOC. (<u>See</u> Mem. Op. and Order (Doc. 12) at 3.)

Plaintiff filed his complaint in Guilford County Superior Court on November 12, 2020. (Compl. (Doc. 3) at 1.) Plaintiff alleged the following causes of action against Robeson County and Robeson County Department of Social Services: race and sex discrimination in violation of Title VII for Plaintiff's non-promotion to Director of the Department of Social Services in favor of a Black female; race discrimination in violation of Title VII for Plaintiff's non-promotion to Assistant County Manager in favor of a Caucasian male; retaliation in violation of Title VII; and violation of 42 U.S.C. §§ 1981 and 1983. (Compl. (Doc. 3) ¶¶ 7-39.) Robeson County and Robeson County Department of Social Services filed a Petition for Removal on December 16, 2020. (Doc. 1.) They then moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7.) This court granted the motion as to Plaintiff's claims for Title VII race and sex discrimination in the non-promotion to Director of the Department of Social Services, Plaintiff's Title VII retaliation

- 2 -

claim, and Plaintiff's §§ 1981 and 1983 claims. (See Mem. Op. and Order (Doc. 12) at 34.) This court denied the motion to dismiss as to Plaintiff's claim of Title VII race discrimination in the non-promotion to Assistant County Manager. (See id.) Robeson County Department of Social Services was dismissed from this action because of the lack of statutory authority to proceed independently against the Department of Social Services, (id. at 9–11); Robeson County is the sole remaining Defendant in this action.

Defendant Robeson County (hereinafter, "Defendant") filed a motion for summary judgment on Plaintiff's sole remaining claim of Title VII race discrimination in the non-promotion to Assistant County Manager, (Doc. 25), as well as a supporting brief, (Br. in Supp. of Def. Robeson County's Mot. for Summ. J. ("Def.'s Br.") (Doc. 27)). Plaintiff responded in opposition. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 31).) Defendant replied. (Reply Br. in Supp. of Def. Robeson County's Mot. for Summ. J. ("Def.'s Reply") (Doc. 33).) Defendant's motion for summary judgment, (Doc. 25), is ripe for adjudication.

## II.  FACTUAL BACKGROUND

On a motion for summary judgment, the court views the evidence in the light most favorable to Plaintiff as the

- 3 -

nonmoving party. See <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994).

### A.    <u>Plaintiff's Background and Employment History</u>

Plaintiff is a Native American male. (Compl. (Doc. 3) at 1; Answer (Doc. 13) at 2.) Prior to working for Robeson County, Plaintiff served in the Marine Corps from 1987 to 1993. (<u>See</u> Ex. 3, Excerpts from Tr. of Dep. of Anthony Dial ("Def.'s Excerpts Dial Dep.") (Doc. 25-3) at 6.) After leaving the Marine Corps, Plaintiff worked for the North Carolina Department of Corrections from 1994 to 2000 as a certified correctional officer and a certified armorer. (<u>See id.</u> at 4, 8.) During that time, Plaintiff attended night school at the Robeson County Community College for two years, after which Plaintiff transferred to University of North Carolina at Pembroke. (<u>See id.</u> at 5.)

After receiving his degree in 2000, Plaintiff left his job at the Department of Corrections to work for the Robeson County Department of Social Services ("Robeson County DSS"). (<u>See id.</u> at 9–10.) Plaintiff started as a foster care social worker in Child Protective Services, and he was in that position from approximately 2000 to 2002. (<u>See id.</u> at 10, 16–17.) In that role, Plaintiff "supervised visits for children that were in care[,] . . . offered services to their families[,] . . .

- 4 -

[assisted with family] reunification," and "[i]f those reunification efforts failed, . . . place[d] [children] with a relative, or even adoption." (Id. at 17.) It was not a supervisory role. (See id. at 17-18.)

From approximately 2002 to 2005, Plaintiff worked as a Child Protective Services investigator with an official job title of Child Protective Services Social Worker III. (See id. at 18.) In that role, Plaintiff "received referrals or complaints . . . [regarding] children that were abused and neglected"; Plaintiff "investigate[d] those complaints" and "offer[ed] services." (Id. at 18-19.) This was also not a supervisory role. (See id. at 19.)

In 2005, Plaintiff became a foster care supervisor, and he served in that role for approximately two and a half years. (See id. at 19-20.) In that role, Plaintiff "managed caseloads," monitored the "state or federal aid received by [each] child," and "supervised LINKS," which is a "program that helps children transition" out of foster care. (Id. at 20-23.) Next, Plaintiff worked as a supervisor in the investigative unit of Robeson County DSS for approximately two and a half years. (See id. at 23-24.) Although Plaintiff's positions from 2005 to present may have included supervisory responsibilities, Plaintiff was

- 5 -

classified as a supervisor for approximately five years. (See id.)

From 2009 until 2014, Plaintiff served as an income maintenance administrator for Robeson County DSS, which involved grantwriting for a new child advocacy unit, as well as meeting with multidisciplinary stakeholders such as the DA's office, law enforcement, and social workers. (See id. at 24–26.) In this position, Plaintiff supervised several program managers within Robeson County DSS. (See id. at 29.)

From 2014 to the present, Plaintiff serves as program manager for child support, serves as the hearing officer for Medicaid fraud, and does outreach for Robeson County DSS at job fairs. (See id. at 29–32). This is essentially a lateral position to Plaintiff's prior role as income maintenance administrator, along with a few additional duties. (See id. at 31.) Finally, Plaintiff took on ad-hoc leadership duties during Hurricanes Matthew and Florence as a shelter manager working with the Red Cross. (See id. at 32–33.)

Outside of his work experience, Plaintiff is involved in several community organizations. Plaintiff is the vice chair of the Robeson House shelter in Lumberton, which is "an emergency shelter for children ages seven to [sixteen]." (Ex. A, Pl. Dep. Excerpts ("Pl.'s Excerpts Dial Dep.") (Doc. 31-1) at 3.)

- 6 -

Plaintiff is also the vice chair of the Rape Crisis Center
Board. (Id. at 4) Plaintiff serves on the Clean and Green
Committee in Robeson County and is the watch commander for his
district's community watch. (Id.) Plaintiff is a deacon at his
church. (Id.) Plaintiff is involved with the Domestic Violence
Task Force. (See id. at 5.) Finally, Plaintiff has recently been
involved with the Pembroke Lions Club. (See id. at 4.)

   **B.   Assistant County Manager Position**

   Kellie Blue is the County Manager for Robeson County. (See
Decl. of Kellie Blue ("Blue Decl.") (Doc. 28) at 1.) Blue was
appointed to this position by the Robeson County Board of
Commissioners pursuant to a four-year contract, and she began
this job on January 1, 2019. (See id.) Previously, she served as
Assistant County Manager and reported to the former County
Manager. (See id.) Both Blue and her predecessor as County
Manager are Native American. (See id.)

   Robeson County typically has two Assistant County Managers,
each of whom oversee different departments on behalf of the
County Manager. (See id. at 2.) In Kellie Blue's role as
Assistant County Manager immediately before her appointment to
County Manager, she oversaw "human services, the health
department, transportation, insurance and risk management,
emergency management services, communications, IT, claims, and

- 7 -

planning and zoning." (Id.) The other Assistant County Manager —
Jason King — was responsible for "the County's water and sewer
enterprises, building management, fleet management, veterans'
services, and human resources." (Id.) It appears that the two
Assistant County Managers divide up Robeson County's different
departments and oversee them independently of each other, with
each reporting to the County Manager. (See id.)

When Kellie Blue was appointed to County Manager, her
previous position as Assistant County Manager became vacant.
(See id.) Blue wanted to "fill the position as soon as possible
with someone who could 'hit the ground running' and would not
need extensive training, as [she] was very busy transitioning
into the County Manager role at the time." (Id.)

Robeson County's Human Resources Department posted the open
position on the Robeson County Employment Website on February
12, 2019. (See id. at 2; see also Ex. A, Job Posting for 2019
Assistant County Manager Position (Doc. 28-1).) The job
description included a list of essential job functions and
minimum qualifications. (See generally Ex. B, 2019 Job
Description for Assistant County Manager ("Job Description")
(Doc. 28-2).) The minimum training and experience included:

> Bachelor's degree in Business/Public
> Administration, or a related field; considerable
> increasingly responsible experience in the
> administration and management of local government

- 8 -

programs and personnel; <u>or</u> any equivalent combination
of training and experience which provides the required
skills, knowledge and abilities.

(<u>Id.</u> at 4 (emphasis added).) Essential job functions included,

<u>inter alia</u>:

> Assists the County Manager in development of
> policies and procedures pertaining to personnel,
> capital improvement, fiscal control, construction
> projects and public relations issues; serves as member
> of County Manager's management team, participating in
> meetings and discussions to formulate and develop
> planning on various issues pertaining to operations of
> County government.
>
> Oversees County capital improvement projects,
> ensuring adherence to specified standards; confers
> with department heads, supervisory boards, County
> Commissioners, court officials, architects,
> contractors, etc., to resolve disputes, as necessary.
>
> Oversees, coordinates and administers various
> personnel programs in accordance with local, state and
> federal ordinances, statutes and laws; develops
> amendments to local personnel ordinance, as necessary,
> and presents recommendations to County Commissioners.
>
> Represents the County in official capacities on
> various regional and County boards and committees.
>
> Assumes duties of County Manager in his/her
> absence, ensuring adherence to established policies,
> procedures and standards.

(<u>Id.</u> at 2.)

C.    **Selection Process**

Robeson County's Human Resources Department collected and

screened job applications, resulting in eight qualified

applicants being moved forward for interviews. (<u>See</u> Blue Decl.

- 9 -

(Doc. 28) at 3.) These candidates included Plaintiff and Shelton Hill. (See id.) To assess the candidates, Blue prepared a list of interview questions, as well as a budget exercise. (See id.) Blue interviewed both Plaintiff and Hill "on or about Wednesday, May 1, 2019." (Id.) During the interview, Blue "followed the script [of questions] for each . . . applicant." (Ex. 1, Tr. of Dep. of Kellie Blue ("Blue Dep.") (Doc. 25-1) at 12.) Blue testified that she had total discretion in selecting an Assistant County Manager; the Robeson County Board of Commissioners did not provide any input, solicited or unsolicited, regarding candidates. (See id. at 6-8).

Ultimately, Shelton Hill, a Caucasian male, was selected for the Assistant County Manager position. (See Ex. 2, Tr. of Dep. of Shelton Hill ("Hill Dep.") (Doc. 25-2) at 5.) Hill has a high school diploma but not a bachelor's degree. (See Appl. of Shelton Hill for Assistant County Manager Position ("Hill Job Appl.") (Doc. 28-4) at 3, 8.) "Hill had a decade and a half of management experience in one of the largest textile firms in Robeson County, supervising over a hundred people." (Blue Decl. (Doc. 28) at 5-6.) After his private sector work, Hill moved to the public sector. (See id. at 5.) "Hill worked for the Lumber River Council of Governments for two years and the Department of Transportation for a year." (Id. at 5.) Hill then began working

- 10 -

for Robeson County, which altogether "gave him almost 20 years' experience in public sector work directly related to the role he was interviewing for." (Id.) Hill "had worked in transportation, human services, human resources, risk management, safety, and inspections. . . . This included technical areas such as obtaining Medicaid/Medicare and other grant reimbursements, handling claims, and managing departments that provide important services to the County's residents." (Id.) Hill had also previously worked with Blue; she was his supervisor in his role as "County Risk Manager/Safety Officer." (See Hill Job Appl. (Doc. 28-4) at 6.)

Blue testified that "when [she] considered the applicants, [she] felt that Mr. Hill had the most relevant experience for the position." (Blue Decl. (Doc. 28) at 5.) Blue elaborated:

> He had a broad . . . skill set that would be essential to the manager's office in an assistant manager role. . . . He had worked in our human resource office, handled risk management. That is a key . . . facet of an assistant manager. . . . One of the other areas is SEATS. He had worked in our regional transportation department [and was] very familiar with . . . the SEATS program.

(Blue Dep. (Doc. 25-1) at 14-15.) Although Hill did not have a four-year college degree, Blue testified that either a college degree or relevant work experience was necessary and that Hill's lack of a college degree was not a concern for Hill's candidacy. (See id. at 16-17.) She explained that "Hill's prior experience

- 11 -

gave him a proven track record in the areas that the person hired as Assistant County Manager would be expected to supervise." (Blue Decl. (Doc. 28) at 5.)

In contrast, regarding Plaintiff's qualifications, Blue testified that Plaintiff's "concentration has been in one area, and that is our DSS department, and then Mr. Hill had a broad array . . . of experience [in] what we needed in the manager's office with some HR, risk management . . . ." (Blue Dep. (Doc. 25-1) at 20.)

### D.    Tom Taylor's Alleged Involvement in the Selection Process

Tom Taylor is an elected member of the Robeson County Board of Commissioners. (See Ex. 5, Decl. of H.T. ("Tom") Taylor, Jr. ("Taylor Decl.") (Doc. 25-5) at 1.) Taylor also owns and operates a hardware store in Lumberton. (See id.)

Plaintiff alleges that County Commissioners, like Taylor, have influence on Robeson County personnel decisions. (See Pl.'s Resp. (Doc. 31) at 2–3, 8–9.) In support, Plaintiff cites the unsworn and unsigned affidavit of Roger Oxendine, a former Robeson County Commissioner. (See id. at 9; see also Aff. of Roger Oxendine (Doc. 31-3) at 2.) Plaintiff also testified that Taylor stated in a three-way phone conversation between Taylor, Plaintiff, and Reese Oxendine (another Robeson County employee)

- 12 -

that "[we] would not have two Indians and [an] African-American in administration. [We'd] have to have a White." (Pl.'s Excerpts Dial Dep. (Doc. 31-1) at 13-15 (cleaned up).) Taylor denies making any such statement.[2] (See Taylor Decl. (Doc. 25-5) at 2.) Taylor also testified that he "never told Kellie Blue anything about who she should hire for the [Assistant County Manager] position." (Id. at 3.)

Additionally, Plaintiff's wife, Rhonda Dial, testified that Taylor told her, in discussing the Assistant County Manager position, "[t]hat is Shelton Hill's job." (See Ex. B, Aff. of Rhonda Dial (Doc. 31-2) at 3.)

## III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). When reviewing a summary judgment motion, the court must view all evidence in the light most favorable to the nonmoving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 600-01 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a

---

[2] As will be explained <u>infra</u> Section IV.C.2, Taylor's alleged statement does not create a genuine issue of material fact, even if admissible.

- 13 -

matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp.</u>, 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718–19 (4th Cir. 2003) (citing <u>Matsushita Elec. Indus. Co</u>, 475 U.S. at 586-87). Summary judgment should be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." <u>Id.</u> at 719 (citing <u>Liberty Lobby</u>, 477 U.S. at 247–48).

## IV.  <u>ANALYSIS</u>

Plaintiff alleges a Title VII employment discrimination claim against Defendant for failure to promote Plaintiff to Assistant County Manager on the basis of race. (Compl. (Doc. 3) at 2–3.) Plaintiff claims that the County Manager, Kellie Blue, chose not to promote him to the position of Assistant County Manager even though he was more qualified than Shelton Hill, the Caucasian male ultimately hired for the position. (<u>See</u> <u>id.</u>)

Title VII makes it an unlawful employment practice for an employer, including a state agency, "to discriminate against any

- 14 -

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may survive a summary judgment motion through one of two avenues of proof. A plaintiff may establish through direct or circumstantial evidence that race, though not the sole reason, was a "motivating factor" in the denial of a promotion. See Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may use the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See id. Because the parties proceed under the McDonnell Douglas framework in their arguments, this court will proceed under the McDonnell Douglas burden-shifting analysis. See generally Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (providing an overview of the McDonnell Douglas burden-shifting framework).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. See id. at 142. If the plaintiff establishes his prima facie case, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its actions. See id. (internal citations omitted). If the employer does so, the burden shifts back to the plaintiff to present evidence that the employer's

- 15 -

articulated reason was pretext for unlawful discrimination. <u>See</u> <u>id.</u> at 143. The plaintiff bears the ultimate burden of persuasion. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

Here, although Plaintiff establishes a prima facie case of discrimination, Defendant provides a legitimate, non-discriminatory reason for promoting Hill over Plaintiff. Further, Plaintiff does not demonstrate that Defendant's articulated reason was pretext for unlawful discrimination. Thus, this court will grant Defendant's motion for summary judgment.

### A.    <u>Plaintiff's Prima Facie Case</u>

Viewed in the light most favorable to Plaintiff, this court finds that Plaintiff has established a prima facie case of race discrimination in his non-promotion to Assistant County Manager. To establish a prima facie case for discriminatory failure to promote, a plaintiff must prove that he: (1) is a member of a protected class; (2) applied for the position; (3) was qualified for the position; and (4) was rejected under circumstances giving rise to an inference of unlawful discrimination. <u>See</u> <u>Amirmokri v. Baltimore Gas & Elec. Co.</u>, 60 F.3d 1126, 1129 (4th Cir. 1995). "The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by

- 16 -

a preponderance of the evidence that []he applied for an available position for which []he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253.

Here, neither party disputes that Plaintiff has established the first two elements of a prima facie case. First, Plaintiff, as a Native American, is a member of a protected class. (Compare Def.'s Br. (Doc. 27) at 16, with Pl.'s Resp. (Doc. 31) at 4.) Second, Plaintiff applied for the Assistant County Manager Position. (Compare Def.'s Br. (Doc. 27) at 16, with Pl.'s Resp. (Doc. 31) at 4.)

Further, Defendant concedes the third element, as Defendant does not argue that Plaintiff was unqualified for the Assistant County Manager Position, but rather, that Hill was more qualified than Plaintiff. (See Def.'s Br. (Doc. 27) at 15-19.) Blue's Declaration also suggests that Plaintiff was qualified for the position of Assistant County Manager, as Blue testified that only qualified candidates advanced to the interview stage of the selection process. (See Blue Decl. (Doc. 28) at 3 ("The eight remaining, qualified applicants, including Anthony Dial and Shelton Hill, were interviewed by me over the course of several days.").)

- 17 -

Finally, "[t]o satisfy the fourth prong, [Plaintiff] need only show that the position was filled by a person not in the protected class." Weaks v. N.C. Dept. of Transp., 761 F. Supp. 2d 289, 298 (M.D.N.C. 2011); see also Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). The Assistant County Manager position was filled by Shelton Hill, who is a Caucasian, (see Hill Dep. (Doc. 25-2) at 5), so the position was filled by a person not in a protected class.

However, "[m]ore recently, the Fourth Circuit has cast doubt on [prima facie case analysis], stating that such a rule would mean 'any qualified member of a protected class who alleges nothing more than that []he was denied a position or promotion in favor of someone outside [his] protected class would be able to survive a Rule 12(b)(6) motion.'" Velez v. Wormuth, No. 7:20-CV-20-D, 2022 WL 3022134, at *6 (E.D.N.C. July 29, 2022) (quoting McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015)). In line with that critique, Defendant argues that to satisfy the fourth prong of the prima facie case, Plaintiff must show that a "comparator of a different protected class than [P]laintiff was selected" for the job, where "there must be 'enough common features between [Plaintiff and the comparator] to allow for a meaningful comparison.'" (Def.'s Br. (Doc. 27) at 16 (quoting Humphries v.

- 18 -

CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007).) Defendant contends that Hill is not an appropriate comparator to Plaintiff to satisfy the fourth prong because they both "brought differing combinations of education and experience to their applications." (Id. at 20.)

This court is not convinced by Defendant's argument as a matter of law. Whether or not the comparator is sufficiently similar to establish an inference of discrimination here appears to present an issue of fact for the jury to determine whether there are enough common features. For purposes of summary judgment, Plaintiff and Hill were both qualified for the Assistant County Manager position; whether Hill's experience is sufficient to distinguish Plaintiff's college degree and experience is an issue of fact. Furthermore, it appears to this court that the appropriate comparators here in a failure to promote case would be similarly-situated applicants for the Assistant County Manager. Plaintiff and Hill, both qualified candidates for the job, one of whom is a member of a protected class and one of whom is not, are sufficiently similar for purposes of summary judgment. Accordingly, as Hill, who is not a member of a protected class, was promoted over Plaintiff, a member of a protected class, an inference of discrimination may arise. See Gary v. Facebook, Inc., 822 F. App'x 175, 180 (4th

- 19 -

Cir. 2020) ("Under <u>McDonnell Douglas</u>, an inference of discrimination arises from evidence that the employer favored a comparator over the plaintiff.").

Thus, this court finds that Plaintiff has established a prima facie case of discrimination.

**B.    Defendant's Legitimate, Non-Discriminatory Reasons**

"Under <u>McDonnell Douglas</u>, once a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a non-discriminatory explanation for the decision." <u>Weaks</u>, 761 F. Supp. 2d at 298. "The burden on Defendants at this stage is one of production, not persuasion, and the court's analysis 'can involve no credibility assessment.'" <u>Id.</u> at 298-99 (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).

Defendant proffers that Hill was selected for the position of Assistant County Manager because he was the better-qualified candidate. (<u>See</u> Blue Decl. (Doc. 28) at 5.) "[R]elative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996). And an "employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria." <u>Id.</u>

- 20 -

Defendant explains that "Hill worked in leadership positions in several County departments, including the office for risk management, safety officer, operations manager, and safety officer for the DOT transportation system, and as a combined assistant director of human resources and risk manager." (Def.'s Br. (Doc. 27) at 9; see also Blue Decl. (Doc. 28) at 5-6.) Blue testified that Hill's experiences in human resources and risk management, as well as his familiarity with the SEATS program, were key in selecting Hill for the position. (Blue Dep. (Doc. 25-1) at 15.) This is consistent with Defendant's job description for the Assistant County Manager position, which requires: human resources skills, such as "acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases"; risk and safety compliance skills, such as "develop[ing] policies, procedures, and programs to meet safety standards set by state and federal laws, codes, and regulations including United States and state occupational safety and health administration regulations," along with managing "liability and property insurance programs"; and familiarity with the County's transportation and SEATS programs, as the Assistant County Manager "[a]dministers [the] County vehicle program." (Job Description (Doc. 28-2) at 2, 3.)

- 21 -

This contrasts with Plaintiff's more concentrated work experience solely in the Robeson County DSS. (Def.'s Excerpts Dial Dep. (Doc. 25-3) at 9–10, 16–29.)

Further, Blue testified that she wanted to hire someone who could "hit the ground running," (see Blue Decl. (Doc. 28) at 2), which would likely be an applicant with familiarity across multiple Robeson County departments, like Hill, rather than someone whose work is concentrated only in one department, like Plaintiff.

Additionally, Defendant points to Hill's extensive supervisory and managerial experience, in comparison to Plaintiff's limited supervisory experience. (Def.'s Br. (Doc. 27) at 10–11.) Specifically, Hill supervised "over a hundred people" for a decade and a half while working in the private sector before he worked for Robeson County. (Blue Decl. (Doc. 28) at 5.) While classified as a supervisor, Plaintiff had only supervised five foster care social workers from 2005 to 2008 and then four investigative social workers from 2008 to 2009. (Application of Pl. Anthony Dial for Assistant County Manager Position ("Pl. Job Appl.") (Doc. 28-3) at 4–5.)

Plaintiff argues that Blue failed to consider Plaintiff's experiences outside of working for the Robeson County Department of Social Services, including his service "in the Marine Corp,

- 22 -

[employment with the] Department of Public Safety, and volunteer organizations." (Pl.'s Resp. (Doc. 31) at 5-6.) This court is not convinced by Plaintiff's argument because even if this court accepts Plaintiff's argument as to his additional experience, those facts do not rebut Defendant's nondiscriminatory reasons for the selection of Hill.

This stage of analysis "can involve no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993). The defendant "need only articulate 'reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" Moore v. Mukasey, 305 F. App'x 111, *4 (4th Cir. Dec. 30, 2008) (emphasis in original) (quoting St. Mary's Honor Ctr., 509 U.S. at 507). At summary judgment, it is Plaintiff's burden to come forward with evidence to create an issue of material fact; this court does not weigh evidence. See Reeves, 530 U.S. at 142-43 (explaining that the defendant's burden at the second stage of the McDonnel Douglas analysis "is one of production, not persuasion"); Bius v. Thompson, No. 02cv01120, 2004 WL 1348221, at *5 (M.D.N.C. June 14, 2004) ("This court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.' 'When an employer

- 23 -

articulates a reason for failing to select the plaintiff not forbidden by law, it is not the court's province to decide whether the reason was wise, fair, or even correct.'") (cleaned up).

In sum, Defendant has presented evidence that Hill was selected for the Assistant County Manager position over Plaintiff because Hill had a wider array of relevant prior work experiences in key areas of responsibility for an Assistant County Manager and because Hill had more supervisory and managerial experiences. Although Plaintiff alleges that he had equivalent experience, Plaintiff has not presented evidence sufficient to create an issue of material fact as to Blue's testimony. Thus, Defendant has articulated a legitimate, non-discriminatory reason for its decision to promote Hill over Plaintiff, meeting its burden at this stage of the McDonnell Douglas framework.

C.    **Plaintiff's Evidence of Pretext**

Once an employer satisfies its burden of providing a legitimate, non-discriminatory reason, the burden "returns to the plaintiff to 'prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and the true reason is discriminatory or retaliatory.'" Gary, 822 F. App'x at 180. "A plaintiff alleging a failure to promote

- 24 -

can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006). "The ultimate burden of persuasion remains on the plaintiff at all times." Weaks, 761 F. Supp. 2d at 300 (citing Burdine, 450 U.S. at 252-53.) Thus, Plaintiff must "forecast sufficient evidence for a jury to conclude that (1) he was the better qualified candidate or (2) Defendant['s] stated reason for promoting [Hill] over him was pretextual." See id. This court finds that Plaintiff has not forecast sufficient evidence that he was a better qualified candidate or that Defendant's stated reason for promoting Hill was pretextual. Thus, Plaintiff fails to meet his burden at the third and final stage of the McDonnell Douglas framework.[3]

_____

[3] "[A]n equally valid way to prove pretext is to provide evidence that the employer's proffered reason was not the actual reason relied on, but was rather a false description of its reasoning — albeit one based on a real difference in qualifications — manufactured after the fact." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 648 n.4 (4th Cir. 2002). Plaintiff has not presented any such argument, so this court will not consider this method of showing pretext.

- 25 -

1.  **Plaintiff's Argument that he was the Better Qualified Applicant**

Plaintiff contends that he is a superior candidate for Assistant County Manager than Hill because he has a college degree, while Hill does not, and because he has greater supervisory experience than what was represented by Blue. (See Pl.'s Resp. (Doc. 31) at 6–7.) This argument is not convincing. "When a plaintiff relies on his qualifications to establish pretext, he must do more than show his qualifications were similar or only slightly superior to those of the person eventually selected." Weaks, 761 F. Supp. 2d at 300. Instead, he must either show that "qualifications were so plainly superior that the employer could not have preferred another candidate" or "provide evidence that the employer's proffered reason was not the actual reason relied on, but was rather, a false description of its reasoning . . . manufactured after the fact." Dennis, 290 F.3d at 648 n.4. As Plaintiff does not present evidence that Blue's explanation was "manufactured after the fact," Plaintiff must show his qualifications were "plainly superior" to Hill's. See id.

Plaintiff focuses on "a college degree as the first (and presumably primary) job qualification" for the Assistant County

- 26 -

manager position. (Pl.'s Resp. (Doc. 31) at 7.) The job

description states:

> **MINIMUM TRAINING AND EXPERIENCE**
>
> Bachelor's degree in Business/Public Administration,
> or a related field; considerable increasingly
> responsible experience in the administration and
> management of local government programs and personnel;
> or any equivalent combination of training and
> experience which provides the required skills,
> knowledge and abilities.

(Job Description (Doc. 28-2) at 4.) Thus, the plain language of

the job description requires as minimum qualifications either a

bachelor's degree "or" relevant "training and experience which

provides the required skills, knowledge, and abilities." (Id.)

Plaintiff met the educational requirements and it is not

disputed that Plaintiff had a Bachelor's degree and Hill did

not.

However, Blue explained that Hill's past work experiences

were in key related areas of the Assistant County Manager

position and that she prioritized that experience over

education, as Blue sought an applicant who could "hit the ground

running" over someone who may need more training. (See Blue

Decl. (Doc. 28) at 2, 6.) Plaintiff has presented no evidence to

contradict Blue's subjective determination that Hill's broad

array of experience, including human resources, risk management,

and SEATS, (see Blue Dep. (Doc. 25-1) at 20), were not

- 27 -

appropriately desirable skills for the Assistant County Manager position. A college degree or relevant experience were minimum qualifications but did not establish superior qualifications for the position. See Westinghouse Savannah River Co., 406 F.3d at 270-71 (explaining that just because the plaintiff exceeded the minimum educational requirements for a job and had more education than her competitor does not alone establish that the employer's reasons for promoting her competitor were pretext for discrimination). Plaintiff's argument that his college degree makes him more qualified is not persuasive. See id. (explaining that when defendants "base the promotion decision on the core and functional competencies listed in the job description and not on the educational levels of applicants, [the plaintiff] cannot rely on [his] educational background to establish that the defendants' reasons for promoting [a less-educated candidate] was a pretext for discrimination").

Additionally, Plaintiff contends that Blue failed to fully consider all of Plaintiff's supervisory experiences while in the Marine Corps and in community organizations. (Pl.'s Resp. (Doc. 31) at 6-7.) However, Plaintiff only included his involvement with Robeson House, not any other community organizations, in his application for the Assistant County Manager position, (see Pl. Job Appl. (Doc. 28-3) at 8), and Plaintiff does not contend

- 28 -

those experiences were discussed in his interview. Further, Plaintiff held supervisory roles for less time than Hill, and Plaintiff supervised fewer people than Hill. Thus, this argument is not sufficient to establish a genuine issue of material fact as to whether Plaintiff was "plainly superior" to Hill for the Assistant County Manager position.

The record does not establish a material issue of fact concerning whether Plaintiff was more qualified than Hill. Hill had extensive supervisory experience and experience in areas of responsibility for the Assistant County Manager position. Plaintiff, although he had completed a bachelor's degree, only had experience within the Robeson County DSS. Further, Hill had previously worked directly under Jason King, the other Assistant County Manager, and Blue, the former Assistant County Manager. (See Hill Job Appl. (Doc. 28-4) at 6–7.)

## 2. Circumstantial Evidence Undermining Defendant's Stated Reason

Plaintiff also proffers evidence to establish that Defendant's stated reason for promoting Hill over Plaintiff for the Assistant County Manager position was pretextual. However, neither of the two arguments Plaintiff advances are convincing.

First, Plaintiff alleges that Taylor, a member of the Robeson County Board of Commissioners, had influence on the

- 29 -

selection process and did not want a Native American to be selected for the role. (See Pl.'s Resp. (Doc. 31) at 9.) Plaintiff's allegation rests upon two facts: that the Board of Commissioners has input on personnel decisions, based upon a former Commissioner's testimony, (see Ex. C, Aff. Roger Oxendine (Doc. 31-3) at 2); and that Taylor stated to Plaintiff that "we would not have two Indians and an African-American in administration," (Pl.'s Excerpts Dial Dep. (Doc. 31-1) at 13-15). Oxendine's affidavit — which is not sworn, notarized, or signed — cannot be considered by this court on a motion for summary judgment.[4] Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."). Further, Blue testified that "[t]he Board of Commissioners did not have any say in my decision." (Blue Decl. (Doc. 28) at 7.) Thus, based on the record this court may

_____

[4] Even if Oxendine's affidavit is considered, it would not affect this analysis. In terms of specific facts, the affidavit states that Oxendine served as a County Commissioner and that Oxendine knows both Plaintiff and Blue. However, Oxendine's familiarity with "standard practice" and "influence" is too conclusory to create a material issue of fact as to the hiring decision at issue here. (See Ex. C, Aff. Roger Oxendine (Doc. 31-3) at 2.) He offers no specific factual testimony or knowledge as to the relevant events of this action; it is entirely speculative as to what may have occurred during the hiring of Hill or whether Oxendine has any knowledge of "facts that would be admissible in evidence." See Fed. R. Civ. P. 56(c)(4).

- 30 -

consider, this court finds that the Board of Commissioners did not have influence on Blue's hiring decision. Also, Plaintiff's testimony regarding Taylor's alleged statement is inadmissible hearsay.[5] Even if admissible, Taylor's statement does not create a genuine issue of material fact as to unlawful racial discrimination in the Assistant County Manager hiring process. Nothing in the record suggests Taylor was involved in the hiring process or that he provided input or influence in the hiring decision. Consequently, Plaintiff's allegation that the Board of Commissioners provided impermissible race-based input in the hiring decision is unavailing.

---

[5] Plaintiff contends that Taylor's statement is admissible as a statement against Defendant's interest, given that Taylor, as a County Commissioner, is an agent of Defendant Robeson County. (Pl.'s Resp. (Doc. 31) at 9.) The statement against interest hearsay exception does not apply here, as it only applies when the declarant (Taylor) is unavailable. See Fed. R. Evid. 804(b)(3). This court has not been presented evidence that Taylor is unavailable to testify. It is also not admissible as a non-hearsay opposing party statement under Fed. R. Evid. 801(d)(2)(D) because Taylor's statement was not made "on a matter within the scope of that [agency or employment] relationship." See Fed. R. Evid. 801(d)(2)(D). "In order for a statement to qualify as a party admission under Fed. R. Evid. 801(d)(2)(D), the declarant must have actually been involved in the decision to hire or fire the person bringing the discrimination charge." Goss v. George Washington Univ., 942 F. Supp. 659, 662 (D.D.C. 1996). Nothing in the record suggests Taylor provided input or influence on the hiring decision or was involved in the hiring process, so his statement is not admissible as a party admission. Regardless, this court declines to make an evidentiary finding as to the admissibility of Taylor's alleged statement, as even if admissible, the statement does not create a genuine issue of material fact.

- 31 -

Second, Plaintiff alleges that Tom Taylor told Plaintiff's wife, Rhonda Dial, that the Assistant County Manager position was "Shelton Hill's job" before the hiring decision was made. (See Pl.'s Resp. (Doc. 31) at 2-3 (referencing Rhonda Dial's affidavit); see also Ex. B, Aff. of Rhonda Dial (Doc. 31-2) at 3.) However, this allegation does not provide evidence of unlawful race-based discrimination. This statement is inadmissible hearsay that this court cannot consider, as it is being offered for the truth of the matter asserted — that Shelton Hill was already selected for the Assistant County Manager position. Even if admissible, it does not provide evidence of race-based discrimination as a pretext for Defendant's promotion decision. At most, it suggests preselection, which "'is not sufficient evidence for jurors reasonably to conclude' that the defendant['s] explanation for hiring [Hill] was pretext." See Westinghouse Savannah River Co., 406 F.3d at 271 (quoting Mackey v. Shalala, 360 F.3d 463, 468-69 (4th Cir. 2004)). "[P]re-selection does not violate Title VII when the pre-selection is based on the qualifications of the pre-selected candidate, and not on some basis prohibited by Title VII." Weaks, 761 F. Supp. 2d at 306 (citing Mackey, 360 F.3d at 468-69). "[W]hile pre-selection may establish that an employee was 'unfairly treated, it does not by itself prove

- 32 -

JA302

racial discrimination.'" Id. (quoting Westinghouse Savannah

River Co., 406 F.3d at 271).

In sum, Plaintiff does not raise a genuine dispute of

material fact to suggest Defendant's proffered reason for

promoting Hill over Plaintiff was pretextual.

**V.    CONCLUSION**

Plaintiff establishes a prima facie case of race

discrimination in his non-promotion to Assistant County Manager

under McDonnell Douglas. However, Defendant meets its burden of

articulating a legitimate, non-discriminatory reason for its

action — that Hill, the selectee, was more qualified than

Plaintiff. Finally, Plaintiff does not raise a genuine dispute of

material fact suggesting that Defendant's stated reason was

pretextual. Accordingly, Defendant is entitled to judgment as a

matter of law.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary

Judgment, (Doc. 25), is **GRANTED.**

This the 27th day of March, 2023.


_____
                United States District Judge


- 33 -

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ANTHONY DIAL,                        )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )      1:20-cv-1135
                                     )
ROBESON COUNTY,                      )
                                     )
          Defendant.                 )


**JUDGMENT IN A CIVIL ACTION**

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Plaintiff,

Anthony Dial, shall take nothing of Defendant, Robeson County,

and this action is **DISMISSED WITH PREJUDICE.**

     This the 27th day of March, 2023.


_____
          United States District Judge

JA304

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
File Number: 1:20cv01135

| | | |
|---|---|---|
| ANTHONY DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NOTICE OF APPEAL |
| | ) | |
| ROBESON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

NOTICE IS HEREBY given that ANTHONY DIAL, Plaintiff in the

above-referenced action, hereby appeals to the United States Court of Appeals for the

Fourth Circuit from the ORDERS and Judgment of the Honorable William L. Osteen,

Jr. dismissing Plaintiff's claims, with prejudice, filed September 29, 2021 and March

27, 2023.

This the 25th day of April, 2023.


 /s/Nancy P. Quinn,
Nancy P. Quinn,
Attorney for Plaintiff
NC Bar No.: 16799
P.O. Box 9378
Greensboro, NC 27429
Telephone: (336)272-9072
Facsimile: (336)272-2289
npquinn@thequinnlawfirm.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing and attached

Notice of Appeal was served on the Defendant electronically through the CM/ECF

system addressed as follows:

> Mr. Dan Hartzog, Jr.
> Hartzog Law Group
> 2626 Glenwood Avenue, Suite 305
> Raleigh, NC 27608
> Email: dhartzogjr@hartzoglawgroup.com

This the 25th  day of April, 2023.

> /s/Nancy P. Quinn,
> Nancy P. Quinn,
> Attorney for Plaintiff
> NC Bar No.: 16799
> P.O. Box 9378
> Greensboro, NC 27429
> Telephone: (336)272-9072
> npquinn@thequinnlawfirm.com

## APPEAL TRANSMITTAL SHEET (non-death penalty)

| Transmittal to 4CCA of notice of appeal filed: 04/25/23 | District: MIDDLE DISTRICT OF N.C. | District Case No.: 1:20CV1135 |
|---|---|---|
| ✓ First NOA in Case | Division: | 4CCA No(s). for any prior NOA: |
| ___ Subsequent NOA-same party | | |
| ___ Subsequent NOA-new party | Caption: | 4CCA Case Manager: |
| ___ Subsequent NOA-cross appeal | ANTHONY DIAL v. ROBESON COUNTY et al | |
| ___ Paper ROA ___ Paper Supp. | | |
| Vols: _____ | | |
| Other: | | |

**Exceptional Circumstances:** ___ Bail ___ Interlocutory ___ Recalcitrant Witness ___ Other _____

| Confinement-Criminal Case: | Fee Status: |
|---|---|
| ___ Death row-use DP Transmittal | ___ No fee required (USA appeal) ✓ Appeal fees paid in full ___ Fee not paid |
| ___ Recalcitrant witness | **Criminal Cases:** |
| ___ In custody | ___ District court granted & did not revoke CJA status (continues on appeal) |
| ___ On bond | ___ District court granted CJA & later revoked status (must pay fee or apply to 4CCA) |
| ___ On probation | ___ District court never granted CJA status (must pay fee or apply to 4CCA) |
| **Defendant Address-Criminal Case:** | **Civil, Habeas & 2255 Cases:** |
| | ___ Court granted & did not revoke IFP status (continues on appeal) |
| | ___ Court granted IFP & later revoked status (must pay fee or apply to 4CCA) |
| | ___ Court never granted IFP status (must pay fee or apply to 4CCA) |
| **District Judge:** | **PLRA Cases:** |
| WILLIAM L. OSTEEN, JR | ___ Proceeded PLRA in district court, no 3-strike determination (must apply to 4CCA) |
| | ___ Proceeded PLRA in district court, determined to be 3-striker (must apply to 4CCA) |
| **Court Reporter** (list all): | **Sealed Status** (check all that apply): |
| Briana Bell | ✓ Portions of record under seal |
| | _____ Entire record under seal |
| | _____ Party names under seal |
| | _____ Docket under seal |
| **Coordinator**: Keah Marsh | |

| Record Status for Pro Se Appeals (check any applicable): | Record Status for Counseled Appeals (check any applicable): |
|---|---|
| ___ Assembled electronic record available upon request | ___ Assembled electronic record available upon request |
| ___ Additional sealed record available upon request | ___ Additional sealed record available upon request |
| ___ Paper record or supplement available upon request | ___ Paper record or supplement available upon request |
| ___ No in-court hearings held | ___ No in-court hearings held |
| ___ In-court hearings held – all transcript on file | ___ In-court hearings held – all transcript on file |
| ___ In-court hearings held – all transcript not on file | ✓ In-court hearings held – all transcript not on file |
| ___ Other: | ___ Other: |

Deputy Clerk: Abby Taylor _____ Phone: 336-332-6102 _____ Date: 04/26/23 _____

10/2022